# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| | Case No. 8:10-MD-2173-JDW-EAJ |
| **This document relates to the following cases:** | Hon. James D. Whittemore |
| Case No. 8:10-CV-1158 Case No. 8:10-CV-1358 Case No. 8:10-CV-1825 Case No. 8:10-CV-2089 Case No. 8:10-CV-2043 Case No. 8:10-CV-2090 Case No. 8:10-CV-2091 Case No. 8:10-CV-2418 Case No. 8:10-CV-1840 | |

## INDIRECT PURCHASER END-USER PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

## I.    **INTRODUCTION**

Defendant Transitions Optical Inc. ("TOI") entered into a Consent Agreement[1] (the "Consent Order") with the U.S. Federal Trade Commission ("FTC") in April 2010.  The FTC had concluded that TOI violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45, starting in 1999 by engaging in unfair methods of competition and exclusionary actions that caused injury down the vertical chain of distribution from lens casters to consumers.[2]

Notably, TOI admitted it engaged in this conduct and agreed with the FTC not to continue the conduct in the future. TOI now illogically argues that the ultimate victims of its anticompetitive conduct, the consumers who purchased TOI's lenses at artificially inflated prices, have not stated claims for relief under relevant state laws and should not be entitled to recover the damages that TOI's conduct caused them.[3]  TOI's arguments are unavailing.

Plaintiffs have standing and are entitled to recover for damage caused by TOI's unlawful conduct.  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court limited federal antitrust standing for damage claims to "direct" purchasers from defendants.  Since *Illinois Brick*, more than twenty states have enacted statutes for the explicit purpose of assuring that the limitations of *Illinois Brick* on antitrust standing are *not* to be applied to their state laws and other states also have reached the same conclusion by judicial interpretation (collectively, the "Repealer States.")  The policy reasons articulated for Repealer State laws have focused on the need to compensate ultimate consumers for their antitrust injuries.  Contrary to TOI's arguments, here consumers in California, New York, Florida, Kansas, Maine, Michigan and Wisconsin have

---

[1] Attached to the Consent Order is the FTC's Decision and Order, attached as Exhibit ("Exh.") A, which contains a statement of findings of fact and conclusions of law.  Also construing the terms of the Decision and Order is the FTC Complaint.  Consent Order, ¶¶ 3(b), 9.

[2] FTC Complaint, ¶ 12 (Exh. B).

[3] *See* Defendant's Motion to Dismiss and Incorporated Memorandum of Law ("Def. Mem.") [DE97] at §III.

properly stated damage claims under the appropriate state laws.  Moreover, consumers nationwide may state a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because TOI's conduct, which was directed at U.S. consumers and caused them to pay more for Transitions lenses than they otherwise would have, emanated from TOI's Florida national headquarters.

## II.   ARGUMENT

### A.   Plaintiffs State A Plausible Claim Under FRCP 8

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Transamerica Corp. v. Moniker Online Servs.*, LLC, 672 F.Supp.2d 1353 (S.D. Fla. 2009). With regard to this case, multiple courts have held that governmental investigations, indictments and pleas should be considered in supporting Plaintiffs' claims.[4]

### B.   A Nationwide Class Under Florida Law is Appropriate

#### 1.   It is Premature to Decide Issues relating to Class Certification at this Stage and Before Discovery Is Complete

The choice of law analysis that TOI invites the Court to engage in is premature at this time.  The Eleventh Circuit law is clear that it is often premature to resolve class certification at the motion to dismiss stage, and the better practice is to decide the issue after discovery and a motion for class certification is filed.  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008); *see also Brueggemann v. NCOA Select, Inc.*, 2009 WL 1873651 at *6 n.8 (S.D. Fla. June

---

[4] The fact that TOI entered into the Consent Order with the FTC should be sufficient to support Plaintiffs' claim. *See also In re Packaged Ice Antitrust Litig.*, 723 F.Supp.2d 987, 1008-12 (E.D. Mich. 2010) (government investigations enhance plausibility); *In re Air Cargo Shipping Services Antitrust Litig.*, MDL No. 1775, 2009 U.S. Dist. LEXIS 97365 at *1, 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009) (guilty pleas support plausibility); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2010 U.S. Dist. LEXIS 98739, at *41-*46, 2010 WL 3632775 at *2-*4 (N.D. Cal. Mar. 30, 2010) (guilty pleas combined with market structure facilitating collusion supported plausibility); *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1149 (N.D. Cal. 2009) (guilty pleas and substantial criminal fines combined with market structure and market behavior satisfy *Twombly*); *In re TFT-LCD Antitrust Litig.*, 586 F.Supp.2d 1109, 1114-16 (N.D. Cal. 2008) ("*LCD I*") (same).

30, 2009); *see also Whigum v. Helig-Meyers Furniture, Inc.*, 682 So.2d 643 (Fla. Dist. Ct. App. 1999.).[5]  If class certification issues are to be decided at this juncture, they should be resolved in favor of certification since they can always be revisited at a later time. Fed. R. Civ. P 23(C)(1)(c).

### 2.    Under Florida's Applicable Choice of Law Rules, Florida Consumer Law Should Apply to a Nationwide Class

In determining which state's law applies to multi-state disputes, a federal district court sitting in diversity should apply the choice of law rules of its forum state. *Klaxon Co. v. Stenton Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). Under Florida's law, choice of law determinations are based on the characterizations of the legal issues in the case.  *Groupo Televisa v. Telemundo Comm. Group,* 485 F.3d 1233, 1240 (11th Cir. 2007) (misappropriation of trade values).  Florida applies the "most significant relationship test" under Restatement (Second) of Conflict of Laws.[6]

### 3.    The "Most Significant Relationship" Test Is Satisfied

Florida law should be applied nationwide[7] in this case because TOI is headquartered in Florida and the anticompetitive conduct emanated from its Florida headquarters.[8]  Under Section 145 of the Restatement (Second) of Conflicts of Laws the "significant contacts test" includes: (1)

---

[5] TOI has previously told this Court that the question of class certification need not be raised or resolved until after the parties have engaged in sufficient discovery.  In October 2010, the parties entered into a heavily negotiated Supplemental Case Management report in which TOI agreed that Plaintiffs would have until "420 days after the start of fact discovery" to file their motion for class certification. *See* Direct Purchaser, Indirect Purchaser, and Defendants' Supplemental Case Management Report dated 10/12/10 at 8 [DE 59].  The parties' agreement is consistent with this Court's local rules.  *See* M.D. Fla. Local Rule 4.04(c) (noting that upon ruling on a motion for class certification filed under Local Rule 4.04(b), the Court may "disallow and strike the class allegations, or may order postponement of the determination pending additional discovery").

