UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE: PHOTOCHROMIC LENS
ANTITRUST LITIGATION

MDL Case No.: 8:10-MD-2173-T-27EAJ

_____/

**ORDER**

Before the court are Defendant Transitions Optical, Inc.'s **Motion to Compel Discovery Responses from Indirect Purchaser End-User Plaintiffs** (Dkt. 207) and the Indirect Purchaser End-User Plaintiffs' **Opposition** (Dkt. 216). The court heard oral argument on the motion on January 25, 2012. For the reasons explained below, Transitions's motion to compel is **GRANTED** in part and **DENIED** in part.

**Background**

Transitions Optical, Inc. ("Transitions") purchases prescription eyeglass lenses ("ophthalmic lenses") from lens casters and applies a photochromic treatment that causes the lenses to darken when exposed to sunlight and fade back to clear when removed from sunlight ("photochromic lenses"). Transitions then sells the photochromic lenses back to lens casters, and lens casters sell the photochromic lenses to downstream markets.

The Direct Purchaser Plaintiffs represent a potential class of wholesale laboratories and retailers that purchased Transitions products from entities owned or controlled by one of the Essilor Defendants, Essilor of America, Inc. and Essilor Laboratories of America, Inc. The Indirect Purchaser Plaintiffs represent a potential class of individuals who purchased Transitions photochromic lenses from downstream entities, such as retailers and eye-care practitioners.

The Direct and Indirect Purchaser Plaintiffs allege that they paid inflated prices for

photochromic lenses as a result of Transitions's anticompetitive conduct. Transitions allegedly entered into exclusive dealing arrangements with wholesale laboratories, retailers, and lens casters and refused to deal with lens casters that sold or promoted competing products. The Essilor Defendants own or control wholesale laboratories that sell photochromic lenses. The Essilor Defendants allegedly conspired with Transitions to monopolize the relevant market and restrain trade.

The Direct Purchaser Plaintiffs assert five counts against Defendants for violation of the Sherman Act, as amended, 15 U.S.C. § 1 et seq. The Indirect Purchaser Plaintiffs assert four counts against Transitions for violations of state antitrust law, state unfair trade practices law, and unjust enrichment.

**Discussion**

The parties are currently engaged in class-certification discovery. Transitions seeks to compel the Indirect Purchaser Plaintiffs to produce documents regarding non-photochromic eyewear and sunwear. Transitions argues that such discovery is relevant to class certification, determining whether Transitions's conduct had an anticompetitive effect, and defining the relevant market. The Indirect Purchaser Plaintiffs respond that Transitions photochromic lenses do not compete with other sunwear products. Further, the Indirect Purchaser Plaintiffs contend that the requested information is equivalent to lay-witness testimony and is irrelevant to defining the market. The Indirect Purchaser Plaintiffs also object to Transitions's discovery requests as unduly burdensome.[1]

---

[1] The Indirect Purchaser Plaintiffs also argue that documents produced in discovery demonstrate that Transitions believes its competition is limited to other photochromic lens producers. Although such documents may ultimately be useful in defining the relevant market, there is no indication that theses documents alone are sufficient to define the relevant market or that they should preclude further discovery on the issue.

Defining the relevant market is primarily a process of describing those groups of producers that have the ability to take significant amounts of business away from each other because of the similarity of their products. U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 995 (11th Cir. 1993) (citing Gen. Indus. Corp. v. Hartz Mountain Corp., 810 F.2d 795, 805 (8th Cir. 1987)). The outer boundaries of a product market are defined by the reasonable interchangeability of use or the cross-elasticity of demand between a product and its substitutes.[2] Id. (citing Brown Shoe Co. v. United States, 370 U.S. 294, 325 (1962)). Courts should consider how the product is used by consumers in general, see Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1337 (11th Cir. 2010), and the extent to which consumers view various categories of sellers as substitutes, see U.S. Anchor, 7 F.3d at 995 (citing Int'l Tel. & Tel. Corp., 104 F.T.C. 280, 402 (1984)).

