**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| **This document relates to:** ALL ACTIONS | Case No. 8:10-md-2173-JDW-EAJ  Hon. James D. Whittemore |

**JOINT DISCOVERY STATUS CONFERENCE STATEMENT**

Pursuant to the Court's March 13 and April 16, 2012 Orders (Dkt. Nos. 229, 258), plaintiff Insight Equity A.P.X. d/b/a Vision-Ease Lens Worldwide ("Vision-Ease"), the Direct Purchaser Plaintiffs[1] and Indirect Purchaser Plaintiffs[2] (collectively, "Plaintiffs"), and defendants Transitions Optical, Inc. ("Transitions"), Essilor of America, Inc. and Essilor Laboratories of America, Inc. (jointly, "Essilor" and collectively, "Defendants")[3], by and through their undersigned counsel, hereby submit the following Joint Discovery Status Conference Statement.

**I.  Defendants' Discovery Responses**

**Transitions**

On August 15, 2011, Transitions provided comprehensive responses to Plaintiffs' various interrogatories. Including a supplemental production made on March 12, 2012, Transitions has produced nearly 450,000 documents comprising over 2 million pages, as well as a vast amount

---

[1] B&B Eyes, Inc; Central Illinois Vision Associates, Ltd.; Florida Optical Express, Inc.; Nouveau Vision, Inc.; and Optical Supply, Inc.
[2] Howard Achtman; John Donohoe; Keith Forbes; Amanda Gable; Gabby Klein; Edmund Moores; Caryl O'Keefe; Keith Brian Roller; Axhi Sabani; Phyllis Sternemann; and Eldrige Donald Wilcox.
[3] By joining in this report, Defendants do not agree with or otherwise adopt certain of the plaintiffs' claims to be "direct purchasers."

1

of transactional data spanning the years 2000 to 2011. The overwhelming majority of this production was completed prior to January 1, 2012. On January 9, 2012, Transitions received a second set of document requests from Vision-Ease. Transitions served its responses and objections on February 9, 2012, and the parties continue to meet and confer regarding the additional requests.

Transitions made its President, David Cole, available for a 30(b)(6) deposition on April 5, 2012 and has received notices of depositions for four additional employees, which have been scheduled for May 2, 10, 22 and 24. A dispute has arisen regarding the proper procedure for Vision-Ease and Direct Purchaser Plaintiffs to obtain discovery from Laurent Dosseville. The parties' positions on that dispute are thoroughly discussed in the briefing on Vision-Ease's motion to compel. See Dkt. Nos. 231 & 241.

On June 9, 2011, Transitions served its first set of document requests and interrogatories on Vision-Ease. The parties engaged in several months of meet and confer negotiations before Vision-Ease produced 8,000 documents it had previously provided to the Federal Trade Commission (FTC) in December 2011 and February 2012. Meet and confer negotiations continued, with Vision-Ease agreeing to complete its production of agreed data and documents by February 29, 2012. On March 20, 2012, Vision-Ease produced roughly 30,000 additional documents, and on April 6, 2012 produced approximately 15,000 documents. On April 9, 2012, Vision-Ease produced certain transactional data. To date, Vision-Ease has not completed its production of documents. While the parties reached agreement on much of the discovery propounded by Transitions, they have reached an impasse regarding several categories of documents, the inclusion of certain custodians, and the proper date ranges for other custodians.

The parties' positions on that dispute are thoroughly discussed in the briefing on Transitions' motion to compel. See Dkt. Nos. 237 & 245.

On August 11, 2011, Transitions served its first set of document requests and interrogatories on the Indirect Purchaser Plaintiffs. Indirect Purchaser Plaintiffs provided their initial objections and responses on September 27, 2011. After meet and confer negotiations, Indirect Purchaser Plaintiffs made an initial production of agreed documents on November 18, 2011 comprising 20 pages of documents from named Plaintiffs Howard Achtman, John Donohoe, Keith Forbes, Amanda Gable, Gabby Klein, Caryl O'Keefe, and Brian Keith Roller. On January 6, 2012, Transitions moved to compel discovery regarding non-photochromic lenses, and this Court granted the motion in part on February 7, 2012. See Dkt. No. 224.

