**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| THIS DOCUMENT RELATES TO: ALL CASES | Case No. 8:10-md-02173-JDW-EAJ |

**NON-PARTY PPG'S OPPOSITION TO PLAINTIFF VISION-EASE'S**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

PPG Industries, Inc. ("PPG"), by and through its undersigned counsel, hereby respectfully files its opposition to Plaintiff Vision-Ease's Motion to Compel Production of Documents by PPG Industries, Inc. (Doc. #373 ("Motion").)   The Motion seeks an order compelling PPG to produce documents pursuant to Federal Rules of Civil Procedure 26 and 45. For the reasons set forth below, the Motion should be denied in its entirety.

## I. INTRODUCTION

In its Motion, Vision-Ease: (a) miscasts PPG as being synonymous with Defendant Transitions Optical, Inc. ("TOI"), instead of recognizing PPG as a non-party to this litigation; (b) misstates the discovery record by claiming that "PPG produced no documents"; and (c) mischaracterizes the communications between Vision-Ease and PPG regarding the subpoena at issue.  Through these constructs, Vision-Ease seeks to sidestep the limitations on non-party discovery recognized by the Federal Rules and to downplay the fact that Vision-Ease chose to wait until nearly eight weeks after the close of fact discovery in this litigation to file this Motion. The actual record in this matter demonstrates that: (a) PPG is not a party to this litigation and, as

such, is protected from unreasonable discovery efforts by the Federal Rules of Civil Procedure; (b) PPG has produced tens of thousands of pages of documents that already are in Vision-Ease's possession for use in this litigation; and (c) PPG acted in an appropriate and forthright manner in response to Vision-Ease's overly broad and unduly burdensome document production demands.

## II.  RELEVANT BACKGROUND

### A.    PPG Is a Non-Party to This Litigation.

PPG is a distinct and separate corporate entity from Defendant TOI.  PPG is a multinational, publicly traded corporation with several distinct reporting segments, including segments related to the manufacture and sale of paints, fiberglass, glass, chemicals, and optical products.  Defendant TOI is a joint venture between PPG and Essilor International S.A., which is the corporate parent of the remaining defendants in this litigation, Essilor of America, Inc. and Essilor Laboratories of America, Inc.  (Doc. #127, ¶¶ 19-22.)  PPG does not run the daily operations of TOI, and PPG's involvement in the manufacture and sale of monomers to lens casters and of photochromic dyes to TOI is not the subject of Plaintiffs' claims in this litigation.

### B.    PPG Has Produced Substantial Documentation Regarding TOI.

In its Motion, Vision-Ease asserts that "PPG produced no documents."  (Doc. #373, p. 1.) This assertion is untrue, as PPG has made two separate productions of documents that Plaintiffs possess.

First, in October 2010, TOI produced to Plaintiffs in this litigation a large volume of documents that were originally produced by PPG during the 2009 Federal Trade Commission ("FTC") investigation of TOI.  PPG's production in response to that FTC investigation included documents collected from Mr. Rick Elias, a PPG executive who also has served as TOI's Chief Executive Officer.  PPG devoted considerable time, expense, and resources to identify, collect,

process, search, and review these documents for responsiveness and privilege and to redact certain information that was irrelevant to the investigation but was confidential, proprietary, or otherwise sensitive to PPG's business interests.[1] Through the October 2010 production by TOI of all documents previously produced as part of the FTC investigation, the Plaintiffs received 1,978 documents, consisting of 14,417 pages, which originated from PPG. *See* attached Exhibit 1 (Declaration of Daniel R. Miller ("Decl. of Miller"), ¶ 1). Notably, these documents address many of the same topics contained in the subpoena Vision-Ease subsequently served on PPG in 2012.[2]

