UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION** | MDL Docket No. 2173 |
| | Case No. 8:10-md-2173-JDW-EAJ |
| **This document relates to:** | Hon. James D. Whittemore |
| Indirect Purchaser End-User Plaintiffs | Hon. Elizabeth A. Jenkins |

**INDIRECT PURCHASER END-USER PLAINTIFFS' MOTION
TO COMPEL NERA ECONOMIC CONSULTING TO COMPLY WITH SUBPOENA**

The End-User Plaintiffs ("Plaintiffs") respectfully move this Court for an Order pursuant to Federal Rules of Civil Procedure 37 and 45 compelling NERA Economic Consulting ("NERA") to comply with a subpoena, and answer questions consistent with the Subject Matter of Testimony annexed as Exhibit A to the subpoena.[1]  *See* Exh. 1, Subpoena & Exhibit A to Subpoena, Feb. 15, 2013.

## I.    INTRODUCTION

This is a motion to compel compliance with a subpoena requiring deposition testimony by NERA—the employer of Dr. Lauren J. Stiroh, Transitions Optical, Inc.'s ("TOI" or "Defendant") testifying expert economist.  The deposition was noticed to proceed on the last day

---

[1] Pursuant to 28 U.S.C. § 1407(b), the Court, as the transferee court in this Multidistrict Litigation, possesses the ability to exercise the powers of a district judge sitting in the United States District Court for the Southern District of New York for the purposes of enforcing the subpoena in dispute, which was issued in that district.  *See, e.g.*, *In re Photochromic Lens Antitrust Litig.*, MDL No. 10-MD-2173, [D.E. 430] at 4 (M.D. Fla. Dec. 20, 2012) ("[T]his Court has jurisdiction over the matter pursuant to the federal Multidistrict Litigation ("MDL") statute, which provides: 'The judge or judges to whom such actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings.'  28 U.S.C. § 1407(b).'").

of expert discovery in order to, among other things, authenticate three NERA-created memoranda recording the substance of communications Dr. Stiroh had with TOI's President, David Cole, and TOI's Head of Research and Development, John Ligas, in connection with the preparation of her expert report in this matter. It is undisputed that Dr. Stiroh relied upon her conversations with Messrs. Cole and Ligas in connection with her report, as she frequently cites the conversations in her report as the basis for her conclusions. Notably, one of Dr. Stiroh's conclusions concerning product market definition is directly contradicted by information obtained from Mr. Cole during her conversation with him approximately one month before her report was served in this matter. Defendant and NERA objected to the subpoena on February 12, 2013, stating as to each topic of examination, "[n]o testimony shall be provided on this topic." Exh. 2, Objections of Non-Party NERA Economic Consulting & Def. Transitions Optical, Inc. to Subpoena, Feb. 12, 2013. Rather than immediately seek a protective order in accordance with applicable rules and local practice,[2] NERA and its counsel—who also represent TOI in this matter—informed Plaintiffs' counsel that a NERA representative and one of counsel for NERA and TOI would appear for the deposition.

On February 15, 2013, a NERA representative and one of counsel for NERA and TOI appeared for the deposition. Plaintiffs' counsel began the deposition by asking the NERA representative, "███████████████████████████?" Exh. 3, NERA [Rough] Dep. at 3. In response to this first question, ███████████████████████████████████████████████████████████████████████████████. *See* Exh. 3 at 3-5. In

---

[2] *See* Middle District Discovery: A Handbook on Civil Discovery Practice in the U.S. District Court for the Middle District of Florida ("Middle District Discovery") (2001), at § VI.B. ("Upon receipt of objectionable discovery, a party has a duty to seek relief immediately, i.e., without waiting until the discovery is due or almost due. Upon receipt of a motion for a protective order, the Court may issue a temporary stay of discovery pending resolution of the motion. However, a party's diligence in seeking relief is a principal factor in the decision whether to grant a stay.").

accordance with the Federal Rules of Civil Procedure, Plaintiffs' counsel provided the NERA representative with a check in the amount of $75 for appearing, which the NERA representative and her counsel accepted prior to exiting the deposition.

