## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| | Case No. 8:10-md-2173-JDW-EAJ |
| This document relates to**:** | Hon. James D. Whittemore |
| Indirect Purchaser End-User Plaintiffs | Hon. Elizabeth A. Jenkins |

### THE INDIRECT PURCHASER END-USER PLAINTIFFS' OPPOSITION TO DEFENDANT TRANSITIONS OPTICAL, INC.'S AND NON-PARTY NERA ECONOMIC CONSULTING'S MOTION TO TERMINATE NON-PARTY DEPOSITION, MOTION TO QUASH NON-PARTY SUBPOENA, MOTION FOR PROTECTIVE ORDER, AND MOTION FOR SANCTIONS

The Indirect Purchaser End-User Plaintiffs ("Plaintiffs") respectfully submit this opposition to Defendant Transitions Optical, Inc.'s and Non-Party NERA Economic Consulting's Motion To Terminate Non-Party Deposition, Motion To Quash Non-Party Subpoena, Motion For Protective Order, and Motion For Sanctions ("Omnibus Motion"), Dkt. 461.

For the reasons set forth below, the Omnibus Motion should be denied in its entirety and an Order entered pursuant to Federal Rule of Civil Procedure 37(d) deeming memoranda that were prepared by the staff of testifying expert Dr. Lauren J. Stiroh ("Dr. Stiroh"), and which reflected interviews with senior officers of Transitions Optical, Inc. ("TOI") to be authentic and admissible as business records of NERA Economic Consulting, Inc. ("NERA").[1]

---

[1] Also pending before the Court is Plaintiffs' Motion to Compel NERA Economic Consulting To Comply With Subpoena, February 25, 2013, Dkt. 460 ("Mtn to Compel"). Dkt. No. 460. While based on the same facts as this motion, the relief sought by Plaintiffs therein was limited to a Rule 30(b)(6) deposition of a member of Dr. Stiroh's staff at NERA who could authenticate the memoranda and provide further grounds for its admissibility.

## I. <u>INTRODUCTION</u>

*The Stiroh Staff Memoranda*: Dr. Stiroh is a Vice President of NERA and expert witness for TOI. On November 1, 2012, Dr. Stiroh conducted an interview with TOI President David Cole ("Cole") in order to obtain information in connection with her expert report.  *See* Mtn to Compel, Dkt. 460[2], Exh. 4, Dkt. 460-3 (Stiroh Dep., Jan. 16, 2103) at 800:7-8, 803:17-18; Weick Decl., Exh. B, Dkt. 462-2.  The Cole conversation was recorded in a memorandum by a NERA Staff Member working with Dr. Stiroh on the report.  Mtn to Compel, Exh. 5, Dkt. 460-3 ("Cole Memorandum"); Weick Decl. Opp. MTC, Exh. D, Dkt. 470-4, at 15-22.  Similar conversations were conducted by Dr. Stiroh with TOI Research & Development Director, John Ligas ("Ligas"), and recorded contemporaneously in memoranda by her staff.  Mtn to Compel, Exh. 7, Dkt. 460-3 ("Ligas Memoranda"); Weick Decl. Opp. MTC, Exh. D, Dkt. 470-4, at 5-14.  Thus, the work performed by Dr. Stiroh and her NERA staff is indivisible, making the memoranda subject to discovery of testifying expert materials under Fed. R. Civ. P. 26.

*The Stiroh Report Market Definition Opinions*: On December 3, 2012, Defendant served Dr. Stiroh's expert report in this matter.  *See* Mtn to Compel, Exh. 6, Dkt. 460-3 (Stiroh Expert Report, Dec. 3, 2012, excerpts); Weick Decl., Exh. A, Dkt. 462-1.  In the report, Dr. Stiroh noted on numerous occasions that the information upon which she relied came, *inter alia,* directly from conversations she had with Messrs. Cole and Ligas.  *See, e.g., id*. at 2 ¶ 6, 5 nn.7-8, 10-12, 11 nn.45, 48-49, 12, n.51, 27 nn.94, 96, 42 n.156, 44 n.185, 51 n.201, 63 n.243 and 69 n.263; Weick Decl., Exh. A, Dkt. 462-1 at 9.  It is undisputed that these conversations are reflected in the following documents produced by NERA pursuant to a subpoena: (i) a November 3, 2012

---

[2] To avoid unnecessary duplication of Exhibits, Plaintiffs cite to (i) their Mtn to Compel, Exhs., Dkt. 460-1 to 5, (ii) Omnibus Motion, Dkt. 461, Exhibits attached to D. Weick Decl. In Support Thereof, Dkt. 462, February 25, 2013 ("Weick Decl."), and (iii) TOI/NERA's Opposition to Mtn to Compel, Dkt. 469, March 11, 2013, Exhibits attached to D. Weick Decl. In Support Thereof, Dkt. 470, March 11, 2013 ("Weick Decl. Opp. MTC").

memorandum recording the Cole conversation; (ii) an October 20, 2012 memorandum recording

the Ligas conversation; and (iii) a January 26, 2012 memorandum recording an earlier

conversation with Ligas (the "Stiroh Staff Memoranda").  Mtn to Compel, Exh. 5 & 7, Dkt. 460-

3; Weick Decl. Opp. MTC, Exh. D, Dkt. 470-4, at 5 & 15.

In her report, Dr. Stiroh opines that the relevant product market in this case includes *both*

clear lenses and photochromic lenses. *See* Mtn to Compel, Exh. 6, Dkt. 460-3, at 2 ¶7(ii); Weick

Decl. Opp. MTC, Exh. A, Dkt. 470-1 at 6.  Based upon this conclusion, she further opines that

TOI is not a monopolist given its small market share in this broadly defined market.  These

opinions, which are critical to TOI's defense, are directly at odds with those presented by

Plaintiffs' expert, Dr. Gary French, who concludes the relevant product market in this case is

limited to photochromic products. Because TOI possesses 80% or more of this market, Dr.

French concludes that TOI is a monopolist.

While Dr. Stiroh's market definition conclusions are inconsistent with those reached by

Dr. French, her conclusions are *flatly contradicted by information obtained directly from her

client* and contemporaneously memorialized by her staff.  For example, on November 1, 2012

Mr. Cole specifically told Dr. Stiroh that: (i) "TOI … does not pose a threat to [clear lens

manufacturers] as a horizontal competitor competing for the same downstream customers;" and

(ii) "TOI made the commitment with lens casters to not compete with them." *See* Mtn to

Compel, Exh. 5, at 1-2; Weick Decl. Opp. MTC, Exh. D, Dkt. 470-4 at 15-16.

