**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IN RE:  PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| This document relates to:<br><br>Case No. 8:10-cv-0984-T-27<br>Case No. 8:10-cv-1850-T-27<br>Case No. 8:10-cv-2042-T-27<br>Case No. 8:10-cv-2051-T-27<br>Case No. 8:10-cv-2171-T-27 | Case No. 8:10-md-2173-JDW-EAJ<br><br>Hon. James D. Whittemore<br>Hon. Elizabeth A. Jenkins |

**DEFENDANTS' CONDITIONAL CROSS-OBJECTIONS TO THE REPORT &**
**RECOMMENDATION ON DIRECT PURCHASER PLAINTIFFS' MOTION FOR**
**CLASS CERTIFICATION**

Pursuant to 28 U.S.C. § 636(b) and Local Rule 6.02(a), Defendants Transitions Optical, Inc. ("Transitions"), Essilor of America, Inc. ("EOA"), and Essilor Laboratories of America, Inc. ("ELOA") respectfully submit these Conditional Cross-Objections to the Report and Recommendation on Direct Purchaser Plaintiffs' Motion for Class Certification, Dkt. No. 471.  Defendants submit that the Report & Recommendation reached the correct ultimate conclusions for entirely sound reasons.  There are additional arguments, however, that the Magistrate Judge either declined to reach or did not accept that further justify a ruling denying class certification.  This filing is submitted conditionally, both to ensure that this Court may consider the issues in its *de novo* review and to ensure that the issues are properly preserved should there be any appeal of the Court's final class certification order.

### I.   INTRODUCTION

Defendants believe Magistrate Judge Jenkins' Report and Recommendation on Direct Purchaser Plaintiffs' Motion for Class Certification, Dkt. No. 471 ("Report & Recommendation"), correctly concludes that Plaintiffs Nouveau Vision, Inc., Optical Supply, Inc., Florida Optical Express, Inc., Central Illinois Vision Associates, Ltd., and B&B Eyes, Inc. ("Plaintiffs") cannot establish adequacy of representation under Federal Rule of Civil Procedure 23(a)(4) and predominance under Rule 23(b)(3).  Her ultimate conclusions, and the reasoning supporting them, should accordingly be adopted, and Plaintiffs' motion for class certification should be denied.

Defendants believe there are three further grounds for denying the motion that the Court should accept on *de novo* review.  *First*, the fundamental differences in market circumstances between the named Plaintiffs and other members of the class defeat typicality under Rule 23(a)(3).  *Second*, the conceded inability of Plaintiffs' economist to offer a method of common proof to establish classwide impact alone suffices to defeat predominance under Rule 23(b)(3).  *Third*, named Plaintiffs' need to establish an exception to the rule in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) – while other putative class members do not – creates an irreconcilable conflict that defeats typicality and adequacy of representation under Rule 23(a)(3)-(4).  For these additional reasons, the Court should deny the motion for class certification.

## II.    ARGUMENT

### A. Named Plaintiffs' Claims are not Typical of the Claims of Other Entities in the Proposed Class

In their opposition to Plaintiffs' motion for class certification, Defendants noted that the proposed class includes entities with widely varying positions in the market.  Dkt. No. 452 at 9-10.  Lens casters purchase directly from Transitions and negotiate pricing and technological partnerships with it.  Integrated retailers like Wal-Mart and Costco often have enormous clout with both the lens casters they purchase from and with Transitions in terms of obtaining favorable pricing and special programs.  Even independent laboratories and eye-care professionals (ECPs) are substantially different: some participated in Transitions' STAR discount programs while others did not, and some enhanced their purchasing power by working with purchasing groups while others did not.  The list could go on.  *See, e.g.*, Bushman Decl., Dkt. 325, Ex. 28 ¶¶ 67-69.

Despite these broad differences among class members, the proffered class representatives include only (i) independent wholesale optical laboratories and (ii) small ECPs.  Their claims cannot be typical of the class as a whole.  A claim by a lens caster would require evaluation of that lens caster's financial and technological relationship with Transitions to see if the conduct at issue benefited the lens caster.  A claim by a large integrated retailer would require close attention to its power to extract lower prices from EOA and Transitions through the exercise of buyer power.  A claim by a STAR program participant would require analysis of the benefits from its relationship with Transitions (which Plaintiffs challenge as exclusionary); yet none of the class representatives participated in the program.  Such variation in the claims and defenses relevant to different types of

entities precludes a finding of typicality.  *See Cooper v. Southern Co.*, 390 F.3d 695, 715 (11th Cir. 2004) ("[W]hile the different named plaintiffs may have had claims that were typical of some conceivable subgroups of the overall class, the seven named plaintiffs, collectively, did not have claims that would have been typical of the *entire* class."), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460 (N.D. Ala. 2003) (typicality fails where "the factual position of [the proposed class representatives] markedly differs from that of other members of the class").

