**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 |
| This document relates to:<br><br>All Cases | Case No. 8:10-md-2173-JDW-EAJ<br><br>Hon. James D. Whittemore<br>Hon. Elizabeth A. Jenkins |

**CERTAIN PARTIES' REQUEST FOR CLARIFICATION CONCERNING
BRIEFING SCHEDULE**

Certain of the parties to this MDL respectfully submit this Request for Clarification Concerning Briefing Schedule.[1] Specifically, the submitting parties seek clarification of the deadline for filing dispositive motions and *Daubert* motions under the Court's January 3, 2013 order on the parties' previous Joint Supplemental Case Management Statement and Proposed Revised Scheduling Order, Dkt. No. 436. Vision-Ease interprets the order to mean that such motions are due 30 days after the report and recommendation on the pending motion by the Indirect Purchaser End-User Plaintiffs ("IPPs") for class certification (the second of the two initial "rulings" by Magistrate Judge Jenkins on the class certification

---

[1] The submitting parties are: Plaintiff Insight Equity A.P.X. d/b/a Vision-Ease Lens Worldwide ("Vision-Ease"), the Direct Purchaser Plaintiffs ("DPPs") (collectively with Vision-Ease, "Plaintiffs") and defendants Transitions Optical, Inc. ("Transitions"), Essilor of America, Inc. and Essilor Laboratories of America, Inc. (jointly, "Essilor" and collectively with Transitions, "Defendants"). By joining in this report, Defendants do not agree with or otherwise adopt certain of the plaintiffs' claims to be "direct purchasers."

motions); all other parties read the order as setting a deadline of 30 days from the issuance of the Court's final orders on class certification.[2]

### A. Background

On December 21, 2012, the parties filed a Joint Supplemental Case Management and Proposed Revised Scheduling Order addressing, *inter alia*, the timing for briefing dispositive and *Daubert* motions. Dkt. No. 431 at 4. Defendants proposed a due date of March 1, 2013, with oppositions due May 3, 2013. *Id*. Vision-Ease and DPPs did not oppose Defendants' proposal. *Id*. IPPs proposed that briefing on dispositive and *Daubert* motions be deferred "until 30 days after the district court rules on class certification." *Id*.

On January 3, 2013, the Court issued an order directing that "dispositive motions and *Daubert* motions shall be due 30 days after class certification rulings." Dkt. No. 436 at 2. A dispute has arisen between Vision-Ease and the other parties concerning the meaning of "30 days after class certification rulings." All parties other than Vision-Ease believe the phrase means 30 days after the final orders on both pending class certification motions have issued. Vision-Ease, however, takes the position that the phrase means 30 days after the issuance of Magistrate Judge Jenkins' report and recommendation on IPPs' motion for class certification. (She has already issued her report and recommendation on the DPPs' motion.) The submitting parties have agreed that resolution by the Court of the differing interpretations of the order is needed.

---

[2] The Indirect Purchaser End-User Plaintiffs have told the other parties that they concur with this interpretation, but choose not to join this submission because they believe the order is clear.

### B. Defendants' Position

Defendants believe the correct reading of the Court's order is that dispositive and *Daubert* motions are due 30 days following issuance of final orders on both pending motions for class certification. A report and recommendation from a magistrate judge is not a "ruling" because it is subject to modification by the district court. *See* L.R. 6.02(a) ("The District Judge may accept, reject, or modify in whole or in part, the report and recommendation of the magistrate judge or may receive further evidence or recommit the matter to the magistrate judge with instructions."). The Court will conduct *de novo* review of the portions of each report and recommendation to which the parties object and will perform clear error review of those portions to which no objection is lodged. *See* 28 U.S.C. § 636(b)(1); *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1316-17 (M.D. Fla. 2000). Because a report and recommendation is not a "ruling," Vision-Ease's understanding of the order is incorrect.

### C. Direct Purchaser Plaintiffs' Position

DPPs agree with Defendants' reading of the scheduling order. As noted above, the Indirect Purchaser End-User Plaintiffs also agree with this reading but choose not to join this submission because they believe the order is clear.

