## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE: PHOTOCHROMIC LENS
ANTITRUST LITIGATION

MDL Case No.: 8:10-MD-2173-T-27EAJ

_____/

## ORDER

Before the Court are **Vision-Ease's Amended Motion For An Order To Show Cause Why**

**Transitions Optical, Inc. Should Not Be Held in Contempt** (Dkt. 483), **Transitions Optical,**

**Inc.'s Opposition** (Dkt. 493), **Transitions Optical, Inc.'s Privileged Documents Log**

**Supplemental Entries** (Dkt. 528), and the parties' **Joint Status Report** (Dkt. 531).  For the reasons

that follow, the motion for contempt is denied; however, the alternate request to compel is granted

as to the twenty-one (21) documents withheld under a claim of attorney-client privilege as well as

the ninety (90) documents as to which both the attorney-client privilege and common interest

doctrine is asserted on behalf of Transitions.

## Background

This is an antitrust lawsuit involving prescription eyeglasses made with photochromic lenses

that darken automatically outdoors.  Plaintiffs[1] allege that Defendant Transitions Optical, Inc.

("Transitions") violated federal and state law by engaging in anticompetitive practices to restrain

trade and monopolize the market for photochromic lenses.  In 2009, the Federal Trade Commission

("FTC") began an investigation of Transitions that culminated in an April 2010 consent decree in

---

[1] Plaintiffs are comprised of a group of Direct Purchaser Plaintiffs, a group of Indirect Purchaser End-User Plaintiffs, and Insight Equity A.P. X. LP, doing business as Vision-Ease Lens Worldwide ("Vision-Ease") (collectively, "Plaintiffs").

which Transitions agreed to refrain from certain conduct.[2]

Plaintiff Vision-Ease Lens Worldwide ("Vision-Ease") contends that Defendant Transitions Optical, Inc. ("Transitions") is in contempt of the Court's previous order compelling production of documents related to an internal dispute between Transitions' parent companies over paying the costs of responding to the FTC investigation[3] of Transitions. Transitions is a joint venture of Essilor International, S.A. ("Essilor") and PPG Industries, Inc. ("PPG"). Neither company is related except in terms of their joint venture, Transitions. The parent companies resolved the dispute over who was to pay the costs of the investigation by binding arbitration in May 2010.

Following a discovery hearing rejecting the objection based on relevancy the Court directed Transitions to provide documents (hereinafter "Cost Documents") described as follows:

> All (1) emails and documents of Rick Elias[4] related to (I) the initial agreement among [Transitions], PPG, and Essilor to share costs related to the FTC investigations, (ii) the subsequent agreement by those parties to submit their dispute over costs to binding arbitration, and (iii) the arbitration itself, and (2) all documents that [Transitions], Essilor, and PPG submitted to the arbitrator in the arbitration proceeding.

(Dkt. 333 at 20; Dkt. 483 at 3 n.1)

Transitions produced Cost Documents comprising 1,104 pages, but redacted[5] portions of them based on attorney-client privilege and the common interest doctrine. Vision-Ease then filed

---

[2] In a related investigation, the FTC also looked into the purchase of a lens manufacturer, Signet Armorlite, by one of Transitions' parent companies, Essilor International, S.A. ("Essilor"). (Dkt. 483 at 12-13)

[3] The FTC began investigating Transitions for allegedly anticompetitive business practices in March 2009. Transitions and the FTC entered into a consent decree in April 2010.

[4] Rick Elias is the chief executive officer of Transitions.

[5] According to Vision-Ease, Transitions made redactions to 636 of the 1,104 pages of documents, or fifty-eight percent of the pages. (Dkt. 483 at 4)

this motion for an order to show cause why Transitions should not be held in contempt.  Deferring

a ruling on Vision-Ease's motion, the Court directed Transitions to file a privilege log for the

redactions and also instructed the parties to submit a Joint Status Report updating their positions in

light of the privilege log (Dkt. 518).  Ultimately, copies of the withheld documents were filed <u>in</u>

<u>camera</u>.  (Dkt. 542, 544).

    Transitions also withheld other documents based solely on attorney-client privilege.

Transitions provided a privilege log for the withheld documents and subsequently filed copies of the

unredacted documents <u>in</u> <u>camera</u>.

    Vision-Ease maintains that Transitions should be ordered to show cause why it is not in

contempt because: (1) Transitions has not met its burden of establishing that the withheld documents

are protected by the attorney-client privilege; (2) even if attorney-client privilege applied initially,

the privilege was lost when the documents were disclosed among the corporate entities and to the

arbitrator; and (3) the common interest doctrine does not pertain to the documents because

Transitions' parent companies had a dispute about who was to pay for the FTC investigation.  Even

if Transitions is not in contempt, Vision-Ease asks that Transitions produce unredacted copies of

documents that have been improperly redacted or withheld as well as any documents improperly

withheld under the attorney-client privilege

    Transitions counters that it properly withheld the twenty-one (21) documents based on

attorney-client privilege and that even though some other Cost Documents were disclosed to third

parties, the common interest doctrine prevents any waiver of privilege because Transitions and its

parent companies were united in their response to the FTC investigation.  Transitions also argues

that Joint Defense Agreements executed by Transitions, Essilor, and PPG demonstrate that the

parties were cooperating under a common legal strategy.

