**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| IN RE: PHOTOCHROMIC LENS ANTITRUST LITIGATION | MDL Docket No. 2173 <br><br> Case No. 8:10-md-2173-JDW-EAJ |
| This document relates to: <br> ALL CASES | Hon. James D. Whittemore <br> Hon. Elizabeth A. Jenkins |

**PLAINTIFF VISION-EASE'S MOTION FOR**
**SUGGESTION OF REMAND TO THE DISTRICT OF DELAWARE**

At the first hearing in this proceeding, the Court stated that it would "try to coordinate [proceedings] as best we can to avoid duplication, but at the same time respect the fact that the Vision-Ease case may very well proceed on a different track, a more expeditious track than these other type cases [i.e. the Direct and Indirect Purchaser class actions]. Obviously, the sooner you're ready to go to trial the sooner I can send you back from where you came." Ex. A (Oct. 14, 2012 Hearing Tr.) at 42.

Vision-Ease's case has now been fully discovered and trial-ready for over a year. Yet Vision-Ease's case has not made any progress toward trial during that time. The case stands in procedural limbo, awaiting resolution of two class certification motions that do not have anything to do with Vision-Ease or its case. This motion respectfully asks the Court to remedy this situation by suggesting that Vision-Ease's case be remanded back to the United States District Court for the District of Delaware from where it came.

The main pretrial proceedings remaining in Vision-Ease's case are summary judgment and *Daubert* motions, which have not yet been filed. These motions will be

case-specific. Although a few issues in Vision-Ease's action overlap with issues in the Direct Purchaser and Indirect Purchaser actions, a substantial majority do not and should be decided in Vision-Ease's case by the District of Delaware.

Vision-Ease acknowledges that this motion asks the Court to treat the Vision-Ease case separately from the two other actions in this multi-district litigation ("MDL") proceeding (which, unlike Vision-Ease's case, are putative class actions). Vision-Ease also acknowledges that the Court has declined to create different deadlines for the Vision-Ease case than for those cases.

But justice delayed is justice denied. Indeed, Rule 1 of the Federal Rules of Civil Procedure declares the overarching goal that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

Rule 1 asks the Court to balance three values: justice, speed, and cost-efficiency. A balance is necessary because any two of the values can be achieved at the expense of the third. Vision-Ease respectfully submits that the time has come to elevate considerations for justice and speed over any remaining cost-efficiencies associated with continued consolidation of the pending matters.

To date, the consolidated proceedings have achieved efficiency and reduced expense through coordinated discovery, but coordinated fact and expert discovery has now been completed for over a year, and case-specific issues predominate. It is time to un-couple Vision-Ease's case from the others and let it proceed on its own track.

**RELEVANT BACKGROUND**

Vision-Ease's case has been pending for nearly four years.[1] Discovery in Vision-Ease's case has been closed for over a year. Dkt. 436 at 2. Vision-Ease's case has been sitting inactive while the "parties"[2] in the other cases await the Court's rulings on class certification in the Direct and Indirect Purchaser actions. Those class certification rulings do not have any relevance whatsoever for Vision-Ease's case. The delay is indefinite. No trial date has been set. No remand date has been set. No hard deadline for summary judgment and *Daubert* motions is set.[3]

Vision-Ease has advocated for shorter case schedules and earlier trial dates than any of the other parties in this MDL proceeding. On numerous occasions, Vision-Ease asked the Court to make certain deadlines in its case shorter than the corresponding deadlines in the Direct and Indirect Purchaser actions. *E.g.*, Dkt. 63 at 1 (advocating "a shorter but more equitable pretrial schedule, or, alternatively, a separate but coordinated schedule for proceedings in [Vision-Ease's] own case"); Ex. A at 25-29 (urging a shorter or separate schedule and asking for a July 1, 2012 remand date); Dkt. 129 (asking for a remand date of

---

[1] Vision-Ease filed its Complaint on July 27, 2010.