[6] *Bishop v. Florida Specialty Paint Co,* 389 So. 2d  999, 1001 (Fla. 1980); *Groupo Televisa,* 485 F.3[rd] at 1241.

[7] *See Pecover v. Electronic Arts, Inc.*, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) (certifying nationwide damages class of indirect purchasers of videogames who alleged claims under California's consumer protection laws where defendant was headquartered in California and portion of unfair conduct originated there).

[8] TOI attempts to discount *Pecover* by pointing out that California uses the "governmental interest" test for choice of law; Plaintiffs show that they satisfy Florida's "most significant relationship" test. TOI also argues that, in *Pecover,* the plaintiffs were aware they were dealing with a California company and that "certain end-user licenses in the video games specified California law would apply." Def. Mem. at 10.  Similarly, TOI's agreements with lens casters, eye care practitioners and retailers typically apply Florida law.

the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.[9]

The test is not mechanical as different factors are given different weight, depending on the nature of the claims and the particular facts of the case.[10]  Here, TOI, from its Florida headquarters, conceived of and implemented its anticompetitive scheme affecting consumers across the nation.  *See* Indirect Purchaser End-User Plaintiffs' Consolidated Complaint ("Complaint") [DE 91] at ¶¶ 7, 9-20, 21, 33 (citations to "¶__" are to the Complaint, unless noted otherwise).  It is well recognized that the place where the Defendant resides and the offending conduct originated is of much greater importance than the place where the plaintiff was injured.[11]  Indeed in *Trumpet Vine*, the Eleventh Circuit found that, in unfair competition cases such as this one, the location where the conduct giving rise to the injury occurred is more important.[12]  And where plaintiffs are damaged in more than one state, the location where the conduct giving rise to the injury occurred is paramount.[13]  Applying Florida law nationwide is also consistent with the Florida Legislature's purpose in enacting FDUTPA:  to make "unlawful, *unfair methods of competition*, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," and the origination of the defendant's offending conduct and commercial wrongdoing should be given great weight. *Millennium Commun. & Fulfillment, Inc.*

---

[9] *Trumpet Vine Investments v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1116 (11th Cir. 1996).

[10] *See Nelson v. Freightliner*, 154 Fed. Appx. 90, 104 (11th Cir. 2005); *Groupo Televisa*, 485 F.3d at 1243, 1246.

[11] *See Groupo Televisa*, 485 F.3d at 1246 (Court found that "the principal location where the defendant's conduct occurred would be the single most significant 'contact' in this type of case.  The facts indicate that the 'principal location' was the defendant's home [state] in Florida.").

[12] *Id*. citing Restatement (Second) of Conflict of Laws § 145 (comment f); *see also Bishop* at 1001; *Kelley v. Microsoft Corp.*, 2008 WL 509332, at *550 (W.D. Wash. February 22, 2008).

[13] *Default Proof Credit* at 1570-71 (S.D. Fla. 1990); *Cunningham v. PFL Life Ins. Co.*, 42 F.Supp.2d 872, 883-84 (N.D. Iowa 1999) (applying Florida choice of law principles;) *Kelley v. Microsoft Corp.*, at *551-52.

*v. Office of the AG, Dep't of Legal Affairs ("Millennium")*, 761 So. 2d 1256, 1260 (Fla. Dist. Ct. App. 2000).[14]

Consistent with these principles, Florida courts applying these Restatement factors have concluded that the application of FDUTPA to a Florida corporation based upon its uniform dealings with class members from around the country is appropriate.[15]

TOI's cases do not lead to a contrary result.  In *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221 (S.D. Fla. 2002)*,* plaintiff attempted to certify a class for his FDUTPA claim against a Pennsylvania manufacturer of a plane and the plane's Indiana/German engine manufacturer for their failure to provide an "engine [that] would operate 2000 hours before requiring overhaul." *Id*.  Only the manufacturer of the plane was domiciled in Florida.  The court found the nexus to Florida lacking.  *Id.* at 227-28.  By contrast, here, there are allegations that products were sold from Florida (where TOI processes and ships the lenses) and purchased by consumers in Florida and other states.  ¶ 18.  And the focus of this suit is TOI's continuous scheme to eliminate competition, a plan which was conceived, directed and originated from TOI's headquarters in Florida.  *Id.* at ¶¶ 7, 9-20, 21, 33. [16]

*Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090 (Fla. 4th Dist. Ct. App. 2003), is also distinguishable.  There, plaintiffs alleged that misrepresentations on defendant's labels on its calcium supplements occurred when the product was purchased.  The action required

---

[14] S*ee also Mercedes-Benz TeleAid Contract Litigation*, 257 F.R.D. 46 at * 68 (D. N.J. April 24, 2009) (applying consumer protection law of the defendant's principal place of business where conduct originated).

[15] *See Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 439 (Fla. Dist. Ct. App. 1999), (applying Florida law nationwide to the class of cruise travelers' claims, no matter where the plaintiffs resided); *Millenium* at 1260-1261; *Brueggemann v. NCOA Select, Inc.*, 2009 WL 1873651, at * 6 (S.D. Fla. June 30, 2009) (denying motion to dismiss since, under FDUTPA, a California resident can bring a claim against defendant Florida corporation that allegedly harmed consumers located outside of Florida).

[16] TOI's citation to *Coastal Physician Services of Broward County v. Ortiz*, 764 So.2d 7 (Fla. Dist. Ct. App. 1999) for the proposition that FDUTPA should only be applied to "in-state" consumers is unavailing.  The *Coastal Physician* case has been criticized because it ignores the fact that FDUTPA has no geographical limitation. *See Millennium*, 761 So. 2d. at 1260-61.

"application of consumer protection laws from each of the states where the deceptive trade practice occurred." *Id.* Here, the "wrong" was committed by TOI in Florida.