As discussed above, Transitions creates photochromic lenses by applying a photochromic treatment to ophthalmic lenses. The treatment causes the ophthalmic lenses to darken when exposed to sunlight and fade back to clear when removed from sunlight. The resulting photochromic lenses serve two purposes: vision correction and ultraviolet-light protection. Consequently, photochromic lenses can be considered functional substitutes for clear ophthalmic lenses as well as ultraviolet-protection products.

Documents produced by Transitions confirm that its photochromic lenses are intended to serve as a consumer's primary pair of corrective lenses (Dkt. 220 Ex. 2 at 39-41; Dkt. 222 Ex. 2 at 1-2). However, Transitions does not view its photochromic lenses as a replacement for sunglasses. According to Transitions, sunglasses are better suited for sustained outdoor use (Dkt. 220 Ex. 2 at

---

[2] "The cross-elasticity of demand measures the change in the quantity demanded by consumers of one product relative to the change in price of another." Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1338 n.13 (11th Cir. 2010).

41) and may function in some settings where photochromic lenses do not, such as in a car. Nonetheless, photochromic lenses, like sunglasses, provide ultraviolet-light protection (Dkt. 222 Ex. 2 at 1). And sales of photochromic lenses may be linked to the sales of sunglasses (Dkt. 220 Ex. 2 at 44; Dkt. 222 Ex. 1 at 3), which presents the possibility that a cross-elasticity of demand exists between the two products. Therefore, discovery related to clear ophthalmic lenses and ultraviolet-protection products is relevant to defining the market at issue.

The Indirect Purchaser Plaintiffs argue that discovery from individual consumers constitutes lay-witness testimony and is irrelevant to defining the market at issue. This argument is without merit. Although construction of the relevant market must be based on expert testimony, an expert may consider consumer preference making this determination. See Bailey v. Allgas, Inc., 284 F.3d 1237, 1246-48 (11th Cir. 2002); see also U.S. Anchor, 7 F.3d at 995.[3]

The Indirect Purchaser Plaintiffs also contend that responding to Transitions's discovery requests presents an undue burden because they would be required to contact their eye-care practitioners and search through a decade of records maintained in paper format. However, the Indirect Purchaser Plaintiffs do not provide any details regarding the expense or time required for responding to Transitions's discovery requests. The Indirect Purchaser Plaintiffs have not demonstrated that their burden of production outweighs the likely benefits of discovery considering the importance of the issues at stake, the amount in controversy, and the parties' resources. Fed. R. Civ. P. 26(b)(2)(C).

---

[3] The Indirect Purchaser Plaintiffs also contend that discovery from them is irrelevant to a company the size of Transitions. However, at this stage, the records is not sufficiently developed to permit a determination as to whether information from the Indirect Purchaser Plaintiffs is so limited as to be practically irrelevant to the issues presented in this case.

As Transitions has demonstrated that the discovery sought is justified on the issue of defining the relevant market, it is not necessary to address the parties' arguments regarding the relevance of the discovery to determining whether there are questions of law or fact common to potential class member or to the merits of the Indirect Purchaser Plaintiffs' claims. The Indirect Purchaser Plaintiffs shall produce information relating to clear ophthalmic lenses and ultraviolet-protection products, such as sunglasses or clip-on sunglass attachments. However, the Indirect Purchaser Plaintiffs do not need to produce information regarding frames, lens treatments, anti-reflective coatings, scratch-resistant coatings, or other products that do not correct vision or provide ultraviolet-light protection.

## Conclusion

Accordingly, and upon consideration, it is **ORDERED** and **ADJUDGED** that Transitions's **Motion to Compel Discovery Responses from Indirect Purchaser End-User Plaintiffs** (Dkt. 207) is **GRANTED** in part and **DENIED** in part.

**DONE AND ORDERED** in Tampa, Florida on this 7th day of February, 2012.

_____
ELIZABETH A JENKINS
United States Magistrate Judge