As of this date, the following discovery from the Indirect Purchaser Plaintiffs remains outstanding: revised responses to interrogatories 3 and 4 of Transitions' first set of interrogatories in accordance with the parties' agreement; any remaining agreed documents from named Plaintiffs Howard Achtman, John Donohoe, Keith Forbes, Amanda Gable, Gabby Klein, Caryl O'Keefe, and Brian Keith Roller (or a certification that no further documents exist); agreed documents from named Plaintiffs Eldridge Donald Wilcox, Axhi Sabani, Phyllis Sternemann, and Edmund Moores; interrogatory responses on behalf of Plaintiff Eldridge Donald Wilcox; and documents and revised interrogatory responses from all Plaintiffs required by this Court's February 7, 2012 order. Since January 30, 2012, counsel for Transitions has exchanged multiple e-mails with counsel for the Indirect Purchaser Plaintiffs inquiring when the remaining discovery will be provided. On March 15, 2012, counsel for the Indirect Purchaser Plaintiffs notified counsel for Transitions that production would be completed no later than the end of March. To date, none of the outstanding discovery has been provided.

Transitions concurs with Essilor's discussion below of the discovery jointly propounded by Defendants on the Direct Purchaser Plaintiffs.

**Essilor**

On February 24, 2012 Essilor completed its response to Plaintiffs' first set of document requests, including transactional data. Essilor has produced over 325,000 documents constituting approximately 1.3 million pages to the Direct Purchasers in this litigation, and more than four million KB of transactional data. On February 23, 2012 Essilor provided responses totaling 169 pages to Plaintiffs' first interrogatories. Essilor met and conferred with Plaintiffs regarding certain inaccessible transactional data. The parties expect to reach an agreement soon and Essilor expects to provide that data to Plaintiffs in a timely manner. Essilor has no other outstanding discovery requests from Plaintiffs.

On March 26, 2012 Essilor of America, Inc. and Essilor Labs of America, Inc. each received a joint notice from Plaintiffs for a one-day 30(b)(6) deposition. Essilor proposed dates for those witnesses and is working with Plaintiffs to determine the scope and scheduling of those depositions.

Defendants served a second request for interrogatories on the Direct Purchasers on March 16, 2012. Each of the Direct Purchasers responded on April 16, 2012 and Defendants are in the process of reviewing those responses.

Defendants served their first set of document and interrogatory requests on Direct Purchasers on August 22, 2011. Defendants received interrogatory responses between October 31 and November 3, 2011. Defendants received document productions from Florida Optical Express on January 19, 2012 (53,010 single-paged documents), from B&B Eyes (23 documents, 1473 pages) and Optical Supply (28 documents, 1010 pages) on February 1, 2012, and an initial

production from CIVA (65 pages) on March 13, 2012 (a small amount of transactional data followed on March 27, 2012).

Essilor has been in contact with Direct Purchasers about the timing and substance of their interrogatory responses and document productions.

- Nouveau Vision and CIVA agreed to complete their document productions and provide supplemental interrogatory responses by April 10, 2012; Nouveau Vision did so, and CIVA supplemented its interrogatory responses on April 11 and mailed its production that same date.

- Optical Supply received a letter from counsel for Essilor on March 14, 2012 raising questions about its document production and seeking supplemental discovery responses. Counsel for Direct Purchasers indicated in a March 27, 2012 email that she would have a better idea of when Optical Supply would supplement its interrogatory responses and production by March 30. Defendants learned on April 10 that Optical Supply intends to begin its supplemental document production by April 18 and supplement its interrogatory responses soon after that. Defendants respectfully request that this Court order Optical Supply to complete its document production and supplement its interrogatory responses by April 30, 2012.