Second, in this litigation, PPG assisted in the collection and production of 3,099 additional documents, consisting of 7,914 pages, to update the previous FTC investigation related production of Rick Elias' materials through January 1, 2011. PPG undertook this significant effort at the request of TOI – prior to receiving the subpoena at issue from Vision-Ease – to ensure that responsive materials would be provided to Plaintiffs. Again, the documents produced to Plaintiffs in this effort address many of the same topics contained in the subpoena

---

[1] As noted earlier, PPG operates through multiple reporting segments, only one of which relates to optical products, and only a portion of this optical products reporting segment has anything to do with TOI. Because production of confidential, proprietary and otherwise sensitive business information relating to such non-TOI businesses would have served no legitimate purpose in connection with disputes regarding TOI's practices, PPG redacted the irrelevant information from its document production to the FTC. The United States government raised no objections to these redactions. If PPG were required to reproduce these materials without redactions, PPG would be required, *inter alia*, to re-review all of the materials to identify those portions implicating business partners' information shared pursuant to Non-Disclosure Agreements, and PPG would be required to undertake a significant effort to notify those business partners and give them an opportunity to raise objections in these proceedings to the disclosure of their confidential, proprietary information, which is wholly unrelated to TOI's business or the disputes at issue in this litigation.

[2] Ironically, after initially suggesting in its Motion that PPG has "produced no documents," Vision-Ease later cites one of these documents produced from PPG's records to the FTC. (Doc. #374-20.)

Vision-Ease subsequently served on PPG and on which Vision-Ease now moves to compel. Decl. of Miller, ¶1.

In addition to these two document productions by PPG totaling more than twenty-two thousand pages, TOI's broader productions to the Plaintiffs have included thousands of other documents that either were sent or received by PPG employees. According to TOI's counsel, TOI produced over twenty-five thousand documents (comprising more than 125,000 pages) to the Plaintiffs in this litigation that include as a sender or recipient either a defined PPG e-mail address or a PPG employee with no employment history at TOI. *Id.*

Accordingly, and contrary to the Motion's attempt to portray PPG as simply refusing to make any document productions, Vision-Ease actually is in possession of tens of thousands of documents that address the stated target of its subpoena.

**C.    PPG's Dealings with Vision-Ease Regarding the Subpoena Have Been Appropriate and Forthright.**

After receiving Vision-Ease's document requests subpoena, PPG carefully considered the requests and the costs and burdens associated with responding to them. While weighing these considerations, PPG proactively communicated with Vision-Ease about the subpoena. In contrast to Vision-Ease's description in its Motion, PPG was clear in these communications about its significant concerns regarding the breadth of the requests, their obvious duplication of the previous document productions PPG had made, and the significant burdens they sought to impose on PPG. (Doc. ## 374, ¶10; 374-10.) At no time during these communications with Vision-Ease did PPG promise to produce additional documents in response to the subpoena, nor should PPG have, given that PPG was still in the process of determining how to respond. Decl. of Miller, ¶2. Once PPG sufficiently considered the matter, PPG informed Vision-Ease on June 26th that it would be providing its responses and objections by June 29. (Doc. ## 374, ¶11; 374-

- 4 -

11.)  Consistent with this statement, PPG timely served "PPG Industries, Inc.'s Objections and Responses to First Set of Document Requests by Insight Equity A.P. X, LLP, d/b/a Vision-Ease Lens Worldwide" on June 29, 2012.  (Doc. ## 374, ¶12; 374-12.)  These responses and objections specifically described how previous productions by PPG and TOI included the responsive Rick Elias documents in the possession of PPG.  (Doc. ## 374, ¶12; 374-12, pp. 6-7.)