This conduct is contrary to the Federal Rules of Civil Procedure and local practice.[3] Thus, TOI, NERA, and their counsel have obstructed authentication of the NERA memoranda recording the substance of the Cole and Ligas conversations and prevented discovery of impeachment testimony – testimony the Court is entitled to consider during *Daubert* and summary judgment proceedings. And, testimony a jury is entitled to hear and weigh at trial. For the reasons set forth below, Plaintiffs respectfully request that their motion to compel be granted in its entirety and that the Court enter any such further and additional relief it deems just and appropriate.

## II.  BACKGROUND

### A.  The Cole Interview and Memorandum

It is undisputed that on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dr. Stiroh testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] *See* Middle District Discovery at § II.B.2 ("Occasionally during a deposition, a lawyer may instruct a deponent not to answer a question. Rule 30(d), Federal Rules of Civil Procedure, expressly provides that a lawyer may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation established by the Court, or to present a motion to show that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party. The use of the instruction not to answer, absent the limited circumstances set forth in Rule 30(d)(1), Federal Rules of Civil Procedure, is disfavored by the Court. A party or a lawyer who improperly instructs a deponent not to answer is subject to the expense and sanction provisions of Rule 37(a)(4).").

███████████████████████████████" Exh. 4, Stiroh Dep. at 800:7-8, Jan. 16, 2013.[4] The

████████████████████████████████████. Exh. 4, Stiroh Dep. at 803:17-18. ██████

██████████████████████████████████████████

██████████████████████████ "████████████."[5] *See* Exh. 5, Stiroh

Dep. Exhibit 15, at 1.  During this conversation, ████████████████████████████

█████████████████████████████████████████

████████████████████████████. *Id.* at 1-2, §II.A.  The relevant

statements are recorded as follows in the memorandum:

- ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- ████████████████████████████████████████████████████████████████████████████

*Id.* at 1-2 (emphasis added).  Thus, the memorandum reflects that █████████████

████████████████████████████████████████████. *Id.*

Dr. Stiroh testified that ████████████████████████████████████████

---

[4] *See* Exh. 6, Stiroh Dep. Exhibit 11 (Expert Rep. of Lauren J. Stiroh, Ph.D, Dec. 3, 2012), at 5 n.4 ("████████████████████████████████,"), 5 n.7 (same), 5 n.8 (same), 10 (same), 5 n.12 (same); 11 n.45 (same), 11 n.48-49 (same), 12 n.51 (same); 27 n.94 (same), 27 n.96 (same), 42 n.156 (same), 44 n.185 (same); 51 n.201(same), 63 n.243 (same); 69 n.263 (same); *see also id*. at 2 ("████████████████████████████████████████████████████████████████████████████████████████.").

[5] Dr. Stiroh also conducted a telephonic interview with ████████████████████████████████████.  Memoranda recording the substance of each of these conversations were also contemporaneously prepared by NERA personnel.  *See* Composite Exh. 7, Stiroh Dep. Exhibits 17 & 18.

███████████████████████████████" Exh. 4, Stiroh Dep. at 877:6-8.  She further testified that ██ ████████████████████████████████████████████████████" *Id*. at 877:21-22.

### B.   The December 3, 2012 Stiroh Report

Approximately thirty-three days after ███████████████████████, Dr. Stiroh submitted an expert report in which she concludes that ██████████████████████ █████ ████████████████████████.  *See* Exh. 6, Stiroh Rep. at 2.  Dr. Stiroh concluded that the ████████████████████████████████████████████████████ ██████████████████████████████████████████ Rather, she concludes ██ ██████████████████████████████████████████████████████████████████ ██████████████████████ Therefore, according to Dr. Stiroh, ████████████████ █████████████████████████████.  Exh. 4, Stiroh Dep. at 807:23-25; Exh. 6, Stiroh Rep. at ¶ IV.  Notably, this conclusion ████████████████████████████████████ "████████████████████████████████████████████████████████████ ████████████████████████," and "████████████████████████████████████ ██████████████." *See* Exh. 5 at 1 (emphasis added).