The Cole memorandum and the other Stiroh Staff Memoranda are important evidence

which Plaintiffs intend to use during *Daubert* and summary judgment motion practice and trial to

demonstrate that Dr. Stiroh's conclusions are *directly contradicted by information obtained from

interviews with her own client upon which she claimed to rely,* and thus should be given little or

no weight at all because they are unreliable.  Mr. Cole has *twice admitted* that TOI does not view itself as a horizontal competitor of clear lens manufacturers.

Defendant attempts to rewrite these statements by substituting "direct downstream customers" for "same downstream customers" (regardless of whether direct or indirect).  *See* TOI/NERA's Opp'n to Mtn to Compel, Dkt. 469 at 10-11.  However, no such limitation is in the actual text of the interview.  Mr. Cole's statement is significant impeachment evidence because no matter which market definition is adopted, TOI has the ability, but has chosen not to directly compete with clear lens manufacturers.[3]  This statement contradicts Dr. Stiroh's conclusion that TOI competes in the same product market and is a horizontal competitor against clear lens manufacturers; her statement is further belied by market realities and her client's own admission/statements against interest.

*The Stiroh Deposition*: During her deposition, Dr. Stiroh acknowledged one or more of her staff members from NERA were present during the Cole and Ligas conversations, but testified she was unaware: (i) a member of her team was memorializing the conversation; (ii) the Stiroh Staff memoranda had been created; and (iii) of the Stiroh Staff Memoranda until she appeared for deposition.  *See* Mtn to Compel, Exh. 4, Dkt. 460-3 (Stiroh Dep.) at 802:2-4, 804:2-5, 910:22 – 911:17; Weick Decl., Exh. B.  Her testimony makes patently clear that though she attended the interviews and relied on information conveyed therein, she lacked: (i) knowledge or information to authenticate the Stiroh Staff Memoranda; and (ii) an ability to provide information to establish

---

[3] We are not the only Plaintiffs in this case who intend to use Cole's statement for impeachment purposes. Vision-Ease has also articulated its intention to use Cole's statements in the future to impeach or call into question Dr. Stiroh's conclusions concerning market definition in this case. *See, e.g.*, Exhibit A (attached hereto), Expert Report of Kenneth C. Basemen, Jan. 21, 1013, at 11, ¶ 26 ("NERA's notes on their November 3, 2012 conversation with Dave Cole illustrate the same issue and undercut Dr. Stiroh's market definition.").

the admissibility of the documents.  A separate NERA deposition was necessary to conduct basic

trial preparation concerning the Stiroh Staff Memoranda unless opposing counsel would stipulate

the documents were authentic business records created in the ordinary course of business.

*The Request to Opposing Counsel*: Plaintiffs contacted opposing counsel shortly after the Stiroh

deposition to request that NERA stipulate to the authenticity and admissibility of the Stiroh Staff

Memoranda, or have a NERA staff member submit to a less than one hour deposition to establish

the authenticity and admissibility of the documents.  *See* Declaration of Michael M. Buchman In

Support of Opposition to Omnibus Motion, dated March 14, 2013 ("Buchman Decl."), at ¶ 7.

Opposing counsel rejected Plaintiffs' both requests, *see* Weick Decl., Exh. E, thereby

necessitating the issuance of a Fed. R. Civ. P. 30(b)(6) deposition subpoena to which NERA now

objects and belatedly seeks a protective order.  Buchman Decl., at ¶ 8.

*The Numerous Objections to Pretrial Discovery of the Stiroh Staff Memoranda*: On a number of

occasions, NERA, through its counsel, objected to the request to provide testimony, as required

by the subpoena, on the grounds that NERA is a "non-testifying expert" witness under Fed. R.

Civ. P. 26(b)(4)(D) and the Stipulation Regarding Non-Discoverability of Certain Expert

Materials and Communications, Dkt. 201 (Dec. 13, 2011) ("Stipulation"), prohibits discovery.[4]

Despite these objections, by e-mail dated February 14, 2013, NERA's counsel stated that a

NERA employee would appear for a deposition, *without seeking any protective order and*

*without stating that no testimony would be given at the deposition*.  Weick Decl., Exh. J, Dkt.

462-10.  Buchman Decl., at ¶¶ 12, 13.  Had Plaintiffs been told the witness would appear but not

testify, we would have adjourned the deposition and moved to compel.  Buchman Decl., at ¶ 13.

At the deposition the following day, NERA appeared and terminated the deposition on the

_____

[4] TOI/NERA objected on the following occasions: January 18, 2013; February 4, 2013; February 12, 2013; February 14, 2013; and February 15, 2013.  *See* Weick Decl., Exhs. E, G, I, J & L, Dkt, 462-5, 7, 9, 10 & 12, respectively.

ground it was being conducted in bad faith.  Mtn to Compel, Exh. 3, Dkt. 460-3 (NERA Dep.);

Weick Decl., Exh. L, Dkt. 462-12, at 3.

## II.      SUMMARY OF ARGUMENT

The Omnibus Motion should be denied as untimely because it is well recognized in this

district that a person objecting to a subpoena who does not intend to comply must *immediately*[5]

seek a protective order *before* the discovery due date.[6]  The Stiroh Staff Memoranda are highly

relevant, discoverable and exclusively created by Stiroh's staff at NERA.  There can be no

dispute that the Stiroh Staff Memoranda were produced in this litigation pursuant to a documents

subpoena because they contained the contents of communications between TOI senior officers

and Dr. Stiroh.  It also cannot be disputed that Dr. Stiroh *relied* upon these *conversations* in

preparing her report (while denying that she relied on the *memoranda* recording those very same

conversations). Dr. Stiroh's staff at NERA are the only persons from whom authenticity and

---

[5] *See* "Immediately" means "without interval of time. Merriam-Webster Online Dictionary. http://www.merriam-webster.com/dictionary/immediately.