*In re Graphics Processing Units Antitrust Litigation*, 253 F.R.D. 478 (N.D. Cal. 2008) ("*GPU*"), is on-point.  In that case, the court found typicality lacking where individual consumers who purchased directly from certain members of a price-fixing conspiracy attempted to represent wholesalers who purchased directly from other members of the conspiracy.  *Id*. at 489-90.  The court noted, "Unlike the representative plaintiffs who had no negotiating power at all, some wholesale conglomerates, such as Dell, Microsoft, Hewlett–Packard, Apple, Motorola, and Best Buy, likely had more bargaining power than defendants themselves."  *Id*. at 489.  The court found the differing market positions of the named representatives and the absent class members created "overwhelming disparities" that "defeat typicality."  *Id*. at 490.  Likewise in this case, the "overwhelming disparities" between the factual position of the named class representatives and the positions of a variety of absent class members "defeat typicality."

The Report & Recommendation considered but ultimately did not reach these issues, concluding that typicality presented a "close call" and instead recommending that Plaintiffs'

motion be denied under the Rule 23(a)(4) adequacy of representation prong.  *See* Dkt. No. 471 at 9.  Defendants agree that Plaintiffs' motion fails under Rule 23(a)(4), but respectfully request that the Court on *de novo* review find the named representatives' claims are not typical of the class and deny the motion for class certification under Rule 23(a)(3) as well.

### B. The Use of Different Impact Models for Different Groups Defeats Predominance

The Report & Recommendation does not find that Plaintiffs' failure to offer a single method capable of establishing classwide injury is, on its own, dispositive of the class certification motion.  Dkt. No. 471 at 17-18.  Defendants continue to believe that Plaintiffs' motion can be denied for lack of Rule 23(b)(3) predominance based on their admitted failure to offer a method of proving injury that is common to all class members.  *See* Dkt. No. 452 at 12.

Plaintiffs put forward three different models in an effort to show injury to three separate groups.  These were (i) a direct overcharge model for lens casters who purchase directly from Transitions ("Group A"), (ii) a pass-on model for the various types of laboratory entities that purchase Transitions lenses indirectly through EOA ("Group B"), and (iii) a double pass-on model for ECPs and other retail entities that purchase Transitions lenses from ELOA ("Group C").  Plaintiffs' own expert, Dr. Singer, conceded that a common model for the proposed class would be "very difficult" to formulate, so he did not even attempt it.  Bushman Decl., Dkt. No. 325, Ex. 27 at 259:21-260:9.  In fact, he admitted in his deposition that, when he looked at the complex distribution chain for Transitions lenses, his "head was starting to spin" and doing three separate and distinct models for three separate and distinct groups "was the only way that [he] could get across the goal line . . . ."  Hr'g Tr.,

Dec. 3, 2012, Dkt. No. 434, at 25:18-21 (transcript of video tape played at evidentiary hearing).[1]

Once again, the decision in *GPU* is instructive.  The plaintiffs there had attempted to certify a class of both, (i) individual consumers who purchased directly from certain alleged conspirators based on list prices and (ii) wholesalers (many of which were large players) that negotiated their pricing.  Their economist, however, could not forward a single model to show injury to both types of class members.  253 F.R.D. at 495-96.  The court concluded that the expert's "failure to include individual consumers in the same model as the wholesale purchasers indicates that proof is not common to the class, at least without having to create a separate model or category for each particular kind of purchaser, which itself would suggest that individual issues predominate over those common to the class."  *Id*. at 496.  The same holds true here: Dr. Singer cannot establish impact "without having to create a separate model or category for each particular kind of purchaser," so his methods cannot support certification of the class proposed by Plaintiffs.  *Id.*  This alone is dispositive.

*In re Flonase Antitrust Litigation*, 284 F.R.D. 207 (E.D. Pa. 2012), cited in the Report & Recommendation, is not to the contrary.  In that case, the plaintiffs' expert used industry data to verify the economic theory that delayed generic pharmaceutical entry would result in higher prices and then used a single econometric model to establish the percent overcharge paid by each purchaser.  *Id*. at 221-23.  Neither the general demonstration of increased prices nor the econometric model was specific to a single type of class-entity.  In order to show his

---

[1]   The hearing transcript incorrectly identifies the recorded speaker as "Mr. Leonard"; the video came from Dr. Singer's deposition and Dr. Singer was speaking.  *See* Dkt. No. 434 at 25:2-3 (identifying speaker as Dr. Singer).

econometric model held across the class, the expert performed "robustness" checks to ensure

that the model showed injury to each type of purchaser encompassed by the class definition.