### D. Vision-Ease's Position

Interpreting "ruling" as proposed by Defendants and the class plaintiffs will impose a significant delay on Vision-Ease's ability to prosecute its case, will potentially cause class certification to consume a disproportionate amount of pretrial time, and is inconsistent with this Court's prior treatment of the case. Vision-Ease respectfully requests that the Court construe "ruling" to mean the magistrate's report and recommendation or, in the alternative,

3

to revise the scheduling order to set a firm deadline for dispositive and *Daubert* motions in Vision-Ease's case.

The background of the order suggests that the Court did not intend to extend pretrial proceedings as now urged by the other parties. The first two scheduling orders in this case set firm deadlines for summary judgment and *Daubert* motions. Dkt. 151, ¶ 10 (December 18, 2012); Dkt. 307 at 4, ¶ 7 (January 26, 2013). Those deadlines placed a clear end-date on pretrial proceedings (subject only to the timing of the Court's rulings on those motions).

When Defendants sought changes to the last scheduling order, Defendants did not ask for a dramatic extension of the case schedule, much less provide a showing of good cause to justify such an extension.[3] Dkt. 431 at 4. Rather, Defendants sought a modest extension of the summary judgment and *Daubert* deadlines from January 26 to March 1 to accommodate expert discovery. Neither Vision-Ease nor the DPPs opposed that request. (In other words, four out of five parties agreed on a March 1 deadline.) Only the IPPs opposed that request, asking that the deadline instead be extended to 30 days after class certification rulings. The Court set a deadline that was keyed off class certification "rulings," but without defining that term.

The amount of time that Defendants believe the Court has now inserted into the case schedule is, at the very least, substantial and potentially extraordinary. If the other parties are correct, then the case schedule has been extended by (1) the period necessary to brief the parties' objections to each report and recommendation in each of the two class cases; (2) the

---

[3] The Court has previously required showings of good cause to extend deadlines in the case schedule. *See* Dkt. 436 at 2; Dkt. 307 at 2.

4

interval necessary for Judge Whittemore to hear oral argument (if any) on those objections; (3) the interval necessary for Judge Whittemore to rule on those objections in both cases, (4) the potential interval associated with any remand to the magistrate judge for further proceedings and a second report and recommendation in either class case, (5) the likely interval related to attempts by any disappointed party to appeal from the district court's final ruling (*see* Fed. R. Civ. P. 23(f) and Dkt. 488 at 1); and, finally, (6) the interval necessary for any proceedings in district court following appeal.

     Defendants' interpretation has both absurd and perverse consequences. The absurd consequence is that class certification proceedings will now occupy a massively disproportionate segment of the pretrial proceedings. The case schedule provided approximately one year for discovery. The Court's original scheduling order, dated August 2, 2011, established a discovery cutoff of July 15, 2012 (Dkt. 151), which was subsequently extended by consent of the parties to August 30, 2012 (Dkt. 307). The other parties' interpretation of the current case schedule will allow at least a year simply for class certification motions to be decided in the district court, without regard to any appeals. The class plaintiffs filed their motions for class certification on June 15, 2012 (Dkts. 283, 285). Judge Whittemore is unlikely to resolve objections to the reports and recommendations in both cases by June 15, 2013. Each day that passes after March 1, 2012 (the last deadline proposed by a majority of the parties for filing summary judgment and *Daubert* motions) simply adds to the case schedule.

     The perverse consequence is that not all of the consolidated cases are class cases with certification issues. The class parties would have Vision-Ease – the only plaintiff without

class claims – simply sit back while class certification is resolved before it may proceed with its case.