Vision-Ease also maintains that Transitions waived its right to assert privilege when it explicitly disavowed such a position at a discovery hearing and asserted only a relevancy objection. Although there is considerable merit  to Vision-Ease's waiver argument, Transitions' privilege assertion is not substantiated, apart from whether it waived such an objection.[6]

### Legal standard

"A finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated." Se. Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1295 n.2 (M.D. Fla. 2009) (citation omitted). "This standard is more exacting than the preponderance of the evidence standard, but does not require proof beyond a reasonable doubt." Id. (citation omitted).

The attorney-client privilege protects "confidential communications between client and lawyer made for the purpose of securing legal advice[.]" In re Slaughter, 694 F.2d 1258, 1260 (11th Cir. 1982) (citations omitted). "The burden of establishing the application of the attorney-client privilege rests on the party asserting the privilege." Allstate Ins. Co. v. Levesque, 263 F.R.D. 663, 666 (M.D. Fla. 2010) (citation omitted). Only legal advice, not business advice, is covered by the privilege. See generally Simon v. G.D. Searle & Co.,816 F. 2d  397, 403-04 (8th Cir. 1987), cert. denied 484 U.S. 917 (1987); Wells v. Xpedx, No. 8:05-CV-2193-T-EAJ, 2007 WL 1200955, at *3 (M.D. Fla. Apr. 23, 2007);  ABB Kent-Taylor, Inc. v.  Stallings and Co., Inc., 172 FRD 53, 57-58

---

[6]  For example, Vision-Ease's counsel states that Transitions never raised the issue of privilege when the parties tried to resolve the dispute over producing the FTC cost-sharing documents.  (Dkt. 484 at 5) And the order granting the motion to compel on this issue stated that Transitions objected to producing the cost documents "solely on relevancy grounds." (Dkt. 393 at 1)  Yet Transitions contends that Vision-Ease recognized that at least some responsive documents would be privileged because Vision-Ease did not ask for a privilege log initially even though Transitions made a general objection based on privilege in responding to in the First Set of Document Requests By the Direct Purchaser Plaintiffs and Vision-Ease To All Defendants.

(W.D.N.Y. 1996).

The attorney-client privilege is typically waived when protected communications are disclosed in the presence of a third party. See U.S. v. Blackburn, 446 F.2d 1089, 1091 (5th Cir. 1971) (citation omitted).  However, waiver can be prevented under the common interest doctrine, which is "not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." Cavallaro v. U.S., 284 F.3d 236, 250 (1st Cir. 2002) (citation and internal quotation marks omitted). In general, the exception pertains to communications that are "shared with a third person who has a common legal interest with respect to these communications, for instance, a codefendant." Id. To fall under the common-interest doctrine, the communications must be "made in the course of an ongoing common enterprise and intended to further the enterprise[.]" U.S. v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (citations omitted).

## Discussion

### I. Attorney-client privilege[7]

In its privilege log (Dkt. 528), Transitions asserts privilege based on either the attorney-client privilege alone, or the attorney-client privilege and common interest doctrine.[8] For twenty-one (21)

---

[7] Seven entries in the privilege log are redacted due to "personal information," and the privilege is described as "P.I."  This Order does not address those documents.  The parties shall confer to resolve any dispute as to these documents to avoid additional motion practice.

[8] The log lists each document by reference number and Bates range.  It identifies the custodian, the author of the document or email, the primary individual(s) to whom it was circulated, the date of creation, and the privilege asserted.  Each entry also includes a brief description in support of the asserted privilege, i.e. "[p]ortion of email thread containing legal advice." (Dkt. 528 at 1) Attorneys or "any individual acting under the direction of an attorney" are identified by an asterisk next to their names.

documents, it invokes only the attorney-client privilege.  In challenging the asserted privileges, Vision-Ease observes that some entries on the privilege log describe communications between non-attorneys or communications simultaneously sent to attorneys and non-attorneys.  Some courts have found that communications between non-attorneys are not covered by the attorney-client privilege. See, e.g., U.S. v. Bein, 728 F.2d 107, 113 (2d Cir. 1984) ("Only communications between a client and attorney are protected by the privilege, not discussions with non-lawyers concerning the same subject matter."); In re Behr Dayton Thermal Prods., LLC, No. 3:08–cv–326, 2013 WL 2489136, at *4 (S.D. Ohio June 10, 2013) (citation omitted) (explaining that "[a] communication between non-lawyers is generally not protected under the attorney-client privilege").