[2] Two of the "parties" are really aggregations of class plaintiffs into Direct and Indirect Purchaser class actions. The other three parties are corporate entities: Vision-Ease (a plaintiff in its own case), Defendant Transitions (a defendant in each case), and the Essilor Defendants – Essilor of America and Essilor Labs of America (defendants in the Direct Purchaser case).

[3] Initially, the Court's scheduling orders set hard deadlines for summary judgment and Daubert motions. *See* Dkt. 151 at ¶ 10 (setting dispositive motion deadline of Dec. 18, 2012); Dkt. 307 at 4 (¶ 7) (setting dispositive motion deadline of Jan. 26, 2013). Ultimately, at the suggestion of only one party – the Indirect Purchaser Plaintiffs – the Court set soft dispositive motion deadlines of 30 days after the Court's final orders on the Direct and Indirect Purchasers' motions for class certification. *See* Dkt. 431 at 5; Dkt. 436 at 2 (¶ 4); Dkt. 500 at 3.

July 15, 2013, and/or a trial date of August 15, 2013); Dkt. 292 at 15-16 (proposing shorter deadlines for expert discovery and summary judgment than class plaintiffs); Dkt. 491 (urging that summary judgment deadline be triggered by Magistrate Judge's reports and recommendations on class certification motions rather than on District Court's rulings on objections to same or, alternatively, that Vision-Ease's case be bifurcated and allowed to proceed separately).

At the outset of these proceedings, the Court acknowledged Vision-Ease's concerns and indicated that it would "respect the fact that the Vision-Ease case may very well proceed on a different track, a more expeditious track than these other type cases." Ex. A at 42. In setting the case schedule, however, the Court has elected to maintain a single schedule for all cases and thus prioritize efficiency over Vision-Ease's interests in a speedy trial. *E.g.*, Dkt. 151 at 2 (adopting other parties' request to set a December 31, 2012 deadline for parties to file "proposed procedures and dates for remand and/or trial"); Dkt. 307 at 2 (rejecting Vision-Ease's proposals for "shorter extensions that do not rely on the class certification rulings"); Dkt. 507 at 3 (denying Vision-Ease's request for bifurcated case schedule).

While there are some overlapping issues remaining in the three actions before the Court, case-specific issues predominate in Vision-Ease's action.

First, the prospective *Daubert* motions will be case-specific because the expert reports differ in each case for each party. Vision-Ease, the Direct Purchasers, and the Indirect Purchasers have each retained different experts. Each expert has offered different opinions. To the extent their opinions overlap, they have offered different reasons to support

4

their overlapping opinions.[4] Transitions has retained the same expert in each of the three actions, but Transitions' expert submitted a separate report in each action. Essilor has retained its own experts in the Direct Purchaser action.

Second, the prospective summary judgment motions will be case-specific because Vision-Ease's claims overlap only minimally with those asserted by the Direct Purchasers.

- <u>Different as to Section 3 Claims</u>. Vision-Ease alleges that Transitions violated Section 3 of the Clayton Act and various state antitrust laws (Dkt. 184, Counts III-IV), but the Direct Purchasers do not.

- <u>Different as to Conspiracy and Attempt To Monopolize Claims</u>. The Direct Purchasers, in contrast, allege that Transitions and Essilor conspired to monopolize, attempted to monopolize, and conspired to attempt to monopolize the photochromic lens market (Dkt. 127, Counts II-IV), but Vision-Ease does not.

- <u>Different as to Inclusion of Essilor as Defendant</u>. The Direct Purchasers have named Essilor as a defendant in three of their five counts (Dkt. 127, Counts III-V), but Vision-Ease has not.