*OCE Printing Sys. USA, Inc. v. Mailers Data Servs, Inc.*, 760 So. 2d 1037, 1041 (Fla. Dist. Ct. App. 2000) is inapplicable. Def. Mem. at 6. *OCE Printing* dealt with a national class under Florida's Antitrust Act, Fla. § 542.18, which expressly limits its application to trade or commerce "in this state." *Id.* By contrast, FDUTPA, upon which Plaintiffs rely, has no such geographical limitations.[17] Quite tellingly, TOI's own agreements with lens casters and retailers contain clauses mandating that Florida law governs.[18] Since Florida law applies to the sale of the lenses to the lens casters and retailers, it should apply to the same lenses purchased by Plaintiffs. TOI will not be prejudiced by the application of Florida law. Finally, the application of one state's law will simplify this proceeding for the benefit of the Court and the parties.

### 4. Application of Florida Law To A Nationwide Class Does Not Violate The Commerce Clause Or Due Process

TOI suggests the application of Florida law would defy constitutional limitations. Given the facts in this case, applying the Florida statute nationwide is entirely proper. TOI's marketing program targeted consumers nationwide of its lenses nationwide in order to increase demand for its product. Documents produced by TOI to the FTC illustrate its continued, concerted efforts to direct media and marketing campaigns to consumers nationwide from its Florida headquarters.[19]

TOI also claims that the Due Process Clause prevents the application of FDUTPA to a nationwide class. The Due Process Clause, however, places only "modest restrictions" on the

---

[17] The *OCE* court's conclusion that "only in-state consumers can pursue" a FDUTPA claims is based entirely upon the Fourth DCA's opinion in *Coastal Physician*, which was subsequently questioned in *Millennium*, fn. 12.

[18] TOI produced these agreements as well as other documents and data in connection with the FTC investigation and recently agreed to make the production available to Plaintiffs. While Plaintiffs have launched a review of TOI's FTC documents, there has been insufficient time to conduct a meaningful review before filing the Complaint.

[19] TOI documents reference a nationwide marketing program that targets ultimate consumer purchasers of the treated lenses. A sampling of documents created and distributed by TOI include power point presentations, marketing plans, media advertising and television commercials directly aimed at consumers.

application the forum state's laws in a class action. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). For a state's law to apply, the state must have "a significant contact or significant aggregation of contacts, creating state interest, such that choice of law is neither arbitrary nor fundamentally unfair." *Id.* Where, as here, TOI has its principal offices within the state, the offending conduct originated in the state, at least some class members reside in the state and the state, through FDUTPA, has an interest in ensuring that its corporate citizens do not engage in deceptive and unfair conduct, that "modest restriction" does not prohibit the application of Florida law. *See Elkins v. Equitable Life Ins. Co. of Iowa*, 1998 WL 133741, *17 n.5 (M.D. Fla. 1998) (*Shutts* conditions satisfied.).[20] Finally, courts consider the ease of determining and applying the law in which the District Court sits as a factor in choosing the law of the forum state. *Groupo Televisa*, 48 5 F.3d at 1231 n.1, 1246; *Nelson*, 154 Fed. Appx. at 105. This factor strongly favors the application of Florida law.

**C.** **Plaintiffs Satisfy AGC and Its Standing Requirements**

    **1.** ***Illinois Brick* Repealer States Provide Indirect Purchasers of Standing to Bring Claims Under State Law**

Plaintiffs plead antitrust and consumer protection claims under the antitrust laws of six repeater states and the Florida consumer protection statute. Each state's law provides a claim for relief by indirect purchasers. TOI argues Plaintiffs lack standing by applying the *federal antitrust standing* factors announced in *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) *("AGC")*. The Court should not apply the *AGC* factors to Plaintiffs' state law claims since the states have made clear that *Illinois Brick* does not apply and indirect purchasers possess requisite the standing under state law.

---

[20] *See also Pecover,* 2010 U.S. Dist. LEXIS 140632, at *40-*60 (Due Process considerations satisfied); *Kelley v. Microsoft,* at * 550 (W.D. Wash. February 22, 2008) (*Shutts* conditions satisfied).

The federal antitrust standing principles announced in *AGC* years after *Illinois Brick* did nothing to alter states' rights to provide a cause of action to indirect purchasers of goods for violating state antitrust and consumer protection law. In *AGC*, the Supreme Court listed several factors to guide lower courts how to determine the outer bounds of *federal* antitrust standing under section 4 of the Clayton Act. Central to the standing inquiry is whether the alleged injury "is of the type that the antitrust statute was intended to forestall." *AGC*, 459 U.S. at 540.  But state legislative bodies are free to reject *Illinois Brick's* prudential concerns and allow indirect purchaser claims. Rejecting a similar argument to the one TOI advances here, the court in *In re Graphics Processing Units Antitrust Litig.*, 527 F.Supp.2d 1011, 1026 (N.D. Cal. 2007) ("*GPU I*") recognized the clear principle of respecting state law in our federal system.  *See also LCD I*, 586 F.Supp.2d at 1123.  And notably, TOI does not cite to any state legislative history or a single state court decision from a Repeater State that supports its arguments.[21]

### 2.     Even Using the AGC Factors as a Guide, Plaintiffs Allege Antitrust Standing

Almost every court applying the *AGC* factors to end-consumers who purchase in the distribution chain finished goods containing a distinct, physically discrete price-fixed component has found standing under state law.[22]  *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F.Supp.2d 1072 (N.D. Cal. 2007) ("*DRAM I*") is the *only* case rejecting standing for state law claims by end-users who purchased in the distribution chain finished goods containing price-fixed, physically discrete and identifiable component parts. And *DRAM I* is easily

---

[21] Only the State Supreme Courts of Iowa, Minnesota and Nebraska have decided whether it is even appropriate to apply the *AGC* factors to state law claims. And only the Minnesota Supreme Court analyzed whether to apply the *AGC* factors to state law claims by consumers who indirectly purchase goods in a distribution chain. *See Lorix v. Crompton Corp.*, 736 N.W. 2d 619 (Minn. 2007). Minnesota found the *AGC*'s factors do not apply.

[22] *See, e.g., CRT*, 2010 WL 3632775 at *10; *In re TFT-LC*D Antitrust Litig., 267 F.R.D. 583, 583 ("*LCD II*"); *Flash Memory*, 643 F.Supp.2d at 1153; *In re Static Random Access Memory Antitrust Litig.*, 2008 U.S. Dist. LEXIS 107523 (N.D. Cal. Sept. 29, 2008); *GPU I*, 527 F.Supp.2d at 1026; *LCD I*, 586 F.Supp.2d at 1123. *See also In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F.Supp.2d 404, 409 (D. Del. 2007).

distinguished.[23]  Also inapposite are the authorities, cited by TOI, involving Visa's and

Mastercard's tying of credit and debit cards when selling payment services to merchants.