- B&B Eyes received a letter from counsel for Essilor on February 27, 2012 raising questions about its document production and seeking supplemental discovery responses. Counsel for Direct Purchasers indicated in a March 15, 2012 letter that B&B was "double-checking whether it possesses any responsive documents that have not already been produced." On March 27, 2012 counsel for B&B responded to counsel for Essilor's February 27 letter stating that "[a]fter further review, B&B has no additional documents to produce" in response to the questions raised regarding its production, but that it would begin producing documents responsive to Magistrate Judge Jenkins' February 7, 2012 order by April 10, 2012. Defendants

heard nothing further from counsel for B&B until April 10, when B&B's counsel requested a call in which they informed Defendants that B&B had destroyed all documents it did not segregate for potential production in this case while closing down its business in September 2010. Learning at this very late hour that B&B destroyed relevant documents and closed its business in September 2010 raises significant questions that Defendants must investigate. First, the admitted destruction of documents, especially in light of the concerns Defendants previously raised regarding B&B's production, create considerable spoliation issues. Second, B&B has proposed it resolve the problem by asking third party suppliers for documents. This proposal (which might account for some transactional information but not other documents concerning the relevant market definition or other prerequisites to B&B's claims) fails to allow for meaningful discovery by the Defendants. Finally, B&B now claims it wound down its business in September 2010, but B&B never told Defendants of this development and the June 13, 2011 Direct Purchasers' Consolidated Amended Complaint (apparently filed more than 8 months after B&B closed) states that "Plaintiff B&B Eyes, Inc. … *is* a New York corporation" and "B&B Eyes *is* an optical retailer and eye-care practitioner." (¶ 17). Counsel for B&B never corrected this language in the complaint, never sent a letter to Defendants or even called to say that B&B was closing at any point until April 10, 2012, and only then did so in response to discovery questions raised by Defendants. Defendants are unsure if B&B now exists in any form, although there is some indication it may now be doing business as Sterling Optical. Defendants have serious concerns about the adequacy of B&B's preservation of potentially relevant documents, its document production in this case and its standing as a named plaintiff in this suit. Because counsel for B&B withheld this information for some time before ultimately disclosing it to Defendants on

6

April 10, 2012, Defendants are only now able to investigate these issues and are preparing to notice a 30(b)(6) deposition.

## II. Plaintiffs' Discovery Responses

**Vision-Ease**

<u>Responses to Transitions' Discovery Requests</u>. On July 12, 2011, Vision-Ease served responses to Transitions' first set of interrogatories and objections to Transitions' first set of document requests. From late-July 2011 to mid-January 2012, Vision-Ease and Transitions engaged in a meet-and-confer process over Vision-Ease's objections to Transitions' first set of document requests.

On December 21, 2011, before the meet-and-confer process concluded, Vision-Ease produced 7,881 documents (39,743 pages), consisting of documents it had previously provided to the Federal Trade Commission in connection with its investigation of Transitions' market practices. Since that time, Vision-Ease has continued to produce documents on a rolling basis, including the following productions: (i) 209 documents (528 pages) on February 6, 2012; (ii) 31,062 documents (157,324 pages) on March 15, 2012; and (iii) 14,933 documents (147,745 pages) on April 5, 2012. In total, Vision-Ease has produced nearly 54,085 documents comprising 345,340 pages.[4] On April 9, 2012, Vision-Ease produced two Microsoft Access databases containing transactional data spanning the years 2004 to 2011.

Vision-Ease has now produced an overwhelming majority of the documents that are responsive to Transitions' first set of document requests. Vision-Ease is still processing a small

---

[4] Many of the documents that Vision-Ease has produced consist of PowerPoint presentations, Excel spreadsheets, and Microsoft Access databases. Pursuant to the parties' agreement, Vision-Ease produced these files in native format. Each natively produced document is assigned a single Bates number and is counted as a single "page" for purposes of the page count listed, despite the fact that many of these native files would be dozens, if not hundreds, of pages in length if printed out in their entirety. Accordingly, the page count listed above is much smaller than the true page-count volume of Vision-Ease's production.

number of documents requiring additional scrutiny for privilege, redactions, or foreign language content.  Vision-Ease anticipates producing any such remaining responsive documents by mid-May 2012.