On July 30, PPG again communicated with Vision-Ease, and explicitly advised that PPG did not anticipate producing any additional documents in response to the document requests prior to the subpoenaed deposition of PPG employee Michael Ruggeri on August 15, 2012.  (Doc. ## 374, ¶13; 374-13.)  On a call on August 2 to discuss this issue further, PPG clearly reiterated its objections to the subpoena's document requests and confirmed that PPG would not be producing additional documents in response to those requests.  Decl. of Miller, ¶3.  Although PPG and Vision-Ease mutually agreed to consider how the document requests could be limited so as to ease the burdens on PPG, at no time did PPG undertake any obligation to rewrite Vision-Ease's subpoena and bring it within the reasonable limitations of non-party discovery under the Federal Rules of Civil Procedure.  *Id.*

Vision-Ease clearly knew by no later than the end of July 2012 that "PPG intended to produce no documents whatsoever" in response to the documents requests in Vision-Ease's subpoena.  (Doc. ## 374; 374-14.)  However, Vision-Ease did not file a motion to compel at that time, but waited almost three months thereafter to do so.

At the deposition of Mr. Ruggeri on August 15,[3] Vision-Ease chose not to ask questions of Mr. Ruggeri regarding what documents he maintains or what knowledge/involvement he has

---

[3] PPG's good faith conduct in this matter is further demonstrated by the fact that Mr. Ruggeri and PPG's counsel traveled from Pittsburgh, Pennsylvania, to appear at this deposition in Tampa for the convenience of the parties to this litigation.  (Doc. #374, ¶15.)

- 5 -

regarding PPG's document collection and production efforts, either in connection with the FTC investigation or the instant litigation.  Likewise, Vision-Ease did not state any objections on the record regarding PPG's refusal to make additional document production, and it did not make any reservation of rights to conduct additional questioning of Mr. Ruggeri if PPG produced additional documents after the deposition.[4]  Vision-Ease did not file a motion to compel further production in the days immediately following the deposition.

On August 27, PPG participated in another call with Vision-Ease to discuss PPG's responses and objections to the document requests in the subpoena.  Decl. of Miller, ¶4.  During this call, PPG explained its belief that, even if the document requests could somehow be limited – a step Vision-East never attempted to undertake – the requests still would be duplicative of the documents and information previously produced to Plaintiffs and otherwise available from the Defendants in the litigation, including TOI.  *Id.*  PPG offered several specific examples of document requests that, if limited to a reasonable scope, would be wholly duplicative of PPG's and TOI's prior document productions.  *Id.* (recounting the discussion regarding Requests No. 9 and 3).  PPG also suggested that, if Vision-Ease could identify any documents it believed were absent from the previous document productions – such as a missing quarterly report or email attachment – then PPG would be willing to attempt to locate such document or confirm its non-existence.  *Id.*  Vision-Ease did not respond directly to this invitation.  *Id.*  Furthermore, PPG pressed Vision-Ease for an explanation of why it was seeking such an overly broad and duplicative production effort, and the only response Vision-Ease offered was that this production

---

[4] Based on a belief that PPG would be producing documents after the deposition, Vision-Ease could have asked such questions and reserved such rights on the record at Mr. Ruggeri's deposition.  Had such questions been asked, Vision-Ease would have learned that Mr. Ruggeri's role is simply financial accounting and that any strategic business documents he receives are also received by Mr. Elias, whose documents are in Plaintiffs' possession.

(or reproduction) was necessary to assist Vision-Ease in confirming the sufficiency of the document productions already provided by the Defendants in the litigation.  *Id.*  PPG pointed out that such a rationale was inappropriate and insufficient in light of the substantial burdens a reproduction effort would foist on a non-party like PPG.  *Id.*

Vision-Ease did not file a motion to compel with this Court between the August 27 telephone conference and the August 30 close of fact discovery established in this litigation by the Court's July 31, 2012 Order (the "Order").  (Doc. #307, p. 4.)  Instead, Vision-Ease chose to wait until nearly *eight weeks after the close of fact discovery* before filing this Motion on October 24, 2012.