Upon receipt of the Stiroh Expert Report, the Direct Purchaser Plaintiffs served a subpoena requiring the production of the memoranda recording the Cole and Ligas interviews. The documents were produced by Defendant.  *See* Exhs. 5 & 7.

### C.   The Stiroh Deposition

When confronted at her deposition with the ███████████ containing information that directly contradicts her relevant market conclusion, Dr. Stiroh, the senior NERA economist on this matter, testified she ████████████████████████,[6] ████████████████

---

[6] Exh. 4, Stiroh Dep. at 802:3-4.

███████,[7] or █████████████████████████████████████

████████████████. Exh. 4, Stiroh Dep. at 839:4–9, 871:25–72:4, 876:16–77:9. Dr. Stiroh testified that she ████████████████████████████████████████ ██████ (*id.* at 802:2–3), ████████████████████████████████ ████████████████. *Id*. at 804:2–5, 910:22–11:17. It is beyond dispute that █████████ ████████████████████████████████████████████ *See supra*, n.5. It is also beyond dispute that ██████████████████████████████████████████ ████████████████████████████. *See* Exh. 5 & Composite Exh. 7 (████████████ ███████████████████████). Since Dr. Stiroh relied upon her conversations with ████████ █████████ in connection with her report and the memoranda contemporaneously capture the substance of the communications with Messrs. ████████████, these documents are patently discoverable. Notably, Defendant and its counsel implicitly recognized this fact by producing these documents pursuant to the Direct Purchaser Plaintiffs' subpoena. The documents are discoverable information that may serve as evidence to impeach Dr. Stiroh, since her conclusion(s), at a minimum, are inconsistent with the conversations she had with ████████ in connection with her report. Plaintiffs intend to use the memoranda during *Daubert* and summary judgment motion practice to challenge Dr. Stiroh's product market conclusion, which is contradicted by her own client's statements. This is important information the Court is entitled to consider when weighing credibility issues concerning the experts' conclusions in this case. A jury is also entitled to consider these memoranda when weighing credibility issues concerning the experts' conclusions during a trial in this matter.

---

[7] *Id*. at 804:5.

### D. The Post-Stiroh Deposition Communications with Opposing Counsel

The day after the Stiroh deposition, on or about January 17, 2013, Plaintiffs' counsel contacted TOI's counsel to request that it make a Rule 30(b)(6) witness available to authenticate the Cole and Ligas memoranda and answer a limited set of questions in a deposition that would last less than an hour. Opposing counsel refused to make a NERA representative available and would not stipulate to the authenticity of the documents. On February 5, 2013, Plaintiffs then served a subpoena on NERA requesting a Rule 30(b)(6) witness be made available on February 15, 2013, the last day of expert discovery, in order to authenticate the documents and address five limited topics.[8] On February 12, 2013, Defendant objected to the subpoena and Defendant's counsel threatened to have sanctions imposed against Plaintiffs' counsel if Plaintiffs' counsel sought to proceed with the deposition to authenticate documents and obtain potential impeachment testimony. On February 14, 2013, Plaintiffs' counsel advised Defendant that they intended to proceed the following day with the deposition. Defendant's counsel responded as follows:

> Jeffrey Bank will attend with either Shaena McPadden or Luke Kline. Given the wholly unwarranted burden and expense this will entail, and your stubborn refusal to acknowledge the rules of civil procedure, you are responsible for all the expenses that will be incurred by Transitions in this connection.

Exh. 8, Email from J. Jacobson to M. Buchman, *et al.* (Feb. 14, 2013).

At no time on February 14, 2013, did opposing counsel inform Plaintiffs that it desired to adjourn the deposition in order to seek a protective order, as required by local rules. Instead, and in an effort to multiply the proceedings, counsel for NERA and TOI and a NERA representative appeared the next morning for the deposition, as noticed. After the witness was sworn in and a

---

[8] The subpoena served was unsigned and a subsequent signed subpoena was re-served on February 13, 2013.

7

single question was asked concerning the ▮▮▮▮▮▮▮▮▮▮, counsel for TOI and NERA instructed the witness ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮. *See* Exh. 3, NERA [Rough] Dep., Feb. 14, 2013.