[6] With regard to the objections: s*ee* Middle District Discovery: A Handbook on Civil Discovery Practice in the U.S. District Court for the Middle District of Florida ("Middle District Discovery (2001)") (2001), at § VI.B. ("*Upon receipt of objectionable discovery, a party has a duty to seek relief immediately, i.e., without waiting until the discovery is due or almost due.* Upon receipt of a motion for a protective order, the Court may issue a temporary stay of discovery pending resolution of the motion.  However, a party's diligence in seeking relief is a principal factor in the decision whether to grant a stay.") (emphasis added).

With regard to termination of the deposition: *see Ferguson v. N. Broward Hosp. Dist.*, No. 10-61606-CIV, 2011 WL 1496771 (S.D. Fla. Apr. 19, 2011) ("Although the Rule [30(d)(3)(A)] does not set forth a specific time for filing a motion for protective order or a motion to terminate or limit the deposition, courts have noted that such motions must be filed 'immediately' or 'promptly' after the suspension of the deposition." ); *Oy v. Mosely*, No. 09-21597-CIV, 2010 WL 2164329 at, *2 (S.D. Fla.  May 28, 2010) ("… counsel did not in fact suspend the deposition to file the purported motion for protective order, nor did counsel file it the day after the deposition, or at any reasonable time thereafter.  Instead, contrary to this Court's Rules, Defendant's counsel instructed the expert witness not to answer."); *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 2645680, at *9 (S.D. Fla. June 26, 2008) ("Counsel was still obligated to *immediately* move for protective order to invoke the Rule's [30(d)(4)] protections.  That did not occur…*No motion was filed that day, the day after, or even after several days passed.*") (emphasis added).

admissibility can now be established given Dr. Stiroh's testimony that she lacked knowledge concerning the Stiroh Staff Memoranda, and defendants' unwillingness to otherwise stipulate.

There were at least four triggering events which required NERA and opposing counsel to *immediately* seek a protective order: (i) the day the subpoena was first received and objections immediately interposed by e-mail (February 4, 2013); (ii) the day NERA sent formal written objections to the subpoena (February 12, 2013); (iii) the day before the deposition (February 14, 2013); and (iv) the day of the deposition (February 15, 2013). No protective order was requested nor sought until February 25, 2013 - *twenty-one days after receiving the subpoena, thirteen days after objecting to the subpoena and ten days after improperly terminating the deposition.*

Moreover: (i) NERA has not satisfied its burden establishing it is "a non-testifying expert witness" and thus shielded from discovery (*see* Section III. B.1.); (ii) nor does Stiroh's staff at NERA fall within the definition of "non-testifying expert witness" under Fed. R. Civ. P. 26(b)(4)(D)[7] (*see* Section III. B.2.); (iii) even if it is "a non-testifying expert witness," "exceptional circumstances" exist to compel Stiroh's staff to testify concerning information exclusively within its possession regarding the memoranda it created (*see* Section III. B.3.);[8] and (iv) neither Rule 26 nor the Stipulation bars discovery concerning the *factual contents* of communications between an expert (Dr. Stiroh) and a client (TOI, Cole, Ligas) (*see* Section III. C.).

Accordingly, the Omnibus Motion should be denied in its entirety. The totality of events does not serve as a basis for a finding of "good cause" to issue a protective order. Quite the

---

[7] *Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002); *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999); *Long Term Capital Holdings v. U.S.*, No. 01-CV-1290(JBA), 2003 WL 21269586 (D. Conn. 2003); *see also Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d. 609, 612-14 (7th Cir. 2002).

[8] *U. S. v. Second Chance Body Armor, Inc.*, Civ. A. No. 04-0280, 2012 WL 6599866 (D.D.C. Dec. 18, 2012).

contrary, they constitute a basis for the Court to exercise its powers under Fed. R. Civ. P. 37(d) and deem the Stiroh Staff Memoranda authentic and admissible given Defendant, NERA, and opposing counsel's abuse of the discovery process.  *See In re Classicstar Mare Lease Litig.*, MDL No. 1877, 2012 WL 1135771 (E.D. Ky. Apr. 2, 2012) (deeming documents authentic for Fed. R. Civ. P. 30(b)(6) discovery abuse).

## III.      ARGUMENT

NERA and Dr. Stiroh are "testifying experts" from whom discovery can be obtained concerning facts and opinions. The untimely Omnibus Motion should be denied because there is no "good cause" for the issuance of a protective order and the subpoena is valid and enforceable.

### A.      The Standard on a Motion For Protective Order

In order to obtain a protective order, NERA must show "good cause."[9]  The burden of showing "good cause" rests upon the party seeking protection.  *Farnsworth*, 758 F.2d at 1547; *Meriden*, 171 F.R.D. 143. Under Rule 26(c), the moving party is required to establish "good cause" by a "particular and specific demonstration" as "distinguished from stereotyped and conclusory statements." *Havens v. Metro. Life Ins. Co.,* No. 94 CIV 1402(CSH), 1995 WL 234710 at *10 (S.D.N.Y. 1995).  Federal courts have noted that "good cause" can be difficult to define in absolute terms, but generally requires a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987); *see also Gelb v. Am. Tel. & Tel. Co.,* 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993).  NERA and opposing counsel have failed to establish "good cause" on this Omnibus Motion.

---

[9] *Farnsworth v. Proctor & Gamble, Co*., 758 F.2d 1545, 1547 (11th Cir. 1985); *Bank of New York v. Meridien Biao Bank Tanzania*, 171 F.R.D. 135, 143 (S.D.N.Y. 1997).

**B.      NERA Is Subject To Discovery As Either A Testifying Or Non-Testifying Expert Under Fed. R. Civ. P. 26(b)(4)(D).**

**1.      No Evidence Has Been Proffered to Establish that NERA Is A "Non-Testifying Expert"**

Movants assert NERA is a "non-testifying expert" from whom no discovery is permissible under Fed. R. Civ. P. 26(b)(4)(D).  Omnibus Motion at 6-7.  A party cannot shield a witness from a deposition by artificially classifying him/her/it as a "non-testifying expert," especially if the purpose is to obstruct the party seeking discovery from conducting its trial preparation. *Nelco Corp. v. Slater Elec., Inc.*, 80 F.R.D. 411, 416 (E.D.N.Y. 1978).[10]  A party making the "non-testifying expert" assertion must prove that the expert is serving in such a capacity.  *See Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc.*, 563 F. Supp. 1013, 1014 (D.C. N.Y. 1983).