*Id*. at 223-25.  But he did not use a different model for different types of purchasers; he

simply ran additional tests to confirm his one model established injury to all of the types of

purchasers included in the class definition.  *Flonase* thus does not support Plaintiffs'

approach here.  Nor did Plaintiffs cite any other supporting authority; none of the cases cited

in their class certification reply brief accepted different impact models for different groups

within the same putative class.  *See* Dkt. No. 443 at 3-4. [2]  This Court should therefore hold

on *de novo* review that Plaintiffs' inability to show common injury through a common model

on its own defeats the predominance requirement.

## C. Named Plaintiffs' Status as Indirect Purchasers Defeats Typicality and Adequacy

Defendants had argued that named Plaintiffs' status as indirect purchasers renders

them unable to represent the class under Rule 23(a)(3)-(4).  Dkt. No. 452 at 10-11.  That is

because the class members who purchased from EOA (Group B) and ELOA (Group C) must

prove an additional element in their case that the lens casters (Group A) need not prove.

Putative class members in Groups B and C (including all of the named class representatives)

do not purchase directly from Transitions; only the lens casters do.  Groups B and C

---

[2]   The Report & Recommendation also cites *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 583 (N.D. Cal. 2010), in a footnote, though Defendants have reason to believe the intended citation was *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 291 (N.D. Cal. 2010), *abrogated by In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755 n.7 (9th Cir. 2012), as that was the direct purchaser class certification opinion.  The citation error originated in Plaintiffs' reply brief.  *See* Dkt. No. 443 at 3 n.3. Each of the methods in that case applied to the class as a whole, so the decision does not support the approach offered by Plaintiffs here.  267 F.R.D. at 312.

therefore lack standing under federal antitrust law unless they can prove an exception to the *Illinois Brick* rule barring damages claims by indirect purchasers. *See Illinois Brick*, 431 U.S. at 740-41, 746.

Thus, in order to obtain standing here, the named Plaintiffs must show that Transitions, EOA, and ELOA conspired to fix the prices paid by Groups B and C. *ATM Fee Antitrust Litig.*, 686 F.3d at 755 ("[W]e recognize the co-conspirator exception only when the conspiracy involves setting the price paid by the plaintiffs."); *Lowell v. Am. Cyanamid Co.*, 177 F.3d 1228, 1233 (11th Cir. 1999) (standing allowed "where the complaint alleges a vertical conspiracy with no pass-on"). This poses an irreconcilable conflict of interest. Group A has no interest in proving conspiracy, but Groups B and C have no case without such proof. The Eleventh Circuit has held that such serious conflicts preclude certification of a class. *Valley Drug Pharm. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).

The Report & Recommendation declines to reach Plaintiffs' "*Illinois Brick* problem." Dkt. No. 471 at 7, 8, 10, & 13. However, certifying the proposed class would link the success or failure of the lens caster claims to the success or failure of the indirect purchaser claims asserted by the named Plaintiffs. If the named Plaintiffs cannot prove a conspiracy, the case would be over for the entire class. Because the proposed class representatives must plead and prove a major element that lens casters would not need to plead or prove, i.e., the supposed conspiracy, their claims are not typical of the entire class they seek to represent and they cannot fairly and adequately represent members of the proposed class. Accordingly, the Court should find on *de novo* review that the proposed class representatives' status as indirect

8

purchasers means they cannot meet the typicality and adequacy requirements of Rule 23(a)(3)-(4).

### III.    CONCLUSION

For the foregoing reasons in addition to those accepted by the Report & Recommendation, the Court should deny Direct Purchaser Plaintiffs' Motion for Class Certification, Dkt. No. 285.

Dated: March 26, 2013

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Jonathan M. Jacobson
    Jonathan M. Jacobson

Chul Pak
Daniel P. Weick
Robert C. Corp
Tiffany L. Lee
1301 Avenue of the Americas
40th Floor
New York, NY  10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

Lisa A. Davis
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 320-4526
Facsimile: (650) 493-6811
Email: ldavis@wsgr.com

*Attorneys for Defendant Transitions Optical, Inc.*

JONES DAY

/s/ John M. Majoras
    John M. Majoras

William V. O'Reilly
Michelle M. Bushman
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: jmmajoras@jonesday.com

*Attorneys for Defendants Essilor of America, Inc. and Essilor Laboratories of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Defendants'

Conditional Cross-Objections to the Report & Recommendation on Direct Purchaser

Plaintiffs' Motion for Class Certification to be served via ECF on this 26th day of

March 2013.


Dated:  March 26, 2013

/s/ Jonathan M. Jacobson
Jonathan M. Jacobson