There are good reasons for the Court to direct the parties to file their summary judgment and *Daubert* motions before class certification is ultimately decided. Briefing on those motions will permit the Court to view the case, and address its issues, in their entirety rather than piecemeal. This type of coordination is thought to be the primary benefit of consolidated pretrial proceedings. The class certification issues, on the one hand, and the summary judgment issues, on the other hand, are substantially interrelated and can usefully be considered together. TOI urges the Court to consider a newly minted U.S. Supreme Court decision that reiterates that the class certification analysis is often pertinent to the merits analysis. *See* Dkt. 490-1 (*Comcast* decision) at 7. In this case, for example, DPPs used the same expert for both class certification and merits issues, and their objections to the report and recommendation include arguments that the expert's merits analysis overcame alleged deficiencies in his class certification analysis. Dkt. 486 at 20 (page 14 of the brief). Summary judgment and *Daubert* briefing would certainly aid this Court in evaluating that argument.

Vision-Ease further submits that, even if the deadline for summary judgment and *Daubert* motions is not deemed to be 30 days after the IPP report and recommendation for all parties, good cause exists for revising the case schedule to make that the deadline in Vision-Ease's cases against TOI. If the other parties' interpretation of "ruling" is correct, then Vision-Ease would be substantially prejudiced if its case were suspended until class certification is ultimately decided in the class cases. If Vision-Ease's interpretation is

correct, then TOI may be inconvenienced by having to brief the motions sooner (and perhaps separately from dispositive motions in the class cases), but it will certainly not be prejudiced.

Vision-Ease also believes (1) that some of the merits issues in its case are related to class certification issues in the class cases and could aid their evaluation and (2) that Vision-Ease could be prejudiced if the Court decides those issues without providing Vision-Ease the opportunity to brief them. For example, Magistrate Judge Jenkins recommended denial of class certification in part based on a perceived "fundamental conflict" within the class between entities who "benefited" from TOI's practices and others who were "injured" by them. Vision-Ease believes that summary judgment briefing in its case will show that TOI was able to maintain its monopoly by sharing its monopoly profits with certain customers in exchange for their agreement to exclude TOI's competitors. This profit-sharing aspect of TOI's conduct may have partially offset the monopoly overcharge to those customers, but that does not mean those customers suffered no damage from TOI's conduct. Vision-Ease obviously does not ask this Court to decide that issue without full briefing from Vision-Ease and Transitions. If the case schedule does not set summary judgment and *Daubert* motion deadlines at a time that would provide Vision-Ease that opportunity, then Vision-Ease must consider whether to intervene in the class cases to avoid a prejudicial ruling. Such intervention may result in piecemeal (and inefficient) briefing of Vision-Ease's opposition to TOI's anticipated dispositive motion.

Defendants do not deny that certain class certification issues are entangled with merits issues that would justify the Court's consideration of class and merits issues at the same time. Indeed, Defendants essentially concede Vision-Ease's point that the Court's

7

rulings may inadvertently prejudice parties in unrelated cases (Vision-Ease, if the Court decides a merits issue on class certification without briefing from Vision-Ease, or Essilor, if the Court decides a merits issue on summary judgment in the Vision-Ease case without briefing from Essilor); Defendants' real argument is that they prefer the prejudice to fall on Vision-Ease rather than on Essilor (the 49% owner of TOI).

Furthermore, TOI does not identify any prejudice to itself from having to brief summary judgment sooner. Instead, TOI argues that the Court will be prejudiced by having to decide certain issues twice. Defendants' argument is inaccurate.[4] The proposed modification to the case schedule would not increase the number of deadlines, increase the number of motions that the Court must decide, or otherwise impose duplicative work on the Court; it would merely affect the timing of the parties' motions. The argument also misses the point – namely, that in deciding class certification this Court has *already* started to consider at least some of the merits issues that may be raised on summary judgment or *Daubert* motions, but without input from Vision-Ease. Although the MDL process exists to promote efficiency, it should not be implemented in a way that works substantive prejudice on a party without giving that party the right to be heard.