Other courts have found that attorney-client privilege extends to communications among non-attorneys when the main purpose of the exchange is to impart legal advice.  See, e.g., First S. Bank v. Fifth Third Bank, N.A., No. 7:10–2097–MGL, 2013 WL 1840089, at *15-16 (D.S.C. May 1, 2013) (finding attorney-client privilege for documents circulated among non-attorneys because the communications "sought or forwarded legal advice to those who needed the information"); Heriot v. Byrne, 257 F.R.D. 645, 666 (N.D. Ill. 2009) ("the claim that the privilege cannot extend to communications between non-lawyers is false").

It is unnecessary to resolve whether the communications to non-attorneys vitiates the privilege as to some documents.  Transitions has failed to establish its right to claim the attorney-client privilege over what was essentially a business dispute: the relative responsibility of each parent company for paying the cost of the FTC investigation of Transitions, a joint venture of Essilor and PPG.  Moreover, having reviewed these documents in camera, the Court finds that a significant number of the twenty-one documents address only perfunctory topics, such as the scheduling of

6

meetings, the arbitration date, or meals, hardly a confidential attorney-client communication. [9] Transitions' veiling these documents with the venerable attorney-client privilege undercuts the credibility of its position with regard to the remaining documents as well as its position regarding the applicability of the common interest doctrine. [10]

Even assuming, however, that Transitions had shown that the dominant purpose of the redacted communications in these twenty-one documents was legal advice, Transitions has not met its burden of establishing the factual predicate necessary to invoke the common interest doctrine. Since most of the documents at issue are in this category, Vision Ease is entitled to obtain them.

## II. Common interest doctrine

Transitions contends that the Cost Documents it redacted fall under the common-interest doctrine because the three entities – Transitions, Essilor, and PPG – shared information to resolve the cost dispute after signing a Joint Defense Agreement in which they agreed that disclosing otherwise privileged information to the arbitrator would not constitute waiver of the privilege. While the entities disagreed about the cost allocations, Transitions asserts that they remained united in their common interest of responding to the FTC investigations.  Transitions submits that the "common legal strategy for how to respond to the FTC" is precisely the type of information that is

_____

[9]  For example, reference 4366, described in the privilege log as "an email memorializing legal advice regarding costs of FTC investigation" is no more than a proposal of dates for arbitration or meetings and a discussion of availability.  The same can be said for reference 4367, 4368, 4369, and 4370.  (Dkt. 484-2) The claim of privilege as to 4361, 4362, 4363, and 4364 is also dubious.

[10]  See, e.g., In re Capital One Bank Credit Card Interest Rate Litigation, 286 F.R.D. 676, 681 (N.D. Ga. 2012) (granting motion to compel as to documents listed in deficient privilege log); State v. Philip Morris Inc., No. C1-94-8565, 1998 WL 257214, at *7 (D. Minn. Mar. 7, 1998) (allowing discovery of whole categories of documents when some individual documents within those categories were found not privileged).

protected by the common-interest doctrine. (Dkt. 492 at 6)  The fee dispute was simply a component of that common strategy, according to Transitions.

In response, Vision-Ease states that the common interest doctrine does not apply because Transitions and/or its parent companies were in conflict over the cost allocations and the FTC actually carried out two investigations, one of which did not affect the three entities collectively. Even assuming that Transitions and its parent companies had a common interest in responding to the FTC, Vision Ease points out that the sharing of the Cost Documents did not contribute to resolving the FTC investigation.

There appears to be no disagreement that the transmission of the Cost Documents to the arbitrator and among Transitions, PPG, and Essilor constitutes disclosure to third parties. Transitions and its parent companies were aware that privilege could be waived and entered into four Joint Defense Agreements ("JDAs") at various points.  Transitions' contention that these JDAs conclusively prove that the parties shared a common interest goes too far.

Certainly, the JDAs indicate that the parties intended to handle the FTC investigation as a joint enterprise.[11]  However, the united front did not involve or resolve the dispute over how the

---

[11]  Transitions explains that the JDAs include:

(1) a March 11, 2009 agreement between TOI and Essilor reciting a common interest in responding to the FTC's requests and concerns relating to the Signet acquisition; (2) a March 12, 2009 agreement between TOI and PPG relating to the FTC's investigation of TOI's exclusive dealing arrangements; (3) a May 15, 2009 agreement among TOI, PPG and Essilor relating to the FTC's investigation of TOI's exclusive dealing arrangements ; and (4) a January 21, 2010 agreement among TOI, PPG and Essilor reciting that the parties have entered into other JDAs regarding their communications in connection with both of the FTC's investigations, and agreeing that PPG and Essilor shared a common interest in resolving their dispute over who should pay how much of the legal fees incurred by TOI with the assistance of an outside decision-maker.

parent companies were to pay for the costs incurred by their joint venture, Transitions, in responding to the investigation.