- <u>Different Monopolization Theories</u>. Although both Vision-Ease and the Direct Purchasers have alleged that Transitions monopolized the photochromic lens market in violation of Section 2 of the Sherman Act and entered into agreements that unreasonably restrain trade in violation of Section 1 of the Sherman Act, *compare*, Dkt. 184, Counts I-II, *with*, Dkt. 127, Counts I & V, the focus of these claims is substantially different in respect to (1) distribution channels; (2) the importance of pricing data; and (3) time period. Vision-Ease's case primarily concerns conduct by Transitions between 2005 and 2009 that was designed to (and did) impair sales of Vision-Ease's LifeRx lens in the retail and wholesale channels. The Direct Purchaser's case primarily concerns conduct by Transitions between 2000 to 2010 that blocked entry of competitors at the lens caster level (other than Vision-Ease), and thus enabled Transitions to charge supracompetitive prices to wholesalers and retailers.

---

[4] The methodology of the Direct and Indirect Purchasers' experts, which relies heavily on statistical analyses of pricing data, differs substantially from the methodology of Vision-Ease's expert, which does not.

5

There is even less overlap between Vision-Ease's claims and those of the Indirect Purchasers.

- <u>Different as to Federal Claims</u>. Vision-Ease alleges three claims under federal law (Dkt. 184, Counts I-III), but the Indirect Purchasers allege none.

- <u>Different as to State Claims</u>. Although Vision-Ease and the Indirect Purchasers both allege that Transitions violated statutes of California, Vision-Ease additionally alleges that Transitions violated statutes in Alabama, Alaska, Arkansas, Colorado, Connecticut, Illinois, Louisiana, Massachusetts, Nevada, New Hampshire, North Carolina, Ohio, South Carolina, Utah, and Washington (which the Indirect Purchasers do not allege), and the Indirect Purchasers additionally allege that Transitions violated statutes in Florida, Kansas, Maine, Michigan, New York, and Wisconsin (which Vision-Ease does not allege). *Compare* Dkt. 184, Count IV, *with*, Dkt. 186, Counts I-III.

- <u>Different as to Common-Law Claims</u>. The Indirect Purchasers also allege common law unjust enrichment claims in seven states (Dkt. 186, Count IV), but Vision-Ease does not.

Third, Vision-Ease's pending de-designation motion (Dkt. 535) is case-specific because no other plaintiff has joined in it.

**DISCUSSION**

I.  **THE COURT SHOULD PERMIT VISION-EASE'S CASE TO PROCEED BY SUGGESTING THAT IT BE REMANDED BACK TO DISTRICT OF DELAWARE**

   A.  **Vision-Ease's Case Must Ultimately Be Remanded to District of Delaware**

Vision-Ease's case against Transitions must ultimately be remanded by the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") back to the District of Delaware.[5] Every action transferred for consolidated or coordinated pretrial proceedings "shall be remanded by the Panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." 28 U.S.C. § 1407(a); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (transferee court cannot assign a transferred case to itself for trial; § 1407(a) requires the JPML to remand transferred cases to the transferor court).

   B.  **The Court Has Broad Discretion When To Suggest Remand, and Its Opinion Is Accorded Great Weight**

Although the JPML has sole authority to order remand, the JPML looks to the transferee court to *suggest* when a remand order should be entered. R.P.J.P.M.L. 10.3(a) (eff. Jul. 6, 2011). When the transferee court suggests remand, the Panel is likely to follow the recommendation and order remand to the transferor court. *E.g., In re Managed Care*

---

[5] To the extent Transitions may believe that the District of Delaware is an improper venue, any such arguments must be presented to that court. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998). The District of Delaware rarely disturbs a plaintiff's choice of venue when, as here, it is based on legitimate rational concerns, like the fact that Transitions was incorporated there. *E.g., Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F.Supp.2d 696 (D. Del. 2013); *Alcoa Inc. v. Alcan Inc.*, No. 06-451-SLR, 2007 WL 1948821 (D. Del. Jul. 2, 2007); *C.R. Bard v. Guidant Corp.*, 997 F.Supp. 556, (D. Del. 1998).