Plaintiffs in those cases were not indirect purchasers of the tied credit and debit card payment

services but generally bought goods from the merchants.  *See, e.g.*, *Southard v. Visa U.S.A., Inc.,*

734 N.W. 2d at 196-97 (Iowa 2007); *Kanne v. Visa U.S.A., Inc.*, 723 N.W. 2d at 298 (Neb.

2006).  This Court should follow the weight of authority that finds indirect purchaser Plaintiffs

have standing under state law. *See*, *e.g.*, *LCD I*, 586 F.Supp.2d at 1123.

The *AGC* factors, each of which weigh in favor of Plaintiffs' standing here, are: (1) the

nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were

intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4)

the risk of duplicative recovery; and (5) the complexity in apportioning damages. *See Amey, Inc.

v. Gulf Abstract & Title Co*., 758 F.2d 1486, 1495-95 (11th Cir. 1985).

### a.    Plaintiffs Paid Overcharges for Their Purchase Of Transitions Lenses, the Very Injury that the Antitrust Laws Intend to Prevent

Plaintiffs clearly satisfy the first *AGC* factor, which is given the most weight. This factor

looks at the nature of the plaintiff's injury and whether it is of the type that the antitrust laws

intend to prevent. Here, Plaintiffs' injuries – and the Plaintiffs themselves – are exactly *what and

who* the states' antitrust and consumer protection laws aim to cover. Plaintiffs are the ultimate

consumer of Transitions lenses and they paid illegally inflated prices due to TOI's

monopolization of the market.

TOI proposes that the first *AGC* factor recognizes only injuries to "market participants."

The Supreme Court has held that "[i]n each case its alleged injury must be analyzed to determine

---

[23] *DRAM I* was certified for appeal to the Ninth Circuit and, while the appeal was pending, Plaintiffs settled the case for more than $300 million.

whether it is of the type that the antitrust statute was intended to forestall." *AGC*, 459 U.S. at 540. TOI's legal construct, if applied to indirect purchasers of goods, would defeat the very purpose of *Illinois Brick* repealer statutes. In rejecting the exact same "market participant" argument, the Minnesota Supreme Court correctly stated, "*AGC* did not make a plaintiff's status as a consumer or competitor in the restrained market a *sine qua non* of antitrust standing. Rather, *AGC* used that status as a tool to compare the plaintiff's alleged injury to the goals of antitrust law." *Lorix*, 736 N.W. 2d at 628. Plaintiffs have precisely the type of injury the Repealer States' antitrust and consumer law specifically intends to prevent.[24] And Plaintiffs indeed are market participants by being "consumers" of Transitions lenses, a recognizably separate product purchased as part of eyeglasses.[25] Plaintiffs here are unquestionably consumers.

### b. Plaintiffs' Injury Is Sufficiently "Direct" to Satisfy AGC

Plaintiffs also sufficiently allege facts to demonstrate the "directness" of their injury.[26] Here, Plaintiffs allege their injury in detail. Plaintiffs describe the physical makeup of a photochromic lens as well as the products in which the lenses are found. ¶¶ 2, 23-25. The cost of the lenses can be traced through the distribution chain and isolated in the final sale price of the eyeglasses. ¶¶ 39-42. In fact, individual plaintiffs in this action have receipts with "Transitions" denoted as a separate line item. Photochromic lenses are a key component and represent a substantial portion of the retail price of eyeglasses. The lenses have a clear distribution path– usually eye care professionals or retailers sell the lenses directly to end users. ¶ 39. The intermediate markets in the distribution chain for the lenses are very competitive, which along

---

[24] Federal courts repeatedly reject black-letter rules designed to unduly restrict standing, such as TOI's proposed "market participant" test. *See*, *e.g.*, *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 478 (1982); *LCD I*, 586 F.Supp.2d at 1118; *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007).

[25] A consumer is a "person who buys goods or services for personal, family, or household use, with no intention of resale." Black's Law Dictionary 358 (9th ed. 2009).

[26] The *AGC* plaintiff was a union who could not articulate its harm. *See AGC*, 459 U.S. at 539 ("It is not clear whether the Union's interests would be served or disserved by enhanced competition in the market.")

with other factors, demonstrates pass-through of the overcharge.  ¶¶ 43-46, 82.  The overcharge

can be measured using well-established economic theories and models.  In sum, because the

lenses are physically traceable, the distribution chain is short, and the lenses are key components

in the eyeglasses, Plaintiffs' allegations satisfy the "direct" element of *AGC*.[27]

### c. Plaintiffs' Claims Are Not Speculative or Duplicative, and Are Able to Be Apportioned Between Injured Parties

To the extent other courts have considered the remaining three *AGC* factors in indirect

purchaser actions – the speculative measure of the harm, the risk of duplicative recovery and the

complexity in apportioning damages – these factors are dramatically discounted, as the Repealer

States in repealing the *Illinois Brick* decision disclaim concern for these. *See*, *e.g.*, *Intel*, 496

F.Supp.2d at 410 (concluding that the last three of the *AGC* factors "carry less weight in the

standing analysis in jurisdictions rejecting *Illinois Brick*").  Nonetheless, Plaintiffs meet each of

these factors here. Plaintiffs' measure of harm is non-speculative and is able to be apportioned

between relevant parties. And even if TOI's imagined factors could be considered, they fail to

establish that Plaintiffs' claims are too speculative or complex.  Federal courts repeatedly

recognize the ability of indirect purchasers who purchased a product containing the price-fixed

product to trace overcharges through a distribution chain.[28]

### D. Plaintiffs Properly Allege Claims Under State Antitrust Laws

TOI argues that Plaintiffs' state antitrust claims should be dismissed because (1)

California, Kansas and New York laws require "concerted action" and Plaintiffs have alleged

"only unitary conduct by TOI" and (2) "Plaintiffs do not allege facts – as they must under

---

[27] TOI's reliance on *DRAM I* and *In re Potash Antitrust Litig.*, 667 F.Supp.2d 907 (N.D. Ill. 2009) is misplaced. In contrast to the allegations here, the plaintiffs in those cases failed to allege the pass through of the overcharges. Compare, ¶82.