Transitions has brought a motion to compel Vision-Ease to produce documents from additional custodians, from additional date ranges, and for additional topics.  Dkt. 237.  Vision-Ease has filed its opposition to that motion (Dkt. 245) and will be prepared to answer the Court's questions or argue the motion at the April 25, 2012 status conference.

Issues Related to Transitions' Responses to Vision-Ease's Discovery Requests.

Vision-Ease has brought a motion to compel discovery related to Transitions' employee Laurent Dosseville.  Dkt. 231.  Transitions has filed its opposition.  Dkt. 237.  The Court granted Vision-Ease permission to file a reply brief and present oral argument at the April 25 status conference.  Dkt. 244.

Transitions completed its productions (excluding its privilege log) in response to Vision-Ease's first set of document requests by January 19, 2012, approximately three months after the date it had originally promised to complete production.  Vision-Ease is still evaluating whether Transitions' production includes all documents that Transitions represented it would produce.  No issues are yet ripe for the Court's involvement.

Transitions has yet to comply with the parties' stipulated order regarding privileged documents by providing either a standard privilege log or the information associated with an automatic privilege log by certain dates after completion of a production in response to document requests.  *See* Dkt. 217; Dkt. 214-1 at ¶¶ 6, 12.  No issues are yet ripe for the Court's involvement.

On January 9, 2012, Vision-Ease served a second set of document requests on Transitions, to which Transitions timely served written objections and responses. The parties are meeting and conferring on Transitions' objections. No issues are yet ripe for the Court's involvement.

**Direct Purchaser Plaintiffs**

The Direct Purchaser Plaintiffs ("DPPs") have been gathering and producing responsive documents over the last several months. After the Court issued its Order of February 7, 2012 (Dkt. No. 225), DPPs added to that search documents encompassed by the Order. DPPs have also responded to Essilor's seven letters plus additional emails regarding the minutiae of their discovery responses.

The status of the specific DPPs' responses to discovery is as follows:

- All five DPPs have served initial responses to Defendants' Second Set of Interrogatories.

- Florida Optical Express and Central Illinois Vision Associates have completed their document productions, produced transactional data, and issued supplemental responses to Defendants' First set of Interrogatories. DPPs do not believe there are any pending issues with regard to Florida Optical Express and CIVA's discovery responses.

- Nouveau Vision, Inc. has completed its document production except for a small number of documents that were mistakenly omitted from its first production, which Nouveau Vision anticipates serving on all parties this week. Nouveau Vision has also produced transactional data and issued supplemental responses to Defendants' First Set of Interrogatories. DPPs do not believe there are any pending issues with regard to Nouveau Vision's discovery responses.

- Optical Supply, Inc. has produced its initial set of documents. In response to Essilor's letter, OSI began the process of searching for additional responsive documents. OSI intends to respond to the letter and begin producing additional documents before April 18. Once this supplemental production is complete, OSI will also supplement its responses to Defendants' First Set of Interrogatories. Other than the fact that this limited amount of follow-up discovery remains outstanding, DPPs do not believe there are any pending issues with regard to OSI's discovery responses.

- B&B Eyes, Inc. has completed its initial production of documents and has supplemented its responses to Defendants' First Set of Interrogatories.

As required by the Court's February 7 order and in response to Defendants' letter dated February 27, 2012, B&B has also initiated a search for additional responsive documents related to B&B's purchases of clear lenses and sunwear. In connection with this search, B&B's counsel discovered that B&B had inadvertently discarded its records relating to non-Transitions products. Prior thereto, in the summer of 2010, B&B had gathered and segregated documents relating to Transitions lenses (which encompassed invoices that also included clear lenses if they appeared on the same invoice). In September 2010, while B&B was winding down its business operations, B&B's principal, Dr. Joseph Bistricer, having previously gathered and segregated Transitions-related documents, and believing he had thus complied with B&B's document preservation obligations, discarded the remainder of B&B's records. B&B produced the Transitions-related documents in response to Defendants' first set of requests for production served in August 2011. Although B&B has terminated its business operations, it still remains as an existing corporation and Dr. Bistricer is still its president and sole proprietor.