### III. <u>ARGUMENT</u>

**A.**     <u>**Vision-Ease's Motion to Compel Is Untimely and Should Be Denied.**</u>

This Court has taken a dim view of discovery motions filed in an untimely manner. "Although neither the Federal Rules of Civil Procedure nor the Local Rules of this court prohibit the filing of discovery motions beyond the discovery deadline, counsel are encouraged to do so to advance the litigation in an orderly fashion.  . . . The court 'expects parties to address disputes promptly – before the discovery deadline passes or soon thereafter.'"  *Southeastern Mech. Servs. v. Brody*, No. 8:08-CV-1151, 2009 U.S. Dist LEXIS 26183, at *5 (M.D. Fla. Apr. 14, 2009) (Jenkins, M.J.) (denying Defendant's motion to compel in light of "the length of [Defendant's] delay in filing the motion to compel, the ample opportunity to raise this dispute prior to the close of discovery, and the lack of a valid reason for the belated motion," and quoting *Jim Boast Dodge, Inc. v. Daimler Chrysler Motors Co., LLC*, No. 8:05-CV-1999, 2007 U.S. Dist. LEXIS 95069, at *1 (M.D. Fla. Jan. 16, 2007) (Pizzo, M.J.)) (other citations omitted).  In this district, "[c]ounsel, by agreement may conduct discovery after the formal [discovery] completion date but should not expect the Court to resolve discovery disputes arising after the discovery

completion date." Middle District Discovery (2001) at 3 (§ I.F.1.). Indeed, magistrate judges in this district have denied motions to compel as untimely where the motions were filed as few as three days after established discovery deadlines. *See Schauer v. Southwest Acceptance Finance, Inc.*, No. 8:05-CV-510, 2006 U.S. Dist. LEXIS 44277, at *1-3 (M.D. Fla. June 29, 2006) (Scriven, M.J.) (denying a motion to compel as untimely when motion was filed twelve days after the previously-extended discovery deadline); *Livingston v. H.I. Family Suites, Inc.*, No. 6:05-CV-860, 2006 U.S. Dist. LEXIS 19588, at *1-2 (M.D. Fla. Apr. 14, 2006) (Spaulding, M.J.) (denying a motion to compel filed three days after the discovery deadline where the relevant case management order cautioned the court may deny as untimely all motions to compel files after that deadline).

Although the Order set the fact discovery deadline as August 30, 2012, it does not explicitly address motions to compel filed after this deadline. The Plaintiffs, including Vision-Ease, presented discovery schedule proposals to this Court that highlight the untimely nature of their Motion. The "Supplemental Joint Case Management Statement and Proposed Revised Scheduling Order," which was filed by the parties on July 3, 2012, and considered by this Court in its Order, presented Plaintiffs' proposals for modifications to this case's case management and scheduling order. (Doc. #292 (Supplemental Joint Case Management Statement), pp. 14-16.) In these proposals, the Plaintiffs asked the Court to extend the fact discovery deadline from July 15 to September 17. *Id.* at 15. Simultaneously, the Plaintiffs requested to extend the deadline for parties to file any motions to compel from July 15 (the same date as the then-current fact discovery deadline) to August 1, almost a full *seven weeks* before their proposed fact discovery deadline. *Id.* Thus, Vision-Ease clearly acknowledged – if not endorsed the idea – that deadlines for motions to compel on fact discovery matters should be set *well in advance* of the

deadline for fact discovery. And yet, in contradiction with both this Court's established practices regarding timeliness of discovery motions and Vision-Ease's own prior proposals regarding discovery deadlines, Vision-Ease not only failed to file this Motion by the defined discovery deadline of August 30, but failed to file the motion for nearly *eight more weeks*. Accordingly, PPG respectfully requests that this Court deny Vision-Ease's Motion as untimely.