Under these circumstances, Plaintiffs now seek an Order compelling NERA to produce a representative in compliance with the subpoena and any additional relief the Court deems appropriate in light of TOI's and NERA's conduct, including their: (i) baseless threats designed to prevent authentication of documents and discoverable information; (ii) misleading representation that the deposition would proceed, thereby causing an unnecessary waste of time and expense; (iii) entirely improper instruction not to answer a pending question on non-privilege grounds; and (iii) baseless termination of the deposition immediately after it was commenced.

### E.  Rule 30(b)(6) Deposition Subject Matter

Plaintiffs subpoenaed NERA to produce a representative to appear for deposition to testify on the following subject matters:

> 1.  NERA's custom, habit, practice, procedure and/or protocol for taking, finalizing, and preparing memoranda or other documents recording or relating to the subject matter of communications or conversations between NERA and NERA clients or other persons.
>
> 2.  The creation, preparation and finalization of any and all memoranda, documents or data concerning or relating to all conversations with David Cole and John Ligas in connection with NERA's work on behalf of Transitions Lens, Inc., and the preparation of the Expert Report of Lauren J. Stiroh, Ph.D., In Re Photochromic Lens Antitrust Litigation - Achtman et al. Plaintiffs, dated Dec. 3, 2012, in particular, including, but not limited to, the Memo, dated Nov. 3, 2012,

see Stiroh_0000076-83; see also Exh. 15 to Lauren Stiroh's deposition (Jan. 16, 2013).

3. The reason(s) why memoranda, documents or recorded impressions concerning or relating to communications with persons regarding an expert report are prepared, created and/or taken.

4. Communications within NERA concerning or relating to the conversations with David Cole and John Ligas in connection with NERA's work on behalf of Transitions Lens Inc. and the preparation of the Expert Report, in particular.

5. The NERA employees, consultants and other persons who were present (either in-person or telephonically) during and/or participated in any conversation with David Cole and John Ligas in connection with NERA's work on behalf of Transitions Lens, Inc. and the preparation of the Expert Report, in particular.

*See* Exh. 1, Exhibit A to Subpoena to Testify at a 30(b)(6) Deposition, Feb. 4, 2013.

### F. NERA's Objections

At the deposition, the NERA representative refused to answer even a single question. Instead, the NERA representative ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Exh. 3, NERA [Rough] Dep., Feb. 14, 2013, at 34*; see also* page 2, *supra*. More specifically, the deposition lasted less than five minutes and consisted of one question before counsel NERA and TOI terminated the matter:

MR. BUCHMAN [Counsel for Plaintiffs]:

Q. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇?
MR. BANK [Counsel for Defendant TOI and NERA]:





*See* Exh. 3, NERA [Rough] Dep. at 3-5.  To date, neither TOI nor NERA has sought a motion for a protective order from the Court.[9]

### III.  ARGUMENT

Under Federal Rule of Civil Procedure 26, "[a] party may obtain discovery regarding any matter which is relevant and non-privileged." *See Roseman v. Sports & Recreation*, 165 F.R.D. 108, 110 (M.D. Fla. 1996); *see generally Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (discovery may be had regarding "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

The test for discoverability is extremely broad and the relevant question is "'whether the documents reviewed or generated by the expert could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion.'" *Id.* (quoting *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 614 (E.D. Cal. 2009) (quoting *SEC v. Reyes*, 2007 WL 963422, at *2 n.2 (N.D. Cal. Mar. 30, 2007)).  In the end, the court in *Tampa Bay Water* did not grant the motion to compel because it found "that the information withheld was not generated or considered in connection with the formation of the expert opinions . . . , nor

---

[9] *Ferguson v. N. Broward Hosp. Dist.*, No. 10-61606-CIV, 2011 WL 1496771 (S.D. Fla. Apr. 19, 2011) ("Although the Rule [30(d)(3)(A)] does not set forth a specific time for filing a motion for protective order or a motion to terminate or limit the deposition, courts have noted that such motions must be filed 'immediately' or 'promptly' after the suspension of the deposition." ).

is it related to their opinions . . . ." *Id*. However, here, it is clear that the information withheld was generated and considered in connection with the formation of the expert's opinion, notwithstanding the expert's incredible self-serving statements to the contrary. Indeed, any ambiguity must be resolved in favor of discovery. *Id*. (citing *B.C.F. Oil Ref., Inc. v. Consol. Edison Co.,* 171 F.R.D. 57, 62, 66 (S.D.N.Y. 1997)).