Any ambiguity concerning the role NERA is playing as a "non-testifying expert" must be resolved in favor of disclosure.[11] In *Tampa Bay*, the court stated as follows:

> Any ambiguity about whether the witness is serving in his capacity as testifying expert or litigation consultant must be resolved in favor of discovery. *B.C.F. Oil Ref., Inc* [*v. Consol. Edison Co. of New York, Inc.*], 171 F.R.D. [57] at 62 [(S.D.N.Y. 1997)]. In part, the underlying purpose of this approach favoring production is to avoid the party seeking production from having to rely upon the resisting party's representations as to what was considered by an expert in forming his opinion. [*Oklahoma v.*] *Tyson Foods, Inc.*, 2009 WL 1578937, at *7 [(N.D. Okla. June 2, 2009)] (citing *In re Air Crash at Dubrovnik*, No. MDL 1180, CIV 398CV2464AVC, 2001 WL 777433, at *4 (D. Conn. June 4, 2001). This line of cases adopts a broad test for discoverability based on "whether the documents reviewed or generated by the expert could reasonably be viewed as germane to

---

[10] *See also Loctite Corp., v. Fel-Pro, Inc.*, 30 Fed. R. Serv. 2d 1587 (N.D. Ill. 1980) (dismissing Plaintiff's case for using tactics to oppose defendant's discovery attempts, impair defendant's trial preparation and imposing sanctions.). The *Loctite* case sent notice to litigants that no relevant information may be sheltered, especially information which renders a position baseless or unwarranted. This is consistent with the purpose of modern discovery to narrow issues, eliminate surprise and achieve substantial justice. *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).

[11] *Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-T-27TBM, 2010 WL 3394729, at *2 (M.D. Fla. Aug. 26, 2010); *Chevron Corp. v. Stratu Consluting, Inc.*, 2010 WL 3923092, at *8 n. 4 (D. Colo. Oct. 1, 2010); *B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997).

the subject matter on which the expert has offered an opinion." *S. Yuba* [*River Citizens League v. Nat'l Marine Fisheries Serv.*], 257 F.R.D. 607, 614 [(*E.D. Cal. 2009)*] (quoting *Sec. & Exch. Comm'n v. Reyes,* 2007 WL 963422, at *2, n. 2 (N.D.Cal. Mar.30, 2007)).

*Id.* (emphasis added).

This is the first time that Defendant, NERA and opposing counsel have self-servingly declared Dr. Stiroh's staff at NERA a "non-testifying expert," despite the fact that Dr. Stiroh, a Vice President of NERA, is a testifying expert in this case. This belated classification, after the close of fact and expert discovery, is not supported by a single document. No retention letter identifying NERA or its staff as a "non-testifying expert" has been provided in connection with this motion nor at any time prior to opposing counsel interposing the Fed. R. Civ. P. 26(b)(4)(D) objection.  The recently produced letter dated November 10, 2011 written by Dr. Stiroh does not explicitly define the role that NERA is taking in this litigation, nor has opposing counsel submitted a retention letter indicating that Dr. Stiroh is the testifying expert in this litigation. *See* Weick Decl. Opp MTC, Exh. K, Dkt. 470-11.   The letter creates more confusion than clarity concerning this issue.  Defendant, NERA, and opposing counsel have belatedly created this artificial distinction for one purpose: to obstruct Plaintiffs' efforts to conduct fundamental trial preparation with regard to the Stiroh Staff Memoranda which are damaging to Defendant's expert witness and the defense of this case.

Movants have cited *Sara Lee Corp. v. Kraft Foods, Inc.*, 273 F.R.D. 416 (N.D. Ill. 2011), which actually supports Plaintiffs' argument. In *Sara Lee,* the court recognized that "'any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.'" *Id.* at 420 (citations omitted).  In the absence of any evidentiary basis to conclude that NERA is a "non-testifying expert," this Court should deny the Omnibus Motion.

>           **2.     Dr. Stiroh and her Staff at NERA Are Indivisible - They Are the
>                   Testifying Expert Witness In This Case**

Movants create an artificial distinction in order to claim Dr. Stiroh's staff at NERA is a

"non-testifying witness" under Fed. R. Civ. P. 26(b)(4)(D). Courts have *expressly rejected* such

division within the strictures of Fed. R. Civ. P. 26(b)(4)(D).  When an expert  and her assistants

work "hand-in-glove" the "fruits of their labor are indivisible" warranting treatment of both as

testifying experts under Fed. R. Civ. P. 26(b)(4)(D).  *Herman v. Marine Midland Bank*, 207

F.R.D. 26, 31 (W.D.N.Y. 2002) (citing *Derrickson v. Circuit City Stores, Inc.*, 1999 WL

1456538, at *6-7 (D. Md. Mar. 19, 1999) (allowing discovery where the expert received

"seamless collaboration with his assistant."));[12] *Long Term Capital Holdings v. U.S.*, No. 01-CV-

1290(JBA), 2003 WL 21269586, at *3 (D. Conn. 2003) (same); *see also Dura Auto. Sys. Of*

*Indiana, Inc. v. CTS Corp.*, 285 F.3d. 609, 612-14 (7th Cir. 2002) (allowing discovery of person

providing assistance to expert).[13]

Here, Dr. Stiroh has testified that she is a NERA officer and worked closely with

approximately ten individuals who were part of her team in connection with her report.[14]

Throughout her deposition, Dr. Stiroh uses the terms "we" and "NERA" when discussing the

work she and her team performed in support of the expert report.  *See id.* at 43: 7-14, 51: 2-11;

---

[12] The *Derrickson* case went one step further indicating had the issue been raised, it would have ruled
that the assistant could be deposed *and cross-examined at trial*. 1999 WL 1456538, at *6 n.1 (emphasis
added).