---

[4] Defendants also inaccurately claim that Vision-Ease filed its case late, but Vision-Ease filed its complaint before any pretrial proceedings occurred and before the Judicial Panel on Multidistrict Litigation consolidated the cases in this Court. Eight tag-along cases were filed after Vision-Ease filed its action. *See* JPMDL CM/ECF (MDL No. 2173) at Dkts. 53, 61-66, 70. Defendants further inaccurately claim that Vision-Ease "elected to join this MDL"; in fact, Vision-Ease did not oppose the transfer because it had no realistic alternatives. Finally, Defendants inaccurately claim that Vision-Ease did not oppose coordinating its summary judgment motion with those of other parties; what Vision-Ease did not oppose was the Defendants' proposal to a date certain for all dispositive motions.

Vision-Ease therefore requests that the term "ruling" be construed to mean the date of the magistrate's issuance of a report and recommendation on the remaining class certification motion or, in the alternative, that the Court set a separate and specific deadline for such motions in Vision-Ease's case. Vision-Ease is prepared to meet and confer with TOI on mutually acceptable deadlines for their case.

### E. Defendants' Response to Vision-Ease's Position

Vision-Ease invented a supposed ambiguity in this Court's January 3, 2013 order to attempt to alter the existing schedule to favor Vision-Ease's interests over those of all of the other parties to this MDL. There can be no serious dispute that "ruling" refers only to whatever disposition Judge Whittemore will make of the pending motions for class certification. The disposition by Magistrate Judge Jenkins is a "report and recommendation," not a ruling. Vision-Ease is just trying to alter the schedule that everyone understood to have been set.

Vision-Ease's statement raises no argument that could not have been made with equal fervor at the time the schedule was set. It was clear from the outset that rulings on class certification would take some time. If Vision-Ease did not like that fact, it could easily have raised the point then. Moreover, the handling of the class certification motions to date has been far more expeditious than reasonably could have been predicted at the outset. Magistrate Judge Jenkins issued her report and recommendation on the Direct Purchaser motion on March 12, 2013, little more than three months after the hearing. The appeal to Judge Whittemore of that disposition was filed just a few days ago, on March 26, 2013. No one could reasonably have sought any faster movement than what we have seen so far.

9

So Vision-Ease's statement is nothing more than a belated request for reconsideration. It seeks two remedies in the alternative. First, to force the parties in all the cases into briefing of summary judgment and *Daubert* motions almost immediately. That request is opposed by everyone else – the Direct Purchasers, the Indirect Purchasers, the Essilor Defendants, and TOI. Accepting that result would force everyone into summary judgment briefing at a time when it is unclear whether the class cases can or will even proceed, at least on a class basis. That is precisely why, we suggest, the Court constructed the schedule as it did in the first place.

The second, alternative, relief sought by Vision-Ease is worse. Under the radically revised schedule that Vision-Ease is now proposing, summary judgment proceedings in Vision-Ease's action against TOI would occur separately and potentially long before summary judgment proceedings in the other two actions. This divided schedule would *cause the Court to address the same issues central to all actions twice*, including

- the appropriate definition of the relevant market,
- the extent, if any, of TOI's market power,
- whether TOI's exclusive agreements amounted to illegal monopolization,
- whether TOI's agreements have restrained trade,
- whether TOI's arrangements raised prices to anyone,
- whether TOI refused to deal with Vision-Ease or not, and
- the justifications for the challenged conduct.

To appease Vision-Ease's desire to hurry its own action along, the Court would decide all these issues twice – the first time based solely on input from TOI and Vision-Ease,

excluding the views and ignoring the interests of the other parties to this MDL. Separate briefing and submissions of evidence simply invites confusion, inefficiency, and the real potential for inconsistent rulings. Vision-Ease's flippant dismissal of this possibility cannot be taken seriously. It is not merely asking for the timing of the motion schedule to change; it specifically asks for the timing of just its case schedule vis-à-vis TOI to change. It is unclear how this would *not* create duplicative work for this Court.