It is undisputed that FTC conducted two separate investigations; only one impacted Transitions, PPG, and Essilor collectively.  In the other investigation, the FTC examined the potential anticompetitive consequences of Essilor's acquisition of Signet Armorlite, a lens manufacturing company.

The oft-cited example of a common interest deteriorating is found in the criminal context where defendants mount a joint defense which falls apart when the interest of one defendant becomes antagonistic when that defendant decides to cooperate with the prosecution against other defendants.  See, e.g., Cavallaro, 284 F.3d at 250.  But the dispute need not be that palpable.  Here, the antagonistic interests of the parent companies were serious enough to cause them to retain an arbitrator to resolve the dispute.  It is true that this choice was not forced on them.  But to say that the cost dispute was simply an ancillary matter is not persuasive.  Although mere incompatibility of positions does not defeat the common interest doctrine, see U.S. v. McPartlin, 595 F.2d 1321, 1336 (7th Cir. 1979) ("the joint-interest privilege is not limited to situations in which the positions of the parties are compatible in all respects"), at least the parties should be on the same side of the fence.  That is not the case here.

To find that the cost dispute was  directly tied to the legal strategy employed by Transitions and its parent companies in responding to the FTC investigation is simply too much of a stretch. Transitions has not shown that it and its parents companies shared a common interest in the dispute over the costs of the FTC investigation and that those documents were intended to further the

(Dkt. 531 at 17)

common enterprise.   Transitions has failed to establish its right to claim the common interest

privilege as to these documents, and they must be disclosed. [12]

## **CONCLUSION**

Even so, the Court denies Vision-Ease's request to issue a show cause order for Transitions

to explain why it is not in contempt as that sanction requires a heavy burden of clear and convincing

evidence.   Irrespective of whether Transitions is in contempt of this Court's prior order, Vision-

Ease's goal is to obtain the documents at issue.   This can be achieved without resorting to the

Court's power of contempt.

However,  Vision-Ease's alternate  request to compel production of unredacted copies of

the Cost Documents is granted.   And Transitions shall also produce the twenty-one documents as

to which only the attorney-client privilege was asserted.[13]

Vision-Ease requests monetary sanctions against Transitions in connection with the motion

practice over the withheld documents.   The Court finds, by a preponderance of the evidence, that

Transitions' opposition to the requested relief was not substantially justified nor do other

circumstances make an award of sanctions unjust under Rule 37(a)(5)(A), Fed. R. Civ. P. Monetary

sanctions in a reasonable amount are appropriate. Vision-Ease may recover the reasonable expenses

---

[12]     In the privilege log, a small number of the documents submitted under the common
interest doctrine in three binders for in camera review are designated as only attorney-client
privileged. These documents have been redacted, rather than withheld  in their entirety. They must
also be produced, consistent with the ruling as to the other documents for which only the attorney-
client privilege is asserted.

[13]    Any attachments to the documents submitted in camera shall also be produced.  For
example, Transitions submitted in camera an email dated April 13, 2010, described as reference
4371, but the attachments were not submitted for review. The attachments are described in the email
are Essilor's submissions to the arbitrator.

incurred in making the motion, including attorney's fees.

Accordingly, and upon consideration, it is hereby **ORDERED and ADJUDGED** that:

(1)     Vision-Ease's Amended Motion For An Order To Show Cause Why Transitions Optical, Inc. Should Not Be Held in Contempt (Dkt. 483) is **GRANTED in part and DENIED in part**.[14]

(2)     Within fourteen (14) days, Transitions shall provide Vision-Ease with unredacted copies of the Cost Documents and with the twenty-one documents withheld as attorney-client privileged documents.

(3)     Within fourteen (14) days, the parties shall confer in a good-faith effort to stipulate to the reasonable fees and costs incurred by  Vision-Ease in filing the motion for contempt;

(4)     If the parties are unable to stipulate to the amount, within thirty (30) days of this order, Vision-Ease shall file affidavits and supporting materials verifying the reasonable fees and costs incurred in filing the motion for contempt. Transitions may file a response and any opposing submission within fourteen (14) days after Vision-Ease files its supporting materials.

**DONE and ORDERED** in Tampa, Florida this 3rd day of January, 2014.

---

[14] In light of Vision-Ease's amended motion (Dkt. 483), Vision-Ease's Motion For An Order To Show Cause Why Transitions Optical, Inc. Should Not Be Held In Contempt (Dkt. 478) is **DENIED as moot**.

ELIZABETH A JENKINS
United States Magistrate Judge