*Litig.*, 416 F. Supp. 2d 1347, 1348-49 (J.P.M.L. 2006); *In re Richardson-Merrell, Inc. Bendectin Products Liability Litig.* (No. II), 606 F. Supp. 715, 716 (J.P.M.L. 1985). "In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Baseball Bat Antitrust Litig.*, 112 F.Supp.2d 1175, 1177 (J.P.M.L. 2000) (quoting *In re Holiday Magic Secs. and Antitrust Litig.*, 433 F.Supp. 1125, 1126 (J.P.M.L. 1977)).

### C. Individual Actions May Be Remanded

The Court need not complete pretrial proceedings in all actions before remanding any of them. "It is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel, but rather that the transferee judge in his discretion will conduct the common pretrial proceedings with respect to the actions and any additional pretrial proceedings as he deems otherwise appropriate." *In re Evergreen Valley Project Litig.*, 435 F.Supp. 923, 924 (J.P.M.L.1977) (per curiam). *See also Manual for Complex Litigation, Fourth* § 20.133 at 225 ("The transferee court should consider when remand will best serve the expeditious disposition of the litigation.").

There is nothing improper about suggesting remand of a single case and retaining others for pretrial proceedings. *E.g.*, *Ins. Brokerage Antitrust Litig.*, 2009 WL 1874085 (suggesting remand of two actions from MDL). The JPML's Rules of Procedure permit "any party" to move for remand. R.P.J.P.M.L. 10.1(b)(iii) (eff. Jul. 6, 2011). The JPML has

remanded individual actions while others remained transferred for consolidated or coordinated proceedings. *E.g.*, *Evergreen Valley*, 435 F.Supp. at 924 (granting remand of single action from MDL).

### D. Vision-Ease's Case Should Be Remanded

The standards for determining whether to issue a suggestion of remand to the Panel are the same as "the standards for remand employed by the Panel." *In re Bridgestone/Firestone, Inc.*, 128 F.Supp.2d 1196, 1197 (S.D. Ind. 2001). The appropriateness of remand "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL.'" *Id.* Remand is appropriate when, as here, discovery has been completed and case-specific issues predominate – even if remand occurs before all pretrial proceedings in the transferee court have concluded.

#### 1. The Primary Purpose of Coordinated Proceedings Has Been Fulfilled When, As Here, Discovery in All Cases Has Been Completed

The completion of discovery is the "key factor" favoring a suggestion of remand. *In re Activated Carbon-Based Hunting Clothing Marketing and Sales Practices Litig.*, 840 F.Supp.2d 1193, 1198 (D. Minn. 2012) ("*Carbon-Based Clothing*"). "[T]he primary purpose behind assigning multidistrict litigation to a transferee court is to promote efficiency through the coordination of discovery." *In re Nuvaring Prods. Liab. Litig.,* MDL No. 1964, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009). *See also Lexecon*, 523 U.S. at 40 (legislative history of § 1407 indicates that "[w]hen the deposition[s] and discovery [are] completed, then the original litigation is remanded to the transferor court for trial"); *Evergreen Valley*, 435 F.Supp. at 924 (remand of transferred actions appropriate where

9

"further pretrial discovery in federal court [relating to common issues] is unnecessary"). Here, all discovery (including both fact and expert discovery) has been completed for over a year, and Vision-Ease's case is being delayed by class certification motions in other cases.

### 2. Remand Is Appropriate When, As Here, Case-Specific Issues Predominate

Remand is appropriate when "everything that remains to be done is case-specific," *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000), or when, as here, case-specific issues predominate and jeopardize the purposes of consolidated proceedings. An "MDL seeks to promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters ***common among all cases***. Given this function, the transferee court typically does not rule on cumbersome, case-specific legal issues." *Carbon-Based Clothing*, 840 F.Supp.2d at 1201 (quoting *In re Phenylpropanolamine Prods. Liab. Litig.*, MDL No. 1407, 2004 WL 2034587, at *2 (W.D.Wash. Sept. 3, 2004)) (emphasis added). "[C]ase-specific rulings are neither the purpose, nor the forte, of a court presiding over a multi-district litigation." *Carbon-Based Clothing*, 840 F.Supp.2d at 1201 (quoting *Phenylpropanolamine Prods. Liab. Litig.*, 2004 WL 2034587, at *2).