[28] *See*, *e.g.*, *In re Sugar Industry Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002).

Kansas, New York and Wisconsin laws – that TOI directed its purported anticompetitive conduct toward the commerce of any particular state." Neither argument has merit.

First, TOI's premise that Plaintiffs have alleged only unilateral conduct by TOI -- is simply incorrect.  The Complaint is replete with allegations of actions demonstrating that TOI entered into agreements with third parties in furtherance of TOI's monopolistic scheme.  For example, Plaintiffs allege that TOI entered into "exclusionary agreements at all levels of the photochromic lens distribution chain" with others "with the purpose and effect of increasing its monopoly power."  ¶ 3.  Plaintiffs identify the types of agreements and the effect of such agreements.[29]  ¶¶ 48, 49, 52, 62, 64-72.  Plaintiffs need not allege a "conspiracy" analogous to a Section 1 claim under the Sherman Act in order to state any actionable claims under California,[30] Kansas[31] and New York statutes.[32]  Rather, case law makes clear that Plaintiffs can satisfy the statutes' elements if they allege that TOI entered into some type of reciprocal relationship with another entity in furtherance of its scheme to monopolize.[33]  Plaintiffs' allegations satisfy this requirement.

---

[29] Count II of Complaint spells out that "Transitions acted in violation of the state antitrust laws outlined below through conspiring to, and acting to acquire, maintain, and increase Transitions' monopoly power."

[30] *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation*, CV 05-1671 CAS, at 14-15 (C.D. Cal. June 21, 2006) (Exh. C).

[31] KSA 50-112 and KSA 50-117.  *See Daric Smith v. Philip Morris, et al.*, Case No. 00-CV-26, at 3 (Seward County, Kansas Dist. Ct. Nov. 1, 2000) (Exh. D).

[32] *State v. Mobil Oil Corp.*, 344 N.E. 2d 357, 359 (N.Y. 1976) (recognizing that the "sweep of Donnelly may be broader than Sherman"); *Columbia Gas of New York v. N.Y. Elec. & Gas Corp.*, 268 N.E.2d 790, 796 (N.Y. 1971).

[33] **New York**: *See George Miller Brick Co. v. Stark Ceramics, Inc.*, 801 N.Y.S. 2d 120 (N.Y. Sup. Ct. 2005) (arrangement element of Donnelly Act claim met in case involving monopolistic scheme); *American Cyanamid Co. v. Power Conversion, Inc.*, 336 N.Y.S. 2d 6, 12-13 (N.Y. Sup. Ct. 1972) (same); *Eagle Spring Water Co. v. Webb & Knapp, Inc.*, 236 N.Y.S. 2d 266, 276 (N.Y. Sup. Ct. 1962) (same);  *see also, Bindit Corp. v. Inflight Advertising, Inc.*, 731 N.Y.S. 2d 43, 47 (N.Y. App. Div. 2001);  *North County Communs. Corp. v. Verizon N.Y., Inc.,* 233 F.Supp.2d 381, 385 (N.D.N.Y. 2002); **California**: *In re Reformulated Gasoline (RFG) Antitrust and Patent Litig.*, CV 05-1671 (C.D. Cal. June 23, 2006); **Kansas**: *Bellinder v. Microsoft*, Case No. 99CV17089 at 1 (Johnson County, Kansas Dist. Ct. Sept. 7, 2001) (monopolistic conduct in computer software industry actionable) (Exh. D); *Chance v. UST*, 02-C-12, at 1-2 (Seward County, Kansas Dist. Ct. Nov. 7, 2002) (monopolistic conduct in moist snuff actionable) (Exh. D).

Second, and equally unavailing, is TOI's argument that Plaintiffs' claims under Kansas, New York and Wisconsin laws must fail because Plaintiffs' allegations are based on TOI's conduct in the United States as a whole and not conduct unique to each particular state. The "intrastate limitation" argument been soundly rejected in other cases. *See In Re: Brand Name Prescription Drugs Antitrust Litig.,* 1998 WL 102734 at *8 (ND. Ill. 1998). Moreover, courts interpreting these statutes have routinely held that claims are actionable as long as the alleged anticompetitive conduct impacts the residents of each respective state.[34] Here Plaintiffs have alleged that they purchased photochromic lenses in Kansas, New York and Wisconsin at prices that were inflated as a result of TOI's illegal conduct. ¶¶ 10, 14-15, 19-20.

## E.   Plaintiffs Have Adequately Stated Consumer Protection Law Claims

### 1.   Florida

TOI argues that Plaintiffs' claims for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. ("FDUTPA") are not pled with sufficient specificity.[35] *See* Def. Mem. at 19. However, the claims for violations of FDUTPA require only

---

[34] **Kansas**: *In Re: Wyoming Tight Sands Antitrust Cases,* 1990 WL 136788 (D.Kan. Aug. 2, 1990) (the Kansas Antitrust Statutes applied to interstate commerce); *In Re: Brand Name Prescription Drugs Antitrust Litigation,* 1998 WL 102734 at * 8; *See Daric Smith v. Philip Morris, et al.*, Case No. 00-CV-26, at 3 (Seward County Kansas Dist. Ct. Nov. 1, 2000) (Exh. D). **New York**: *See Global Reinsurance Corp. v. Equitas Ltd.*, -- N.Y.S 2d --, 2011 WL 135002 (N.Y. Sup. Jan. 18, 2011) (Plaintiff's allegations of injury to it in New York from alleged worldwide conspiracy sufficient for standing under Donnelly Act); *Two Queens, Inc. v. Scoza,* 745 N.Y.S. 2d 517, 519 (N.Y. App. Div. 2002) (Donnelly Act claim not preempted, although the advertisers over which defendant allegedly had a monopoly were "substantially" national, not local, companies); **Wisconsin**: *In re Flonase Antitrust Litig.*, 692 F.Supp.2d 524 (E.D. Pa. 2010) ("Plaintiffs' allegations meet Wisconsin's 'substantially affects' standard."); *In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538 (M.D. Pa. 2009) (*Chocolate I*); *State v. Infineon Tec. AG,* 531 F.Supp.2d 1124 (N.D. Cal. 2007) (claim is stated under Wisconsin's antitrust statute); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F.Supp.2d 1365, 1375 (S. D. Fla. 2001) ("Wisconsin's antitrust chapter targets *all* anti-competitive conspiracies that adversely affect state commerce, regardless of whether the conspiracies are formed or implemented in Wisconsin").