Contrary to defendants' assertion, plaintiffs' counsel was unaware of B&B's inadvertent discarding of potentially relevant records when they sent their March 27, 2012 letter to defendants' counsel. On April 12, 2012, shortly after learning of B&B's inadvertent discarding of potentially relevant records, counsel for defendants were notified thereof. In an attempt to reacquire its discarded purchase records, B&B has begun contacting its suppliers (other than Defendants, entities owned or controlled by Defendants, and Plaintiff Vision-Ease). B&B's counsel has informed defense counsel of these facts, will keep them informed of B&B's progress, and will produce such responsive records on a rolling basis as they are received.

**<u>Indirect Purchaser Plaintiffs</u>**

Indirect Purchaser Plaintiffs were served with document requests and interrogatories by Transitions on August 11, 2011. After the Court granted, in part, Transitions' motion to compel on February 7, 2012 (Dkt. No. 224), Indirect Purchaser Plaintiffs undertook to supplement their discovery in accordance with the Court's decision. That process is nearly complete. All except two (2) of the Indirect Purchaser Plaintiffs anticipate supplemented their responses to the interrogatories and produced supplemental documents on April 13, 2012. The remaining plaintiffs are in the process of completing supplementation.

On March 13, 2012, Indirect Purchaser Plaintiffs served Transitions with a second document request. Transitions served responses and objections on April 12, 2012 and the parties met and conferred on April 17, 2012. No issues are ripe for the Court's involvement at this time.

The Indirect Purchaser Plaintiffs are currently working to obtain and examine transactional data produced by various parties and non-parties. On April 9, 2012, Vision-Ease produced data which is currently being evaluated and reviewed for completeness. Also, the parties and Essilor are meeting and conferring over the production of four (4) years of transactional data held on Essilor's back-up tapes. Essilor has not, as yet, produced base lab

transactional data before 2009. Along with non-party data, these data are critical discovery and must be produced promptly so the Indirect Purchaser Plaintiffs have time to review newly produced data for completeness and determine whether additional supplementation is necessary.

## III.   Non-Party Discovery

The parties have been actively pursuing non-party discovery since September 2011 when a dozen subpoenas were served on various companies in the ophthalmic lens industry. Dozens more non-party subpoenas have been served in the last month. The non-party subpoenas seek information not generally available from any of the parties, but directly related to potential claims and defenses in this case. The non-party discovery also seeks information regarding the relevant market, competition in the market, and issues related to class certification. For these reasons, non-party discovery is an important part of this litigation.

Status of September 2011 Subpoenas

In late September 2011, the parties jointly served subpoenas requesting documents and transactional data from twelve non-parties, including lens casters, laboratories, retailers and eye care practitioners. Since October 2011, the parties have been actively engaged in coordinated and good-faith meet and confer negotiations with the non-parties regarding the discovery requests. Following several weeks of discussions with certain non-parties, the parties submitted a joint motion to modify the protective order to provide additional protections for non-party discovery. This Court approved the modification to the protective order by Order dated December 29, 2011. *See* Dkt. No. 206.

Plaintiffs and Defendants continue to meet and confer with several third parties who received joint subpoenas in September 2011. After over six (6) months of actively negotiating with non-parties over the scope, terms and conditions of complying with the subpoenas, only a couple of non-parties have completed their productions. To date, the parties have received, in

the aggregate, tens of thousands of pages of documents and significant amounts of data from five (5) non-parties, two of whom have essentially complied with the subpoenas while three are still in the process of fully complying. The parties have been meeting and conferring with the remaining parties. Of these, three non-parties have produced little or no documents and data because no agreement has been reached on the scope of the requests and/or the reimbursement of non-party expenses. These meet and confers have been largely unsuccessful. If the parties cannot reach agreement with these non-parties, the Court's assistance may be requested.

**Indirect Purchaser Plaintiffs**

The Indirect Purchaser Plaintiffs served ten non-party subpoenas in March 2012 directed to retailers and eye-care practitioners. Transitions joined in these subpoenas and added some requests for information. Similarly, the Indirect Purchaser Plaintiffs joined in approximately twenty non-party subpoenas that were prepared and served by Transitions. The Indirect Purchaser Plaintiffs and Transitions are in the process of meeting and conferring with these non-parties and collecting responsive documents and data.