**B.**     **PPG Is Not a Party to This Litigation and Should Be Shielded from Vision-Ease's Overly Broad and Unduly Burdensome Discovery Requests.**

   **1.**     **Discovery of Non-Parties Is Limited Under the Federal Rules of Civil Procedure.**

   Under the Federal Rules of Civil Procedure applicable to non-party discovery, "a party or attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." FED. R. CIV. P. 45(c)(1); *see also Tracfone Wireless, Inc. v. Riedeman*, No. 6:06-CV-1257, 2007 U.S. Dist. LEXIS 99710, at *6 (M.D. Fla. Jan. 23, 2007) (Glazebrook, M.J.) (denying Plaintiff's Motion to Compel based on its holding that (i) even if the subpoena at issue had been "procedurally adequate, Plaintiff's request [for documents] is overbroad and places undue burden on non-party Wal-Mart," and (ii) "Plaintiff documents no attempts to narrow or focus its sweeping request for documents" to reflect its duty to avoid imposing undue burden on the non-party). Courts "must limit" discovery from non-parties when: (i) the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence; (ii) the discovery sought is unreasonably cumulative or duplicative; (iii) the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive; (iv) the party seeking discovery has had ample opportunity to obtain the information; or (v) the burden or expense of the discovery sought outweighs its likely benefit. FED. R. CIV. P. 26(b)(1), 26(b)(2)(C).

- 9 -

Status as a non-party "is a factor that weighs against disclosure" when a court balances the considerations that inform its determination of whether discovery should be limited. *Fadalla v. Life Auto. Prods.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007); *see also Cantaline v. Raymark Indus., Inc.*, 103 F.R.D. 447, 452 (S.D. Fla. 1984) ("[The] Federal Rules of Civil Procedure were not intended to burden a non-party with a duty to suffer excessive or unusual expenses in order to comply with a subpoena duces tecum.); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) ("But that does not mean non-parties must yield discovery that causes undue burdens . . . . Non-parties understandably object to paying the litigation costs of other parties. . . . [I]t [is] fundamentally unfair for non-parties to bear the significant litigation costs of others.") (internal citations omitted).[5] "With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *erinMedia, LLC v. Nielsen Media Research, Inc.*, No. 8:05-CV-1123, 2007 U.S. Dist. LEXIS 51342, at *5-6 (Jenkins, M.J.) (citing

---

[5] This special concern for non-parties facing unduly burdensome discovery requests is based, in part, on the inability of non-parties to serve reciprocal discovery requests in the relevant litigation. In other words, non-parties cannot rely upon the "'fundamental maxim of discovery' that discovery be symmetrical" as a means to deter unduly burdensome requests. It is of note that Vision-Ease has cited the importance of the need for symmetry in previous discovery disputes in this litigation. *See, e.g.,* Doc. #245 (Plaintiff Vision-Ease's Memorandum of Law in Opposition to Transition' Motion to Compel) at p. 10.

- 10 -

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.* 216 F.R.D. 533, 535 (M.D. Fla. 2003); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985)).

Federal courts are particularly attuned to the inequities of a litigant seeking to require a non-party to spend time and money producing information duplicative of that available from another litigant. In *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 651, 653 (N.D. Ala. 2002), the defendant argued that the plaintiff's subpoena seeking documents from non-party insurance agents should be quashed because the information sought through this discovery was instead available from the defendant itself. The court agreed, holding that, "[w]ithout a showing by the plaintiff that the defendant's production of all such email messages and other correspondence it can locate is inadequate, the court will not require the non-party agents to engage in the arduous task of combing through their email files and other records in search of the documents sought by the plaintiff." *Braxton,* 209 F.R.D. at 653.

## 2. PPG Is Entitled to These Non-Party Protections.

In its Motion, Vision-Ease attempts to blur the legal and factual distinction between PPG and TOI, presumably in an effort to avoid the clear limitations of discovery against non-parties recognized by the Federal Rules and courts applying them. Vision-Ease's discussion of TOI board members who also hold positions with PPG, and Vision-Ease's discussion of PPG's references to TOI in SEC disclosures are prime examples of this sleight of hand. Because PPG is a major shareholder in TOI, PPG has members on TOI's board of directors and, at times, employs certain TOI executives in joint roles at PPG. Likewise, because TOI represents a significant investment for PPG, PPG includes in its public SEC filings discussion of issues and developments of particular significance for TOI, such as this litigation. These facts in no manner destroy the law's recognition of the separateness between PPG and TOI, nor do they destroy PPG's clear status as non-party to this litigation. Indeed, Vision-Ease itself decided, when it

brought this litigation, that TOI and PPG are distinct and that no claims could reasonably be asserted against PPG in this action.  Thus, Vision-Ease's eleventh hour attempt to portray PPG as synonymous with TOI – so as to avoid the limitations of non-party discovery under the Federal Rules of Civil Procedure – is unavailing.