Dr. Stiroh testified that she relied upon the Cole and Ligas conversations in connection with her report and the report contains repeated references to these conversations. The memoranda recording and capturing the substance of these communications is patently relevant and discoverable. *See Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460 (E.D. Pa. 2005) ("The Court sees no principled distinction between the discoverability of oral and written communications that a testifying expert considers in fashioning her opinions.") (citing Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of "data or other information" considered by testifying expert); *TV-3, Inc. v. Royal Ins. Co. Of Am.,* 193 F.R.D. 490, 492 (S.D. Miss. 2000) (requiring disclosure of all documents and oral communications reviewed by experts in connection with formulating opinions, even those ultimately rejected or not relied upon)).

The subpoena is tailored to elicit testimony relevant to the bases and reliability of Dr. Stiroh's expert report. *See* Exh. 1, Exhibit A to Subpoena. As one court recently opined:

> As a general matter, experts are permitted to sift through the available evidence and identify the data that they deem to be significant. They are permitted to make inferences if evidence is missing, if those inferences are scientifically reasonable. And they are permitted to discount or explain apparently contradictory evidence, again assuming that it is scientifically appropriate to do so. *But experts cannot simply ignore contradictory evidence; they are not allowed to pick and choose the facts they find helpful and to pretend that the others do not exist.*

*Zeolla v. Ford Motor Co.*, No. 09-40106-FDS, 2013 WL 308968, at *9 (D. Mass. Jan. 24, 2013) (emphasis added). The NERA memoranda support that Dr. Stiroh selectively ignored important

11

facts that contradict her ultimate conclusions. For example, one memorandum records the following statements made by David Cole, President of TOI:



Exh. 5, Stiroh Dep. Exhibit 15 at 1-2.

TOI's prior conduct further supports enforcement of the subpoena. On January 9, 2013, TOI caused a subpoena to be served on Kenneth C. Baseman, an expert proffered by Vision-Ease. The Baseman Subpoena seeks the production of "[a]ll notes or other recorded impressions of any conversations or oral communications by which Douglas Hepper, Chief Executive Officer of Vision-Ease, communicated information relied upon in the Expert Report." *See* Exh. 9, Baseman Subpoena, Jan. 9, 2013.  Given this prior request, it is, at best, disingenuous for TOI's counsel (who also represent NERA) to now argue that testimony relating to the creation of contemporaneously prepared memorandum summarizing conversations relied upon by Dr. Stiroh falls outside of the scope of permissible discovery.

Rule 26(b)(4)(D) is not applicable to the Subpoena. The Rule generally prohibits seeking discovery from consulting experts retained in anticipation of litigation or preparation for trial. *See* Fed. R. Civ. P. 26(b)(4)(D) ("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.").  Plaintiffs subpoenaed NERA to produce a representative to testify regarding matters detailed in the subpoena. Plaintiffs are aware of nothing in the record

supporting that NERA constitutes a non-testifying expert retained or specially employed by TOI. Under NERA's and TOI's expansive interpretation of Rule 26(b)(4)(D), experts would be encouraged to absolve themselves of any knowledge of documents, including backup data, produced by their office relating to communications or facts relied upon in their reports that contradict their conclusions, with knowledge that their employers and/or staff could not be questioned regarding the origin of such documents. Rule 26(b)(4)(D) was not intended to facilitate such gamesmanship and has no reasonable application here.