[13] Movants misrepresent the facts of the *only* case they cite that is on point.  *See* Omnibus Motion, at 7.
As a parenthetical to *Doe v. District of Columbia*,  231 F.R.D. 27, 41 (D.D.C. 2005),  Defendant, NERA,
and opposing counsel state the court in *Doe* "barr[ed] deposition of testifying expert's staff member who
conducted an interview relied upon by the expert," which would make it appear that *Doe* is analogous to
the present case.  However, this parenthetical is misleading as there was no "testifying expert's staff
member" involved in *Doe*.  Rather, in *Doe*, the issue was the production of "psychological notes,
documents, and records generated or authored by plaintiff's consulting expert, Dr. Haller, who will not
testify at trial."  *Id.  Unlike in the present case, there was no "testifying expert's staff member" and no
dispute that the expert was a non-testifying consulting expert.*

[14] *See* Declaration of Adam G. Kurtz In Support of Opposition to Omnibus Motion, dated March 14,
2013 ("Kurtz Decl."), Exh. A, (Stiroh Dep.) at 7: 8-20, 11: 2-4, 746:16 – 747:24.

746: 23-25, 747: 1-11.  As reflected in the Cole memorandum, these individuals are referred to within NERA as the "NERA Transitions Team." Because Dr. Stiroh and her staff worked closely together on this report, the law treats them collectively as the testifying expert for purposes of Fed. R. Civ. P. 26(b)(4)(D).  Accordingly, the motion for protective order should be denied because Dr. Stiroh's staff at NERA is a "testifying expert" under Fed. R. Civ. P. 26(b)(4)(D) and discovery as to it is entirely permissible.

### 3.  "Exceptional Circumstances" Exist Warranting Discovery From NERA

Movants could establish that Dr. Stiroh's staff at NERA is a "non-testifying expert," "exceptional circumstances" exist to pursue discovery under Fed. R. Civ. P. 26(b)(4)(D)(ii). Ordinarily, a party may not obtain discovery from a non-testifying expert. Fed.R.Civ.P. 26(b)(4)(D).[15] The only exceptions are medical examinations under Rule 35(b) or a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.*  Because of the nuances of each case's set of facts, whether "exceptional circumstances" exist must be evaluated on a case-by-case basis. *Pinal Creek Grp. v. Newmont Min. Corp.*, No. CV-91-1764-PHX-DAE, 2006 WL 1817000, at *6 (D. Ariz. June 30, 2006).  "Exceptional circumstances" exist when information is uniquely or exclusively within the non-testifying expert's possession. *Herman*, 207 F.R.D. at 31; *Derrickson*, 1999 WL 1456538, at *6-7.

---

[15] The cases cited by Defendant, NERA and opposing counsel stand for the unremarkable proposition that discovery cannot be obtained from a non-testifying  expert unless 'exceptional circumstances" exist. *See* Omnibus Motion at 6-7 (*citing, e.g., Plymovant Corp. v. Air Tech. Solutions, Inc.*, 243 F.R.D. 139, 143 (D.N.J. 2007); *Feist v. RCN* Corp., Case Nos. 12–mc–80135 SI, 12–mc–80119, 12–mc–80121, 12–mc–80140, 2012 WL 5412362, at *3-4 (N.D. Cal. Nov. 6, 2012); *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 415 (D. Kan. 2000); *Chevron Corp. v. Donziger*, No. 11-CV- 0691, 2012 WL 6634680, at *4 & n.36 (S.D.N.Y. Dec. 19, 2012)).

Although the court in *Derrickson* expressly rejected the notion that an expert's staff was a "non-testifying expert" under Fed. R. Civ. P. 26(b)(4)(D), it further noted that the result would be the same as to a "non-testifying expert" because the information was "exclusively within the assistant's cognizance" and plainly discoverable under Rule 26(b)(4)(D)(ii). *Derrickson*, 1999 WL 1456538, at *7; *see also Second Chance Body Armor, Inc.*, 2012 WL 6599866 at *7 (requiring disclosure under "exceptional circumstances" because information could not be obtained elsewhere.).

In this case, Dr. Stiroh was unable to provide authentication and admissibility testimony concerning the Stiroh Staff Memoranda.  Movants must concede that NERA, as the author of the document, is *the only* person capable of now providing the requested testimony. Authentication/admissibility testimony concerning the Stiroh Staff Memoranda cannot be obtained elsewhere. Accordingly, Plaintiffs have established "exceptional circumstances" under Rule 26(b)(4)(D)(ii).

### C.   The Stipulation Does Not Bar NERA Discovery

The Stipulation Regarding Non-Discoverability of Certain Expert Materials and Communications, Dkt. 201 (Dec. 13, 2011) ("Stipulation") does not prohibit discovery concerning the Stiroh Staff Memoranda.  The relevant portion of the Stipulation provides as follows:

2.   The following types of information shall not be the subject of discovery.

a.   The *content of communications* among and between: (i) counsel and expert witnesses; (ii) counsel and expert witnesses' staff; (iii) expert witnesses and their respective staffs; and/or (iv) expert witnesses and other expert witnesses; *and*

b.   Notes, drafts, written communications or other types of preliminary work created by, or for, expert witnesses or their staffs. The protections against discovery contained in this paragraph shall not apply to any

> communications or documents upon which an expert relies as a basis for any of his or her opinions or reports.

Stipulation, Dkt. 201, at ¶ 2 (emphasis added).

There are three reasons why the Stipulation does not govern the Stiroh Staff Memoranda.

*First*, movants cobble together pieces of the Stipulation in order to have the Court mistakenly conclude that the *content of the communication* in the memoranda is between the *expert and her staff* and, therefore, barred from discovery.[16]   *See* Omnibus Motion, at 7. That is false, as the communications are clearly between an *expert and her client*.  To be sure, the third sentence of the Cole memorandum states *"[u]nless otherwise stated, all information below is according to Cole*." Mtn to Compel, Exh. 5, Dkt. 460-3, at 1 (emphasis added); Weick Decl. Opp. MTC, Exh. D, Dkt. 470-4, at 15. There are no references or notations in the document indicating the information came from anyone other than Mr. Cole. Thus, the *content of the communication* as captured in the Cole memorandum was entirely between Dr. Stiroh (expert) and Mr. Cole (client).