The MDL process exists precisely to avoid this kind of inefficiency, and not, as Vision-Ease would have it, to enable the Court to coordinate its determination of class certification with its decisions on summary judgment. Vision-Ease filed its case long after everyone else did (and, indeed, many years after the 2005 events on which much of its suit is based). It then elected to join this MDL with full knowledge that its case would not require the Court to address class certification, while the other actions would. Vision-Ease now disputes that it affirmatively chose to join this MDL. *See supra*, fn.3. This is disingenuous and demonstrably false. In its briefing to the Judicial Panel of Multidistrict Litigation, it moved for consolidation and stated "Vision-Ease agrees that centralization is appropriate and will promote the just and efficient conduct of this litigation." Response of Interested Party Insight Equity A.P. X, LP, D/B/A Vision-Ease Lens Worldwide to Motion to Transfer and Consolidate Actions for Pretrial Proceedings, MDL Docket No. 2173, pp. 1-3. The reason for this was made clear by Vision-Ease: "The cases will involve substantially overlapping evidence and witnesses, and they will raise similar pretrial issues." *Id.*

Additionally, Vision-Ease contends that it will be prejudiced if the Court decides "merits issues" in its class certification rulings, but fails to explain how this is so. It does not

and cannot point to a single issue addressed in Magistrate Judge Jenkins' Report concerning the Direct Purchasers' motion for class certification that is relevant to its theory of liability or damages. Whether some members of Direct Purchasers' proposed class may have benefited from TOI's alleged conduct is irrelevant to Vision-Ease's case. Nor does it even attempt to speculate as to what merits issue relevant to its case could be raised in the forthcoming Report concerning the Indirect Purchasers motion for class certification.

Vision-Ease did not oppose the coordination of its summary judgment schedule with that of the other two actions when the parties submitted their proposals concerning that schedule last December. And, it was aware at that time that class certification briefing would be done prior to briefing on dispositive motions. Any claim now by Vision-Ease that it will be prejudiced is untimely and meritless. Insofar as Vision-Ease now requests a schedule of its own, its request is entirely improper and should not be granted. Rather, the Court should continue with its consistent approach of managing all cases on the same schedule. *See* Dkt. No. 307 at 2 ("[I]n the interest of fairness and efficiency, Plaintiffs' schedules shall remain consolidated, with no bifurcation of deadlines between Class Plaintiffs and Plaintiff Vision-Ease.").

Dated: April 2, 2013

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

/s/ Jonathan M. Jacobson
    Jonathan M. Jacobson

Chul Pak
Daniel P. Weick
1301 Avenue of the Americas


40th Floor
New York, NY 10019
Telephone: (212) 497-7758
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

Lisa A. Davis
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 320-4526
Facsimile: (650) 493-6811
Email: ldavis@wsgr.com

*Attorneys for Defendant Transitions Optical, Inc.*

JONES DAY

/s/ John M. Majoras
    John M. Majoras

William V. O'Reilly
Michelle M. Bushman
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
Email: jmmajoras@jonesday.com

*Attorneys for Defendants Essilor of America, Inc. and Essilor Laboratories of America, Inc.*

By: /s/ Bart D. Cohen
    Bart D. Cohen

H. Laddie Montague, Jr.
Bart D. Cohen
Jennifer MacNaughton
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: bcohen@bm.net

By: /s/ Linda P. Nussbaum
    Linda P. Nussbaum

Linda P. Nussbaum
Susan R. Schwaiger
GRANT & EISENHOFER, P.A.
485 Lexington Avenue
29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
Email: lnussbaum@gelaw.com

By: /s/ Gregory Asciolla
    Gregory Asciolla

Gregory Asciolla
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: gasciolla@labaton.com

*Interim Co-Lead Counsel for Direct Purchaser Plaintiffs*

By: /s/ Michael A. Lindsay
    Michael A. Lindsay

Michael A. Lindsay
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Email: Lindsay.michael@dorsey.com

*Counsel for Plaintiff Insight Equity A.P. X, LP, d/b/a Vision-Ease Lens Worldwide*

**CERTIFICATE OF SERVICE**

  I hereby certify that I caused a true and correct copy of the foregoing Certain Parties' Request for Clarification of Briefing Schedule to be served via ECF on this 2nd day of April 2013.

Dated: April 2, 2013

                 /s/ Jonathan M. Jacobson
                   Jonathan M. Jacobson