Case-specific issues predominate in Vision-Ease's action:

- The pending class certification motions relate solely to the Direct and Indirect Purchaser class actions – not to Vision-Ease's action.

- *Daubert* motions will address separate expert reports filed by each of the parties in each of the cases. None of the plaintiffs used the same experts, and Transitions' expert submitted a separate report in each action.

- Summary judgment motions will necessarily differ substantially in each case. Two of Vision-Ease's four counts are unique to its case. Although Vision-Ease's other two counts (for violations of Sherman Act §§ 1-2) overlap with claims asserted by the Direct Purchasers, the focus of the claims is

10

different in each case. Vision-Ease will focus on conduct that impaired sales of its LifeRx lens in the wholesale and retail channels between 2005 and 2009. The Direct Purchasers will focus on conduct that blocked competitive entry (other than Vision-Ease) in the lens caster channel between 2000 and 2010.

- Vision-Ease's pending de-designation motion (Dkt. 535) is case-specific because no other party has joined in the motion.[6]

In sum, the pending and prospective motions "are dissimilar enough that deciding them in this Court does not gain anything in terms of judicial economy." *In re State St. Bank and Trust Co. Fixed Income Funds Inv. Litig.*, MDL No. 1945, 2011 WL 1046162, at *5 (S.D.N.Y. Mar. 22, 2011) ("*State Street Bank*"). *State Street Bank* is instructive because in that case, as here, coordinated fact and expert discovery had been completed and the prospective summary judgment motions were likely to be "case-specific" in each of the consolidated proceedings. 2011 WL 1046162, at *4-5. Because the transferee court would have had to rule separately on each summary judgment motion, "[n]o gain in judicial economy" could have been had from that court deciding each motion. *Id*. at *6. In *State Street Bank*, as here, "it would not be in the interests of judicial economy for this Court to rule on the pending motions for summary judgment when these cases must ultimately be remanded to the transferor courts for trial." *Id.*

Remand is also appropriate when, as here, a case "cannot benefit from, and will actually be prejudiced by, continued participation in [the MDL]" – even though some benefit of coordinated proceedings may still exist for other cases. *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 1874085, at *1 (D.N.J. Jun. 30, 2009). In the *Insurance*

---

[6] The pendency of motions does not bar a remand. *E.g.*, *In re State St.*, 2011 WL 1046162, at *4–6 (suggesting remand notwithstanding pending motions for summary judgment); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, MDL No. 991, 1998 WL 308013, *2 & n.11 (E.D. La. Jun. 8, 1998) (same).

11

*Brokerage Antitrust Litigation*, for example, the court suggested that the Panel remand two cases to their transferor court even though discovery was not yet complete (11 depositions remained). The court reasoned that:

> [I]t appears continued participation in MDL 1663 actually impedes the filing of dispositive motions, and thus a potentially prompt resolution to these nearly five-year-old cases. Despite Marsh's contentions to the contrary, given the minimal discovery that remains, the Court concludes that at this stage of litigation, Plaintiffs' cases will proceed most promptly and efficiently if they are remanded. This factor weighs heavily in favor of remand.

2009 WL 1874085, at *3–4 (D.N.J. Jun. 30, 2009). Here, too, Vision-Ease cannot benefit from, and will actually be prejudiced by, its continued participation in the MDL because its action will be indefinitely delayed by the time necessary to resolve issues that have nothing to do with Vision-Ease's case.