[35] TOI's failure to specify what facts have not been properly pled may be cause to deny a motion to dismiss. *See Transamerica Corp.*, 672 F.Supp.2d at 1359 (J. Altonaga) ("Defendants do not point to any specific counts in Transamerica's Amended Complaint that fail to allege specific facts, or which are merely formulaic recitations of the elements of a cause of action. Thus, the Court gives this argument no further consideration.").

a short plain statement of the claim.[36]   The Florida legislature sought to simplify consumer fraud claims, not to set up barriers to such claims.[37]   *Florida v. Tenet Healthcare Corp.,* 420 F.Supp.2d 1288, 1310 (S.D. Fla. 2005).

Plaintiffs have properly alleged TOI's active participation in the deceptive and unfair scheme to inflate prices for photochromic lenses in Florida and throughout the country.  ¶¶ 3-6. Plaintiffs allege that the Class of similarly situated end users was injured by "paying prices for photochromic lenses that were artificially inflated as a result of TOI's unlawful conduct."  ¶ 20. Plaintiffs provide specific detail regarding the market for its lenses, TOI's monopoly power over the market, and the effects of its conduct which led to the artificial price increases paid by the end user Plaintiffs and the Class.  ¶ 6-21.  Plaintiffs' allegations constitute a cognizable cause of action under FDUTPA, and it will be for the fact-finder to determine the extent of the violation and any damages.  *See In re Terazosin Hydrochloride Antitrust Litig.,* 203 F.R.D. 551, 559 (S.D. Fla. 2001); *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013 (11th Cir. 1987); *Davich v. Norman Brothers Nissan, Inc.*, 739 So. 2d 138 (Fla. Dist. Ct. App. 1999).[38]

TOI also argues that the Florida Plaintiff is unable to sue TOI because he cannot meet the jurisdictional requirements of CAFA, 28 U.S.C. §1332(d)(4), as there is no diversity.  In an MDL proceeding transferred to this Court by the JPML, involving plaintiffs residing across the

---

[36] *Galstaldi v. Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045 (S.D. Fla. 2009); *see Hanson Hams, Inc. v. HBH Franchise Co., LLC*, 2003 WL 22768687 (S.D. Fla. Nov. 3, 2003); *Cummings v. Warren Henry Motors, Inc.* 648 So. 2d 1230, 1233 (Fla. Dist. Ct. App. 1995); *Warren v. Monahan Beaches Jewelry Center, Inc.* 548 So. 2d 870, 873 (Fla. Dist. Ct. App. 1989).

[37] To state a claim under the FDUTPA, one must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. Dist. Ct. App. 2006).

[38] TOI's reliance upon *In re Florida Cement & Concrete Antitrust Litig.*, 2010 WL 4136306 (S.D. Fla. Oct. 12, 2010) is misplaced in that all proposed indirect purchaser class members in this case are "end user" consumers who have alleged that they purchased Transitions photochromic lenses at artificially inflated prices which damaged Plaintiffs and the Class.  ¶¶ 3-6, 19.  Further, all proposed indirect purchaser class members purchased the same single product manufactured/treated by this sole defendant, TOI.  *Id.*  TOI's other citation, *Lydia Monitoring, Inc. v. Alarm One, Inc.*, 2007 WL 2446889 (S.D. Fla. Aug. 23, 2007) is also unavailing.  There, plaintiff failed to allege causation and damages.  *Id.* at *5.  That is not the case here. *Compare* ¶¶ 23-24.

U.S., this Court should exercise its discretion to find supplemental jurisdiction under 28 U.S.C. §1367 to bring the Florida plaintiff's claims before the Court as they arise out of the same set of operative facts of the other state claims in the MDL proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

### 2.    California and New York

Plaintiffs' claim under Cal. Bus. & Prof. Code §§17200 ("UCL"), *et seq.* (¶ 102) is proper under both the "unlawful" and the "fraudulent" prongs of the law.[39]  The "unlawful" prong "'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Communs., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Since the Complaint adequately alleges a violation of the Cartwright Act, *see, supra,* at 12, Plaintiffs' UCL "unlawful" prong claim should stand.  Also, the standard under the "fraudulent" prong is whether the defendant's misconduct is "likely to deceive" consumers. *See*, *e.g.*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).  Here, the Complaint adequately alleges that TOI's conduct was "likely to deceive" purchasers of TOI's lenses.  ¶ 102.

TOI contends Plaintiffs do not allege any deceptive conduct under New York's GBL §349.  The statute prohibits misleading or deceptive business practices.  There is no reliance requirement.  *See In re DRAM Antitrust Litig.*, 536 F.Supp.2d 1129, 1143-44 (N.D. Cal. 2008) (*"DRAM II"*). Plaintiffs allege TOI has engaged in a monopolistic scheme to eliminate competition for photochromic lenses be entering into and concealing exclusive dealing agreement, and that the scheme resulted in New York consumers paying higher prices.  The concealment of the exclusive dealing arrangement is deceptive conduct.  ¶ 83.   TOI's

---

[39] TOI does not challenge the "unfair" prong of Plaintiffs' California claim.

concealment of these unlawful agreements constitutes a violation of GBL § 349.[40]

### 3.      Kansas, Maine, Wisconsin and Michigan

First, TOI argues that the Kansas claim fails because anticompetitive conduct is not

actionable under Kansas' unfair trade law.  Here, Plaintiffs' claim is proper because it alleges

deceptive practices by TOI.  *Agristor Leasing v. Meuli*, 634 F.Supp. 1208, 218 (D. Kan. 1986).