**Defendants' Statement Regarding Additional Third-Party Subpoenas**

In February Plaintiffs and Defendants agreed to serve a second wave of third party subpoenas. In order to coordinate that effort and minimize the burden to third parties, all parties, including Vision-Ease, agreed to serve a single joint subpoena on third parties. On February 16, 2012 all parties agreed to exchange lists of additional subpoena targets on February 24. The parties circulated their lists March 2, with each party noting the subpoenas they planned to join. On March 7, 2012 Transitions proposed revisions to the draft subpoenas submitted by all Plaintiffs. The Indirect Purchasers timely responded to Transitions' revisions and negotiated the scope and requests to certain third-party eye care parties. Transitions and the Indirect Purchasers served those practitioners between March 15 and March 27, 2012.

Transitions awaited a response from Vision-Ease and the Direct Purchasers regarding joint subpoenas to other entities in the ophthalmic industry. Neither Vision-Ease nor Direct Purchasers responded until March 26, 2012 (almost three weeks after Transitions sent its revisions), at which time Vision-Ease stated only that Transitions' proposed revisions were "unacceptable" and that Vision-Ease planned to serve its own subpoenas. Despite objections from Defendants that Vision-Ease should not burden third parties with multiple subpoenas, on March 28, 2012 Vision-Ease stated that it would not make any attempt to negotiate or reach agreement with the Defendants on a satisfactory joint notice. Vision-Ease proceeded to serve 11 subpoenas on lenscasters, other photochromic lens manufacturers, large national laboratories, and managed care organizations. In its cover letter to those entities Vision-Ease stated that "this subpoena is being issued by certain plaintiffs after negotiations with defendants on a joint subpoena reached impasse over the scope of the document requests." Despite Vision-Ease's claim that its subpoenas were being served by "certain plaintiffs" in its cover letters, no other plaintiffs joined those subpoenas. Further, no impasse had been reached, because Vision-Ease decided not to negotiate at all.

Defendants and the Direct Purchasers successfully negotiated joint subpoenas in a matter of days and Direct Purchasers have served one joint subpoena. Defendants are in the process of serving additional subpoenas that neither the Indirect nor Direct Purchasers wish to join.

Vision-Ease's unilateral refusal to engage in further negotiations will unquestionably burden third parties who are now faced with multiple subpoenas, and potentially prejudice other parties to the litigation who wish to obtain information from the same entities. Accordingly, Defendants request that Vision-Ease be instructed to coordinate any further communications or subpoenas with current or future subpoena recipients so as to avoid both problems.

14

**Vision-Ease's Statement Regarding Additional Third-Party Subpoenas**

All parties *except Vision-Ease* agreed to meet and confer on any third-party subpoenas before sending them. Dkt. 59 at ¶ 3(A)(2)(b). Nevertheless, in the spirit of reducing any potential burdens on third parties, Vision-Ease participated in the meet-and-confer process regarding third-party subpoenas until it became apparent that Defendants' position was so unreasonable as to raise a substantial risk that further negotiations would jeopardize Vision-Ease's ability to obtain the discovery it needed by the July 15, 2012 discovery cut-off. At that point, Vision-Ease advised Defendants that (1) it would serve its own subpoenas, (2) advise the subpoena recipients that other parties may serve additional subpoenas on them, and (3) advise recipients that Vision-Ease would work with them to reduce any burdens associated with receiving multiple subpoenas.

Defendants identify only one potentially negative effect of Vision-Ease's conduct, namely that certain third parties might receive multiple subpoenas. Vision-Ease is not aware that any third parties have actually received multiple subpoenas,[5] but if any have (or will), Vision-Ease is fully prepared to work with all interested parties to eliminate redundancy or otherwise reduce the burden of responding. Vision-Ease therefore believes this is a non-issue, but it will be prepared to explain its conduct and position in more detail at the April 25 status conference.