### 3.     The Discovery Sought by Vision-Ease Is Overly Broad, Unduly Burdensome, and Unreasonably Duplicative

Each of the Vision-Ease's document requests relevant to its Motion is overly broad with regard to subject matter, and compliance with these requests as written would require PPG to devote excessive time, resources, and expenses in order to identify documents, review them for responsiveness and privilege, and redact from them irrelevant information that is confidential, proprietary, or otherwise sensitive to PPG's business interests.  This level of burden on a non-party to this litigation is unwarranted and falls outside the strictures of reasonable discovery under the Federal Rules of Civil Procedure and the cases implementing them.

This conclusion carries particular weight when one considers the significant duplication of the previous document productions made by non-party PPG and made by party TOI that would necessarily result from attempts to respond further to Vision-Ease's broad document requests.  Such significant duplication causes the likely benefit of PPG's compliance with Vision-Ease's document requests to be outweighed by the burden or expense of such compliance, and therefore supports a finding that PPG should be shielded from such discovery under Rule 26(b)(2)(C).  Below, PPG provides specific examples of the problems with Vision-Ease's requests.

In Request 2, Vision-Ease seeks the production of all Rick Elias documents in PPG's possession relating to the FTC investigation or TOI's business.  In its Motion, Vision-Ease refers to Mr. Elias as "the most important TOI custodian for purposes of document production" (Doc.

#373, p. 13), but Vision-Ease downplays the fact that it already has received thousands and thousands of Elias documents from PPG, and even more from TOI. Those previous productions by PPG were the result of a full search, collection, processing, review and production effort from Mr. Elias' files in its possession, including his active e-mail account and personal e-mail archives. Thus, Request 2 seeks to require PPG to: (a) recollect those documents; (b) re-review those documents; and (c) reproduce those documents. To justify that effort, Vision-Ease simply suggests that the effort is warranted "to insure that no potentially relevant documents from this key custodian escape production because interested parties made judgments about what is relevant or not." (Doc. # 373, p. 14.) Such a theory is inappropriate, as it would be "fundamentally unfair" for a non-party such as PPG to be made to "bear the significant litigations costs of" Vision-Ease. *See Guy Chem. Co.*, 243 F.R.D. at 313. Vision-Ease has cited no authority for the proposition that a non-party should be forced to undertake such effort and cost simply because a party wishes to have a "double check" on the comprehensiveness of previous document production efforts, including PPG's significant document production, affirmed under oath, in response to a previous federal government subpoena.

A similar example of the over-breadth of Vision-Ease's requests is Request 3, which seeks the production of all Michael Ruggeri's documents relating to the FTC investigation or TOI's business. Mr. Ruggeri began his current role at PPG as business controller for the optical and specialty materials reporting segment in February of 2009. (Doc. #374-2 at pp. 12-13.) Prior to February 2009, Mr. Ruggeri worked for approximately four years as TOI's chief financial and administrative officer. Therefore, for the time period most relevant to this litigation, Mr. Ruggeri was not working at PPG. Instead, he was working at TOI, and TOI has produced his documents in this litigation. Since returning to PPG in 2009, less than twenty-five

percent of Mr. Ruggeri's job responsibilities have related to TOI.  *Id.* at 24.  In his work as an accountant, Mr. Ruggeri's focus is financial reporting for his reporting segment.  Mr. Ruggeri receives financial data from TOI – all of which has been produced by TOI in this litigation – and then Mr. Ruggeri summarizes that data in certain periodic reports provided to PPG management. Thus, any TOI-related information in these reports is merely derivative of the information already in Vision-Ease's possession through receipt of TOI's Business Strategy Review ("BSR") documents, which are cited several times in Vision-Ease's Motion.  (Doc. #373, p. 16.)