The stipulation entered into by the Parties on December 11, 2011, likewise has no relevance to the testimony sought through the subpoena. The stipulation provides that the following types of information shall not be the subject of discovery:

a. The content of communications among and between: (i) counsel and expert witnesses; (ii) counsel and expert witnesses' staff; (iii) expert witnesses and their respective staffs; and/or (iv) expert witnesses and other expert witnesses; and

b. Notes, drafts, written communications or other types of preliminary work created by, or for, expert witnesses or their staff. The protections against discovery contained in this paragraph shall not apply to any communications or documents upon which an expert relies as a basis for any of his or her opinions or reports.

*See* Stipulation [Doc. 201]. Each NERA memorandum summarizes communications between Dr. Stiroh and a TOI executive that Dr. Stiroh relied heavily on in preparing her expert report. Paragraph (a) of the stipulation does not apply to communications between Dr. Stiroh and TOI executives. Additionally, Dr. Stiroh relied heavily on her conversations with Messrs. Cole and Ligas in preparing her report, and information relating to communications or documents upon which an expert relies as a basis for any of her opinions or reports are expressly exempt from paragraph (b) of the stipulation. Thus, the stipulation has no bearing on the subpoena.

Here, there is simply no basis under the case law or the local rules for TOI, NERA or their counsel to have instructed the Rule 30(b)(6) witness not to answer questions or to have terminated the deposition to authenticate discoverable information or seek impeachment evidence concerning conversations which Dr. Stiroh testified she relied upon and which she repeatedly cites to in her expert report. Accordingly, Plaintiffs respectfully submit this motion should be granted in its entirety.

IV.     CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court order NERA Economic Consulting to comply with the subpoena issued and to produce a representative to answer questions consistent with the Subject Matter of Testimony annexed as Exhibit A to the subpoena, and enter any such further relief that the Court deems just and appropriate.

Respectfully submitted,

  s/ Christopher Casper
Christopher Casper
FBN: 048320
JAMES, HOYER, NEWCOMER,
    & SMILJANICH, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL  33609
Tel: (813) 286-4100
Fax: (813) 286-4174
ccasper@jameshoyer.com

*Interim Liaison Counsel for the*
* Putative Indirect Purchaser End-User Class*

| | |
|---|---|
| /s/ Ben Barnow<br>Ben Barnow<br>Erich P. Schork<br>BARNOW AND ASSOCIATES, P.C.<br>One North LaSalle Street, Suite 4600<br>Chicago, IL 60602<br>Tel: (312) 621-2000<br>Fax: (312) 641-5504<br>b.barnow@barnowlaw.com | /s/ Michael M. Buchman<br>Marc I. Gross<br>Michael M. Buchman<br>POMERANTZ GROSSMAN HUFFORD<br>  DAHLSTROM & GROSS LLP<br>600 Third Avenue, 20th Floor<br>New York, NY 10016<br>Tel: (212) 661-1100<br>Fax: (212) 661-8665<br>mgross@pomlaw.com<br>mbuchman@pomlaw.com |
| /s/ Lance A. Harke<br>Lance A. Harke<br>HARKE CLASBY & BUSHMAN LLP<br>9699 NE Second Avenue<br>Miami Shores, FL 33138<br>Tel: (305) 536-8220<br>Fax: (305) 536-8229<br>lharke@harkeclasby.com | /s/ Susan G. Kupfer<br>Susan G. Kupfer<br>GLANCY BINKOW & GOLDBERG LLP<br>One Embarcadero Center, Suite 760<br>San Francisco, CA 94111<br>Tel: (415) 972-8160<br>Fax: (415) 972-8166<br>skupfer@glancylaw.com<br>jbarton@glancylaw.com |

*Interim Co-Lead Counsel for the putative*
*Indirect Purchaser End-User Class*

## LOCAL RULE 3.01(g) CERTIFICATION

    I HEREBY CERTIFY that, on February 25, 2013, pursuant to Local Rule 3.01(g), M.D. Fla., counsel for Plaintiffs conferred with counsel for Transitions Optical and NERA Economic Consulting. Counsel for Transitions and NERA oppose the relief requested herein.

                                                           s/ Christopher Casper

## Certificate of Service by Electronic Means

The undersigned hereby certifies that the preceding document was caused to be served electronically this 25th day of February 2013 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                             s/ Christopher Casper