*Second*, even if paragraph 2(a) is relevant, which it is not, paragraph 2(b) does "not apply to any communications or documents *upon which an expert relies* as a basis for any of [] her opinions or reports." Stipulation, ¶ 2(b) (emphasis added).  It cannot be disputed that the Cole memorandum captures the substance of the oral communication between Dr. Stiroh and Mr. Cole.  Nor can it be disputed that Dr. Stiroh relied upon the oral communication with Mr. Cole throughout her report. *See,* pp. 2-3 *supra*.  To the extent that Dr. Stiroh has *ignored* information orally conveyed by her client during this conversation, which is recorded in the Cole memorandum, the document can be used as a basis to: (i) make a *Daubert* motion; (ii) oppose a

---

[16] "Additionally, the parties have stipulated that '[t]he content of communications among and between ... expert witnesses and their respective staffs' and '[n]otes, drafts, written communications or other types of preliminary work created by, or for, expert witnesses or their staff.'" Omnibus Motion at 7.

motion for summary judgment on product market definition; and/or (iii) impeach Dr. Stiroh if this case goes to trial. It is understandable why TOI wishes to distance itself from the Cole memorandum and now represents it will not rely on the Stiroh Staff Memoranda for any purpose. *See* Omnibus Motion, at 9 n.8.

*Third*, movant's assertion that the Cole memorandum is a communication between the expert and her staff is also belied by Dr. Stiroh 's testimony that she never instructed her staff to prepare this document and never saw it prior to her deposition. Mtn to Compel, Exh. 4, Dkt. 460-3 (Stiroh Dep.) at 802-804, 874, & 910-911; Weick Decl., Exh. B.  Thus, according to the expert's own testimony, the Cole memorandum was never intended to be and never became a communication between the expert and her staff.

### D.       The Motion To Quash Is Untimely

The motion to quash the subpoena should be denied as untimely. A motion to quash a subpoena must be filed before the return date of the subpoena.[17]  This motion to quash was filed ten days *after* the scheduled deposition at which the witness appeared.  It was also filed *after* the witness accepted the required Rule 45 witness appearance fee.  The witness has waived any right to challenge this subpoena.  It should also be equitably estopped from challenging the subpoena given its dilatory conduct and its acceptance/retention of the witness fee check – a check intended to compensate a witness for the time an expense *providing testimony* which it improperly refused to do.  Accordingly, the motion to quash should be denied.

---

[17] *Estate of Ungar v. Palestinian Auth.,* 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) ("It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."); *CCB LLC v. Banktrust,* No. 10-CV-228/LAC/EMT, 2010 WL 4038740, at *1 (N.D. Fla. Oct. 14, 2010) (Motion to Quash Subpoena Seeking Deposition that was filed after the noticed date of the scheduled deposition was "denied as untimely); *United States v. Intl. Bus. Machs. Corp.,* 70 F.R.D. 700, 701 (S.D.N.Y.1976); *Ireh v. Nassau Univ. Med. Ctr.,* No. CV 06–09(LDW)(AKT), 2008 WL 4283344 at *2 (E.D.N.Y. Sept. 17, 2008).

### E.      The Motion For A Protective Order Is Untimely

The motion for protective order is also untimely. A motion for a protective order concerning a deposition must be filed before the taking of the deposition.[18]   The failure to timely seek a protective order precludes a later objection.[19]   In this district, "a party's diligence in seeking relief is a principal factor in the decision whether to grant a stay." Middle District Discovery (2001) at § VI.B. Movants filed a motion for a protective order approximately *thirteen days* after objecting to the subpoena and *ten days* after appearing for the noticed deposition. That is a significant interval of time and not "immediate."[20] Defendant and NERA did file their Motion for a Protective Order "immediately" after Plaintiffs' filed a Motion to Compel. *Compare* Dkt. 460 (Mtn to Compel), *with* Dkt. 461 (Omnibus Motion).  From a procedural perspective, Defendant, NERA and opposing counsel have behaved in a dilatory manner and should now be estopped from raising any objection.  From a substantive perspective, the motion for a protective order should be denied because discovery from NERA is appropriate under the Federal Rules of Civil Procedure as outlined above (*See* Section III.B.) and the Stipulation does not prohibit such discovery (*See* Section III.C.). Accordingly, the motion for a protective order should be denied.

---

[18] *See, e.g., U.S. v. Portland Cement Co. of Utah,* 338 F.2d 798, 803 (10th Cir.1964) (protective orders must be obtained prior to taking of depositions); *United States v. Int'l Bus. Machs. Corp.,* 70 F.R.D. 700, 701 (S.D.N.Y.1976) (same).

[19] *Mitsui & Co. v. Puerto Rico Water Resource Auth.,* 93 F.R.D. 62, 67 (D.P.R.1981); *see also Truxes v. Rolan Elec. Corp.,* 314 F. Supp. 752, 759 (D.P.R.1970); *Wong Ho v. Dulles,* 261 F.2d 456, 460 (9th Cir.1958); 8A C. Wright & A. Miller, Federal Practice, § 2035 (2010)).

[20] *See Ferguson*, 2011 WL 1496771, at *1 ("… a motion for protective order or a motion to terminate or limit the deposition, … must be filed 'immediately' or 'promptly' after the suspension of the deposition."); *Oy*, 2010 WL 2164329, at *2 (immediately means "the day after the deposition, or at any reasonable time thereafter"); *Buckley Towers*, 2008 WL 2645680 at *9  (immediately means "that day, the day after, or [] after several days passed.").

## F.      The Subpoena Is Valid

For reasons set forth in the Kurtz Declaration, at ¶¶ 4 – 13, and below, the challenges to

the validity of the Subpoena are baseless.

Defendant, NERA and opposing counsel's contention no valid subpoena has been served

is misplaced.  Omnibus Motion, at 5, n.5. A fully executed subpoena was sent to opposing

counsel.[21] Kurtz Decl., at ¶ 9.   When opposing counsel refused to accept service of the

subpoena, an inadvertently unsigned subpoena was served on NERA.  Kurtz Decl., at ¶ 10;

Weick Decl., Exh. H. However, the unsigned subpoena identified in typewritten form the name

of the issuing attorney. Kurtz Decl., at ¶¶ 12-13; Weick Decl., Exhs. F, H.  A subpoena which is

unsigned, but contains the type written name of the issuing attorney is a valid subpoena.[22]  Try as

they might, Defendant, NERA and opposing counsel cannot dispute that the initial subpoena sent

was signed and the first subpoena personally served did contain the typewritten name of Adam

G. Kurtz.[23]

When informed on February 12, 2013 that the subpoena was unsigned, Mr. Kurtz cured

the defect on February 13, 2013 by re-serving a fully executed subpoena on NERA. Kurtz Decl.,

¶ 11.  Notably, *no written objections have been interposed concerning this duly served subpoena*

---

[21] In his Decl. at ¶ 8, Mr. Weick describes Exh. F as "an e-mail dated February 4, 2013 from Adam Kurtz to all counsel of record as well as an *unsigned* subpoena to NERA as the attachment thereto."  *Id.* (emphasis added).  However, the "subpoena to NERA … attachment thereto" is *signed*.  *See* Weick Decl., Exh. F.  Notably, counsel's email in response is an acknowledgement of their receipt of the *signed* subpoena.  *See id.* & Exh. G ("Before you actually try to serve this, please consider whether you really want to. It is plainly improper under Rule 26 and you will force us to seek Rule 37 sanctions.").