Some pretrial work remains in Vision-Ease's case – notably summary judgment motions, *Daubert* motions, and Vision-Ease's pending de-designation motion. Nevertheless, remand is appropriate when "the central purpose of the JPML referral has been achieved," even if the transferee court "is leaving some pretrial work undone." *In re Light Cigarettes Marketing Sales Practices Litig.*, 832 F.Supp.2d 74, 78 (D. Me. Dec. 12, 2011); *see also Baseball Bat Antitrust Litig.*, 112 F.Supp.2d at 1177 (same); *In re King Res. Co. Sec. Litig.*, 458 F.Supp. 220, 222 (J.P.M.L.1978) (per curiam ) (same). The summary judgment and *Daubert* motions in Vision-Ease's case will be sufficiently case-specific that they should be briefed and heard in the court where the case can be tried – the District of Delaware. *Phenylpropanolamine Prods. Liab. Litig.*, 2004 WL 2034587, at *2. In addition, the task of resolving summary judgment and Daubert motions "affords [transferor] courts the opportunity to come "up to speed" on the issues in advance of trial." *Carbon-Based*

12

*Clothing*, 840 F.Supp.2d at 1201 n. 9 (citing *State St. Bank*, 2011 WL 1046162, at *6). Ultimately, Vision-Ease's case "can best be managed" by the transferor judge who "must preside over any eventual" trial. *Baseball Bat Antitrust Litig.*, 112 F. Supp. 2d. at 1177. As the central purpose of coordinated proceedings has been achieved here, the Court should send Vision-Ease's case back to District of Delaware.

## II. IN THE ALTERNATIVE, THE COURT SHOULD PERMIT VISION-EASE'S CASE TO PROCEED BY SETTING DEADLINES FOR SUMMARY JUDGMENT AND/OR REMAND

Although, to date, the Court has elected to maintain a single schedule for all cases in this MDL, there is no requirement that a transferee court set a single case schedule applicable to every case in an MDL proceeding – that matter is left to the discretion of the Court. *E.g.*, *In re Data Gen. Corp. Antitrust Litig.*, 510 F.Supp. 1220, 1226 (J.P.M.L.1979) (per curiam) ("the degree and manner of coordinated or consolidated pretrial proceedings is left entirely to the discretion of the trial judge"); *see also In re Vioxx Prods. Liab. Litig.*, 360 F.Supp.2d 1352, 1354 (J.P.M.L.2005)).

Vision-Ease respectfully submits that, as discussed above, there are no longer any compelling reasons to maintain a single schedule here, or, if any such reasons continue to exist, they do not outweigh the prejudice to Vision-Ease of continued and indefinite delays. Therefore, if the Court elects not to suggest remand, Vision-Ease requests that the Court either (1) set a deadline of June 1, 2014 for summary judgment and *Daubert* briefs in its case against Transitions, or (2) set a deadline no later than December 31, 2014 for remanding Vision-Ease's case to District of Delaware in whatever procedural posture the case may be in at that time.

## **CONCLUSION**

For the foregoing reasons, Vision-Ease respectfully requests that the Court suggest to the JPML that its case be remanded to District of Delaware, where it was originally filed. Alternatively, Vision-Ease requests that the Court either (1) set a deadline of June 1, 2014 for summary judgment and *Daubert* briefs in its case against Transitions, or (2) set a deadline no later than December 31, 2014, for remanding Vision-Ease's case to District of Delaware in whatever procedural posture the case may be in at that time.

Dated: April 1, 2014                    DORSEY & WHITNEY LLP

                                            By:   s/ F. Matthew Ralph
                                                  George G. Eck
                                                  Michael A. Lindsay
                                                  F. Matthew Ralph
                                      50 South Sixth Street, Suite 1500
                                      Minneapolis, MN  55402-1498
                                      Telephone:  (612) 340-2600

                                     ***Attorneys for Insight Equity A.P. X. LP,***
                                     ***d/b/a Vision-Ease Lens Worldwide***

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and notification and service will be provided to counsel of record via the CM/ECF notification system.

s/ F. Matthew Ralph
F. Matthew Ralph