Second, TOI contends that Plaintiffs have not alleged reliance on a false or misleading

statement as to Maine law.[41]  The Maine statute "is modeled on the FTC Act, and is explicitly

required to be construed consistent with its federal counterpart."  *FTC v. Mylan Lab., Inc.*, 99

F.Supp.2d 1, 7 (D.D.C. 1999).  Monopolistic conduct that unlawfully restrains trade necessarily

violates the FTC Act and, therefore, the Maine consumer protection statute as well.  *FTC v.*

*Motion Picture Adver. Servs. Co.*, 344 U.S. 392, 394-95 (1953); *In re TFT-LCD (Flat Panel)*

*Antitrust Litig.*, 2008 WL 3916309, at *14-15 (N.D. Cal. Aug. 25, 2008) (*"LCD III"*) (denying

motion to dismiss Maine claim in complaint that alleged anticompetitive conduct).[42]

Third, TOI is incorrect that the Plaintiffs' unfair practices act claim for Wisconsin is

improper because it fails to properly allege reliance.  Under Wisconsin's statute, a plaintiff does

not have the burden of proving reasonable reliance.  *K & S Tool & Die Corp. v. Perfection*

*Machinery Sales, Inc.*, 301 Wis.2d 109, 129-30 (2007).  Further, the Complaint alleges that TOI

engaged in "deceptive and/or fraudulent acts or practices."  ¶ 102.  *See, also, Chocolate I,* 602

F.Supp.2d at 578.

---

[40] *See also GPU I*, 527 F.Supp.2d at 1030; *LCD I*, 586 F.Supp.2d at 1128.

[41] TOI also contends that the consumer protection claims are too remote. Def. Mem. at 18.  However, TOI cites no
Maine case which found a claim was too remote and instead refers the Court back to its Maine antitrust argument
which also cited no decision holding a Maine claim was too remote.  TOI's arguments, therefore, fail.

[42] TOI misstates the holding of *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998).  The court
stated that it was bound to interpret the Maine Unfair Trade Practices Act in light of "federal precedent," but
accepted the business practice alleged as lawful because it did "not induce consumers to act to their detriment."

Finally, the Michigan claim is proper because the statute prohibits both unfair and deceptive conduct.[43]  Like the Maine statute, the Michigan statute is to be construed in accordance with the FTC Act.  Mich. Comp. Laws §§ 445.910(1)(c), 445.911(3)(c). Accordingly, the alleged monopolistic conduct violates not only the FTC Act but also the Michigan Consumer Protection Act.  The arguments concerning the Michigan statute, therefore, fail for the same reasons as the Maine statute.[44]

## F.    The State Unjust Enrichment Claims Are Proper

Plaintiffs' California, Kansas, Maine,[45] Michigan,[46] New York[47] and Wisconsin[48] unjust enrichment claims should not be dismissed. *See Rait v. Sears, Roebuck & Co.*, 2009 WL 250309 (D. N.J. Feb. 2, 2009) (noting state laws).  Plaintiffs have alleged that TOI benefited from the monopoly profits on its sales of lenses as a result of its unlawful conduct. ¶ 108.  TOI's "direct benefit" and "too tenuous" arguments raise factual arguments which cannot be decided on a motion to dismiss.  *Cardizem*, 105 F.Supp.2d at 671.[49]

---

[43] Deception is only required with regard to fraud allegations. *See Mayhall v. A.H. Pond Co., Inc.*, 341 N.W. 2d 268, 270 (Mich. 1983).  Nevertheless, Plaintiffs have alleged deceptive conduct concerning their secret exclusive dealing agreements with its distributors/retailers.  ¶ 83.

[44] TOI also claims that the Complaint makes improper demands for damages under the unfair trade laws of California, Florida, Maine, Michigan and Kansas.  In fact, Plaintiffs and the Class simply seek all equitable relief and damages *as permitted by law* for the injuries they allegedly suffered.  ¶ 105.  Under Fed. R. Civ. P. 8, allegations as to damages may be pleaded generally, as Plaintiffs have done here.

[45] *In re Chocolate Confectionary Antitrust Litig.*, 2010 U.S. Dist. LEXIS 99909, at *53-*54 (M.D. Pa. 2010) ("*Chocolate II*").

[46] *In re Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, PLC, 2010 U.S. Dist. LEXIS 93520 (E.D.Pa. 2010) .

[47] *Chocolate II,*, 2010 U.S. Dist. LEXIS 99909, at *63-*66.

[48] *In re Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 2010 U.S. Dist. LEXIS 93520 at *152-154 (E.D.Pa. Sept. 7, 2010); *In re Flonase Antitrust. Litig.*, 692 F.Supp.2d 524 (E.D. Pa. 2010). Wisconsin law does not require the plaintiff and the defendant to be in privity. *In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618, 670 (E.D. Mich. 2000).

[49] There is no requirement that Plaintiffs confer a direct benefit upon TOI. *See* Restatement, Restitution, § 1(b); Sullivan, "The Concept of Benefit in the Law of Quasi-Contract," 64 Geo. L. J. 1 (1975)).

TOI requests that the Florida unjust enrichment claim be dismissed for failure to allege

conferral of a direct benefit. Plaintiffs have properly pled what is necessary under Florida law.

Complaint, at p. 25.  The essential elements of unjust enrichment are "(1) a benefit conferred on

upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the

defendant's acceptance and retention of the benefit under circumstances that make it inequitable

for him to retain it without paying the value thereof."[50]  In Florida, an indirect relationship

between the defendant and a plaintiff has long been sufficient for an unjust enrichment claim.[51]

Contrary to TOI's claim, a Kansas unjust enrichment claim does not require privity

between the parties to the action.  Nor is there a requirement that Plaintiffs confer a benefit

directly on TOI.  These arguments were rejected in *Wrobel v. Avery Dennison* and should be

rejected here for the same reasons. *See* Def. Mem., Exh. 1 at 9.

TOI claims the New York unjust enrichment fails because it is too remote.  "New York

law does not require an unjust enrichment plaintiff to plead 'direct dealing' or an 'actual

substantive relationship' with the defendant.[52]  All that is required is that "the plaintiffs'

relationship with a defendant not be 'too attenuated.'"   Here, the New York Plaintiffs purchased

a frame, lenses and the "add on" Transitions product and were charged for each.  They are now

suing TOI - the manufacturer of the product. *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149

(N.Y. App. Div. 2004).[53]  This is not the same situation as in *Daicel Chemical Indus.*, 840

---

[50] *The Lichfield Group, Inc. v. Dwayne Wade Schools of Florida*, LLC, 2011 WL 310750 at *3 (S.D. Fla. Jan 28, 2011); *Media Servs. Group, Inc. v. Bay Cities Communs., Inc.,* 237 F.3d 1326, 1330-31 (11th Cir.2001); *see also Tooltrend, Inc. v. CMT Utensili*, SRL, 198 F.3d 802, 805 (11th Cir. 1999); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.,* 899 So.2d 1222, 1227 (Fla. Dist. Ct. App. 2005).