**IV.** **Depositions**

The parties are now entering a period of active deposition discovery. While the parties hope to avoid deposition disputes requiring the Court's immediate attention, the parties respectfully request that the Court put in place a protocol for contacting the Court if and when such deposition disputes arise.

---

[5] To date, Vision-Ease has not received service copies of any of the subpoenas that Transitions or Essilor claim they have served. In contrast, Vision-Ease provided copies of its subpoenas concurrent with their service on third parties.

Dated: April 18, 2012    Respectfully submitted,

/s/ Chul Pak
Chul Pak
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Phone: (212) 999-5800
Fax: (212) 999-5899
E-mail: cpak@wsgr.com

*Counsel for Defendant Transitions Optical, Inc.*

s/ Julie E. McEvoy
Julie E. McEvoy
Michelle M. Bushman
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001-2113
Tel: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmcevoy@jonesday.com

*Counsel for Defendants Essilor of America, Inc. and Essilor Laboratories of America, Inc.*

s/ Susan G. Kupfer
Susan G. Kupfer
Joseph Barton
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Tel: (415) 972-8160
Fax: (415) 972-8166
E-mail: skupfer@glancylaw.com

*Interim Co-Lead Counsel for Indirect Purchaser Class Plaintiffs*

s/ Michael M. Buchman
Michael M. Buchman
Adam G. Kurtz
POMERANTZ HAUDEK GROSSMAN & GROSS LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Tel: (212) 661-1100
Fax: (212) 661-8665
E-mail: mbuchman@pomlaw.com

*Interim Co-Lead Counsel for Indirect Purchaser Class Plaintiffs*

s/ Ben Barnow
Ben Barnow
Blake A. Strautins
BARNOW & ASSOCIATES, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
E-mail: b.barnow@barnowlaw.com

*Interim Co-Lead Counsel for Indirect Purchaser Class Plaintiffs*

s/ Lance Harke
Lance A. Harke
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami, FL 33138
Tel: (305) 536-8220
Fax: (305) 536-8229
E-mail: LHarke@harkeclasby.com

*Interim Co-Lead Counsel for Indirect Purchaser Class Plaintiffs*

/s/ Christopher C. Casper
Christopher C. Casper
JAMES, HOYER, NEWCOMER, SMILJANICH &
YANCHUNIS, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Boulevard
Tampa, FL 33609
Phone: (813) 286-4100
Fax: (813) 286-4174
E-mail: ccasper@jameshoyer.com

*Interim Liaison Counsel for Indirect Purchaser End-User Class Plaintiffs*

s/ Michael Lindsay
Michael A. Lindsay
lindsay.michael@dorsey.com
F. Matthew Ralph
ralph.matthew@dorsey.com
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Tel: (612) 340-2600

*Attorneys for Plaintiff
Insight Equity A.P. X, LP, d/b/a
Vision-Ease Lens Worldwide, Inc.*

s/ Bart D. Cohen
H. Laddie Montague, Jr.
Bart D. Cohen
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
E-mail: hlmontague@bm.net

*Interim Co-Lead Counsel for Direct Purchaser Class Plaintiffs*

        s/ Linda P. Nussbaum
        Linda P. Nussbaum
        Robert G. Eisler
        John D. Radice
        Susan R. Schwaiger
        GRANT & EISENHOFER P.A.
        485 Lexington Ave., 29th Floor
        New York, NY 10017
        Tel: (646) 722-8500
        Fax: (646) 722-8501
        E-mail: lnussbaum@gelaw.com

*Interim Co-Lead Counsel for Direct Purchaser Class Plaintiffs*

        s/ Bernard Persky
        Bernard Persky
        Kellie C. Lerner
        LABATON SUCHAROW LLP
        140 Broadway
        New York, NY 10005
        Tel: (212) 907-0700
        Fax: (212) 818-0477
        E-mail: bpersky@labaton.com

*Interim Co-Lead Counsel for Direct Purchaser Class Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing Joint Discovery Status Conference Statement to be served via ECF on this 18th day of April 2012.

Dated:   April 18, 2012

                                           s/ Michelle M. Bushman
                                           Michelle M. Bushman