A third and final example of the over-breadth of Vision-Ease's requests is Vision-Ease's Request 9, which seeks documents relating to the attempted acquisition of Vision-Ease and Essilor International S.A.'s completed acquisition of Signet Armorlite, along with "any other actual or potential transactions like them."  (Doc. #373, p. 19.)  Setting aside the fact that during the relevant time period, neither PPG nor TOI (to PPG's knowledge) attempted or completed an acquisition "like" the Vision-Ease or Signet Armorlite transactions, Vision-Ease's request for documents related to "potential" transactions seemingly would require PPG to review innumerable custodians' files simply to determine whether anyone ever mused about "potential" acquisitions.  A non-party should not be made to endure such a broad request pursuant to a Rule 45 subpoena.

In summary, Vision-Ease's primary theory for why PPG should be made to incur the significant time and expense to conduct additional search, processing, review and production efforts is that Vision-Ease holds the subjective opinion that "communications involving PPG are frequently more plainspoken than are communications within TOI."  (Doc. #373, p. 8.)  The simple fact that Vision-Ease *believes that* there is a *chance* that someone at PPG *may* have internally commented about the TOI information already in Vision-Ease's possession, in a

manner that Vision-Ease now would find helpful, falls woefully short of justifying an order compelling non-party PPG to undertake these efforts.  This is particularly true as the value to Vision-Ease of such internal PPG comments, even if relevant, would be outweighed by the significant burdens and expense borne by non-party PPG in identifying, collecting, processing, searching, reviewing, redacting, and producing them.   Under the Federal Rules of Civil Procedure, Vision-Ease is not entitled to use speculation as to the existence of a non-duplicative and previously unproduced needle hidden in some PPG haystack to force PPG into undertaking the undue burdens involved in trying to either confirm or refute such speculation.

### III.  <u>CONCLUSION</u>

Vision-Ease's overly broad document requests represent a fishing expedition fraught with significant burdens and expenses for a non-party and unlikely to result in the discovery of additional, valuable information.  PPG not only objected to these requests as being duplicative of the previous productions and unduly burdensome but also explained its objections to Vision-Ease on several occasions.  Vision-Ease had every chance to cure the identified defects of its requests, and chose neither to do so nor to file a timely motion to compel.  Instead, Vision-Ease waited until nearly eight weeks after the close of fact discovery before filing this belated Motion.  The balance of factors here clearly do not support an order compelling any further action by PPG in response to Vision-Ease's subpoena, and PPG respectfully requests that this Court therefore deny the pending Motion to Compel in its entirety.

Dated:  November 7, 2012               K&L GATES LLP

                       By:     */s/  Ayman F. Rizkalla*

                              Ayman Rizkalla
                              K&L GATES LLP
                              200 South Biscayne Boulevard
                              Suite 3900
                              Miami, FL 33131
                              Phone:  (305) 539-3325
                              Fax:  (305) 358-7095
                              E-Mail:  ayman.rizkalla@klgates.com

                              and

                              Douglas J. Simmons
                              Daniel R. Miller
                              K&L GATES LLP
                              K&L Gates Center
                              210 Sixth Avenue
                              Pittsburgh, PA 15222-2613
                              Phone:  (412) 355-6500
                              Fax:  (412) 355-6501
                              E-Mail:  doug.simmons@klgkates.com
                              E-Mail:  daniel.r.miller@klgkates.com
                              (pro hac vice admissions pending)

                              *Attorneys for PPG Industries, Inc.*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on November 7, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

                              */s/ Ayman F. Rizkalla*
                              Ayman Rizkalla