[22] *Fago v. City of Hartford*, No. 02 CV 1189 AHN, 2003 WL 23689571, at *5 (D. Conn. Dec. 31, 2003) ("The court finds no reason to quash an otherwise valid subpoena because it is unsigned …. To do so would be an elevation of form over substance."); *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 397-98 (N.D. Ill. 2002) (holding that "the lack of signature does not render the subpoena void" and was "a defect that readily can be cured"); *see also WH Holdings, LLC, v. Ace Am. Ins. Co.*, No. 09C7133, 2010 WL 3732149 (N.D. Ill. Sept. 17, 2010) (citing and relying on *Atlantic Inv. Mgm't*, 212 F.R.D. at 397-98); *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 84 (D.P.R. 2006) (same).

[23] Defendant, NERA and opposing counsel's assertion that Mr. Kurtz deliberately back-dated the subpoena is not true.  *See* Kurtz Decl., at ¶ 12; *see also* Weick Decl., Exh. F.

– *Defendant, NERA and opposing counsel have now waived their right to object to the subpoena.*

Most importantly, on February 15, 2013, Defendant, NERA and opposing counsel appeared at

the time and place noticed on the subpoena.  *See* Mtn to Compel, Exh. 3, Dkt. 460-3, at 3; Weick

Decl., Exh. L, Dkt. 462-12 at 3-4; Kurtz Decl., ¶ 14.  These facts clearly demonstrate that there

was absolutely no prejudice to Defendant, NERA or its counsel concerning the service or receipt

of the subpoena and they now have no valid basis to object.

Lastly, Defendant, NERA and opposing counsel never raised a timely objection

concerning a scrivener's error regarding the year of the appearance – the subpoena inadvertently

indicates the appearance for 2012. For Defendant, NERA and opposing counsel to raise this

"objection borders on bad faith as it is a waste of this Court's time, as well as opposing

counsel's, to deal with this type of objection." *Kaplan v. Kaplan*, No. 2:10-CV-237-FTM, 2012

WL 995202, *1 (M.D. Fla. Mar. 23, 2012) (Chappell, M.J.) (objection based on obvious,

inadvertent and not prejudicial scrivener's borders on bad faith).[24]

### G. This Court Has Broad Discretion To Deem The Stiroh Staff Memoranda Authentic And Admissible

This court has the ability to deem the Stiroh Staff Memoranda authentic and admissible under

Classicstar[25] in which the court held:

> the Court can prevent frustration of the discovery process by giving the frustrated
> party or parties the benefit of an inference that the deposition would have yielded
> evidence favorable to its position—or at least unfavorable to that defendant.
> Moore's Federal Practice—Civil § 37. 96 (2009). Further, this Court recognizes
> that the parties' taking the deposition could and likely would have requested
> authentication of documents identified by the notice of deposition in the course of

---

[24] *See, e.g.*, *VHS Acquisition Subsidiary No. 7, Inc. v. MSS Consulting Services*, No. 8:12-CV-T-27EAJ , 2012 WL 5907064, at *4 (M.D. Fla. Nov. 9, 2012) ("the Court may wish to consider a *sua sponte* show cause order directing Rexroat to show cause why he should not be sanctioned for his filings in connection with the Motion to Set Aside Judgment.); *U.S. ex rel. King v. DSE, Inc.*, No. 8:08-CV-T-23EAJ, 2013 WL 610531, at *11 (M.D. Fla. Jan. 17, 2013) ("[This] Court has imposed monetary sanctions to compensate [a party] involving other discovery motions…" ).

[25] *In re Classicstar Mare Lease Litig.*, MDL No. 1877, 2012 WL 1135771, *1 (E.D. Ky. Apr. 2, 2012).

that proceeding. *See Sprint Comm. Co. L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D. Kan.2006). This Court concludes that it can also provide relief from the designee's failure to appear with respect to this issue by refusing to allow the errant corporation to deny that such documents are authentic.

\* \* \* \* \*

The Court finds that it is only fair that GeoStar itself be precluded from disputing the authenticity of documents appearing to have been created or received by GeoStar or its agents, as requested by Plaintiffs.

*Classicstar Mare Lease Litig.*, 2012 WL 1135771, at \*1-2.[26]

In this case, NERA's improper termination of the deposition has prejudiced Plaintiffs' trial preparation. Defendant and NERA should be precluded from interposing any objection concerning the authenticity or admissibility of the Stiroh Staff Memoranda – the documents should be deemed admissible and authentic.

## IV.    CONCLUSION

This Omnibus Motion is not well based, fails to establish "good cause" for the issuance of a protective order and is a complete waste of time. Given movant's efforts to thwart routine trial preparation concerning damaging evidence to their defense, the Omnibus Motion should be denied in its entirety. Plaintiffs respectfully submit the Court should grant any appropriate relief, including entry of an order, in accordance with Fed.R.Civ. P.37(d), establishing the authenticity and admissibility of the Stiroh Staff Memoranda.[27]

---

[26] Court's imposing sanctions for failure to comply with a subpoena look to Rule 37(d) for guidance. *See N.L.R.B. v. Cable Car Advertisers, Inc.*, 319 F. Supp.2d 991, 1000 (N.D.Cal.2004) (holding that a failure to comply with an NLRB-issued subpoena justified Rule 37(d) sanctions in an enforcement proceeding in district court); *see also N.L.R.B. v. Baywatch Sec. & Investigations*, 2005 WL 1155109, \*3 (S.D. Tex. 2005); *N.L.R.B. v. A.G.F. Sports, Inc.*, 1994 WL 507779 (E.D.N.Y.1994).