[51] *MacMorris v. Wyeth, Inc.*, 2005 WL 1528626 at *4 (M.D.Fla. June 25, 2005) (rejecting defendants' assertion that a direct relationship is required and privity is not a requirement of an unjust enrichment claim).

[52] *Waldman v. New Chapter, Inc.*, 714 F.Supp.2d 398 (E.D.N.Y. 2010).

[53] TOI efforts to split hairs by claiming these decisions do not apply based upon the department in which the Plaintiff resides are silly. The court in *Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (2007) did away with the privity requirement that had been splitting the departments.  *Id.* at 209-210.

N.Y.S. 2d 8, 11-12 (N.Y. App. Div. 2007) where a price-fixed product was incorporated into a much larger product. Accordingly, the unjust enrichment claim in this case is not "too attenuated."

**G.      Plaintiffs' Claims Are Not Time-Barred**

TOI's statute of limitations argument is entirely without merit.  Def. Mem. at 24.[54]

TOI incorrectly asserts that the "latest TOI conduct alleged in the Complaint occurred in 2005."  Plaintiffs, in fact, allege that "from 1999 *through the present*" TOI "engaged in unlawful and exclusionary acts and practices."   ¶ 3.  The Complaint also alleges that in March 2010 TOI "*agreed to stop using allegedly anticompetitive practices* to maintain its monopoly and increase prices" and, more specifically, "agreed to a range of restrictions, including an *agreement to stop all exclusive dealing practices* that pose a threat to competition."   ¶ 72 (emphasis added). Plaintiffs are entitled to the reasonable inference, consistent with the allegations in the Complaint, that TOI's wrongdoing continued until the time TOI entered into a consent decree with the FTC.  Since the Complaint alleges that TOI engaged in anticompetitive conduct at least until March 2010, no lack of timeliness warrants dismissal.

Further, the statute of limitations is tolled until plaintiffs know, or should have known, of the wrongful conduct that forms the basis for plaintiffs' claims.  *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 835 (11th Cir. 1999).  TOI's scheme became publicly known when the FTC action against TOI was announced on March 3, 2010.  ¶ 5, 72.  Plaintiffs filed their complaints against TOI shortly after the announcement.[55]

---

[54] A motion to dismiss based on limitations should not be granted unless the defense is "apparent from the face of the Complaint."  *Tello v. Dean Witter Reynolds, Inc.,* 410 F.3d 1275, 1288 (11th Cir. 2005). The statute of limitations is an affirmative defense and a plaintiff has no obligation to affirmatively plead that its claims are not time-barred.

[55] TOI's contention that Plaintiffs are required to allege the diligent steps they took to discover the relevant facts is incorrect.  Any requirement to plead due diligence arises only under circumstances that should have put the plaintiffs on notice of their claim.  *See, e.g., Conmar Corp. v. Misui & Co.*, 858 F.2d 449, 504 (9th Cir. 1988).

Moreover, fraudulent concealment and due diligence are questions of fact that should not be decided on a motion to dismiss. *In re Issuer Initial Public Offering Antitrust Litig.*, 2004 WL 487222 at *5 (S.D.N.Y. March 12, 2004).[56]   Nor should Plaintiffs be precluded at this stage of the litigation from establishing the full extent of their damages.  *See In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 551 (D.N.J.).

## III.     CONCLUSION

For the foregoing reasons, the Court should deny TOI's motion to dismiss.  If this Court is inclined to grant the motion, in whole or in part, Plaintiffs respectfully request that the Court grant leave to amend.  Fed. R. Civ. P. 15; *McKinley v. Kaplan,* 177 F.3d 1253, 1258 (11th Cir. 1999); *United States v. Real Property,* 2008 WL 1913908, at *1 (M.D. Fla. Apr. 28, 2008).

Dated:  February 18, 2011

Respectfully Submitted,

By:_____s/ Susan G. Kupfer_____

Susan G. Kupfer
Joseph M. Barton
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Tel: (415) 972-8160
Fax: (415) 972-8166
skupfer@glancylaw.com

---

Plaintiffs are consumers – not entities that are in TOI's industry.  Consumers such as Plaintiffs would not be privy to, or on notice of, information regarding TOI's anticompetitive conduct at any point prior to March 2010.

[56] TOI does not dispute that elements of fraudulent concealment under the state laws at issue are substantially similar and can operate to toll the running of the statute of limitations.  *See* Def. Mem. at 24-25. But, the cases they cite in which courts refused to apply fraudulent concealment to toll the statute are distinguishable because fraudulent concealment was either decided on a full record at summary judgment or trial and/or involved parties that were in the same industry or had a close relationship (making lack of diligence to uncover misconduct on which they were on notice unreasonable).

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com

Michael M. Buchman
POMERANTZ HAUDEK GROSSMAN &
GROSS LLP
100 Park Avenue, 26th Floor
New York, NY 10117
Tel: (212) 661-1100
Fax: (212) 661-8665
mbuchman@pomlaw.com

Lance A. Harke
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, FL 33138
Tel: (305) 536-8220
Fax: (305) 536-8229
lharke@harkeclasby.com

*Interim Co-lead Counsel for the Indirect
Purchaser Plaintiffs*

Christopher C. Casper
JAMES, HOYER, NEWCOMER,
SMILJANICH, & YANCHUNIS, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609
Tel: (813) 286-4100
Fax: (813) 286-4174
ccasper@jameshoyer.com

*Liaison Counsel for the Indirect Purchaser
Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Indirect

Purchaser End-User Plaintiffs' Opposition to Defendant's Motion to Dismiss the Consolidated

Complaint was filed electronically with the Clerk of Court using the CM/ECF system, which will

send notification of such filing to all counsel of record, and emailed to counsel for all parties on

this, the 18th day of February, 2011.

GLANCY BINKOW & GOLDBERG LLP


_s/ Susan G. Kupfer_
Susan G. Kupfer
One Embarcadero Center, Suite 760
San Francisco, CA  94111
Tel: (415) 972-8160
Fax: (415) 972-8166
E mail: skupfer@glancylaw.com

_Interim Co-Lead Counsel for the Indirect_
_Purchaser Plaintiffs_