[27] Michael M. Buchman and Adam G. Kurtz will conduct a meet and confer with Jonathan M. Jacobson and Jeffrey Bank after this brief is filed to request that they withdraw the request for sanctions against Pomerantz Grossman Hufford Dahlstrom & Gross LLP and them individually. We shall provide the Court with notice as to whether they have agreed to withdraw the request.

Respectfully submitted,


  s/ Christopher Casper
Christopher Casper, FBN: 048320
JAMES, HOYER, NEWCOMER, & SMILJANICH, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL  33609
Tel: (813) 286-4100
Fax: (813) 286-4174
ccasper@jameshoyer.com

*Interim Liaison Counsel for the*
*Putative Indirect Purchaser End-User Class*


  /s/ Ben Barnow
Ben Barnow
Erich P. Schork
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
b.barnow@barnowlaw.com
e.schork@barnowlaw.com


  /s/ Lance A. Harke
Lance A. Harke
HARKE CLASBY & BUSHMAN LLP
9699 NE Second Avenue
Miami Shores, FL 33138
Tel: (305) 536-8220
lharke@harkeclasby.com

*Interim Co-Lead Counsel for the putative*
*Indirect Purchaser End-User Class*


  /s/ Michael M. Buchman
Marc I. Gross
Michael M. Buchman
POMERANTZ GROSSMAN HUFFORD
   DAHLSTROM & GROSS LLP
600 Third Avenue, 20th Floor
New York, NY  10016
Tel: (212) 661-1100
mgross@pomlaw.com
mbuchman@pomlaw.com


  /s/ Susan G. Kupfer
Susan G. Kupfer
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA  94111
Tel: (415) 972-8160
skupfer@glancylaw.com

### Certificate of Service by Electronic Means

The undersigned hereby certifies that the preceding document was caused to be served electronically this 14th day of March 2013 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

 s/ Christopher Casper

# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |  |
|---|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | ) ) ) ) ) ) ) | MDL Docket No. 2173 Case No. 8:10-md-02173-JDW-EAJ Hon. James D. Whittemore |

EXPERT REPLY REPORT OF KENNETH C. BASEMAN
January 21, 2013

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE ORDER

those studied in the economics literature" and not any sign of collusive conduct between Essilor

and Transitions.[30]  Dr. Sibley's characterization of the agreements between TOI and the various

Essilor entities as non-collusive would make no sense at all if, as implied by Dr. Stiroh's market

definition, TOI and lenscasters were horizontal competitors.  Indeed, if TOI and lenscasters were

horizontal competitors, then much of the collaboration between Essilor and TOI, as well as

TOI's actions to restrict the prices at which other lenscasters sell Transitions lenses, would be

highly suspect.[31]

      26.     NERA's notes on their November 3, 2012 conversation with Dave Cole illustrate

the same issue and undercut Dr. Stiroh's market definition.  According to the notes, Cole told

NERA that "[f]rom TOI's inception, close relationships with lens casters have been central to

TOI's business model. ***TOI has always sold to and through lens casters and generally does not

pose a threat to them as a horizontal competitor competing for the same downstream

customers***."[32]  "TOI wanted to let lens manufacturers compete with each other on their own

merits. ***TOI made the commitment with lens casters to not compete with them***."[33]  Dr. Stiroh

reports that its cooperation with lenscasters extends so far as the exchange of highly proprietary

information and business strategies.[34]  Transitions cannot have it both ways.  Either

photochromic and nonphotochromic lenses do not compete with one another and are in different

markets, or the products compete with one another and Transitions' agreement not to compete

---

[30] Expert Report of David S. Sibley ("Sibley Report") at 32, ¶ 65.  For Sibley's discussion of the relevant literature, see Sibley Report, ¶¶ 18-27.
[31] TOI offers customer-specific discounts to lenscasters.  For example, TOI wanted to offer lower prices to Wal-Mart than to other retailers and it offered customer-specific discounts to Essilor and its other lenscaster partners who supplied Wal-Mart.  TOI would not allow Essilor or the other lenscasters to extend their Wal-Mart discounts to other customers.  Such arrangements are not collusive as long as TOI does not compete with Essilor and its other lenscaster customers.  However, if Dr. Stiroh were correct and TOI and lenscasters were direct horizontal competitors, such restrictions on price competition among them would be highly suspect, if not per se criminal antitrust violations.
[32] Stiroh_0000076 (emphasis added).
[33] Stiroh_0000076 at -77 (emphasis added).
[34] Stiroh Rpt., ¶ 134.

with other lenscasters restrained trade.  It makes no economic sense to posit, as Dr. Stiroh does,

that clear lenses are substitutes for TOI's photochromic treatment, but that the firms who make

and sell clear lenses do not compete with TOI.

      **C.**      **Dr. Stiroh's Econometric Results, If Accepted at Face Value, Imply that Photochromic Lenses Are a Relevant Product Market**

      27.      Setting aside her reliance on the Cellophane Fallacy, and her focus on the wrong

vertical stage of production, Dr. Stiroh also focuses on the wrong elasticity.  While Dr. Stiroh

focuses on the cross-price elasticity of demand (also referred to as the direct price elasticity),

economists generally recognize that it is the own-price elasticity of demand that is more relevant

to market definition.  Carlton and Perloff, whom Dr. Stiroh cites as authoritative on other points,

explain that "the direct price elasticity - *not* the cross elasticity of demand – determines market

power."[35]  They go on to explain: "There is a relationship between cross-elasticity and direct

elasticity, however.  All else the same, the larger a cross-elasticity of demand, the larger in

absolute value is the direct elasticity of demand."[36]  It is true enough that higher cross-price

elasticities imply higher own-price elasticities, but all of the information useful for market

definition is contained in the own-price elasticity.  There is no threshold cross-price elasticity at

which one can say product B is a close enough substitute to product A to belong in the same

market.  There is, however, a threshold own-price elasticity.  That is, for given marginal costs

there is a critical threshold for how high an own-price elasticity for a product must be before a

relevant market limited to that product is too narrow, and the relevant market must be expanded.

For example, if the own-price elasticity is 5, then a monopolist will set price 20% above the

competitive level (marginal cost).  This own-price elasticity is low enough to conclude the

---

[35] Dennis Carlton and Jeffrey Perloff, *Modern Industrial Organization*, Pearson Addison Wesley (4th ed. 2005), p. 647.
[36] *Id.* at 647-48.